**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, California 92660
Telephone: (949) 706-6464
Facsimile: (949) 706-6469

Attorneys for Plaintiff

**UNITED STATE DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

THOMAS PURCELLEY, individually and on behalf of all others similarly situated,

Plaintiff,

v.

EKSTER INC., a Delaware corporation; and DOES 1 to 10, inclusive,

Defendants.

Case No. 2:23-cv-07908-WLH-JC

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

[Declaration of Scott J. Ferrell; Pl.'s Evid. & Response to Def.'s RJN; and [Proposed] Order filed concurrently herewith]

Date: January 5, 2024
Time: 11:00 a.m.
Courtroom: 9B
Judge: Hon. Wesley L. Hsu

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ........................................ 1

II. ARGUMENT ........................................ 1

A. The Complaint Plausibly Alleges Violations of California Law. ........................................ 1

1. Numerous Courts Have Denied Similar Motions to Dismiss in Similar Actions Alleging Either Strikethrough Pricing Schemes or Other Similarly Deceptive Reference Pricing Schemes. ........................................ 1

2. The Court Should Deny Defendant's Request for Judicial Notice. ........................................ 4

3. Defendant's Contention that the Complaint Is Defective Because It Does Not Characterize Defendant's Products as "Exclusive" Versus "Non-Exclusive" Is a Red Herring Argument. ........................................ 5

4. The Complaint Plausibly Alleges Enough to Satisfy the Reasonable Consumer Test. ........................................ 7

5. *Sperling v. Stein Mart, Inc.* Is Distinguishable. ........................................ 11

6. Plaintiff Sufficiently Alleges an Economic Injury. ........................................ 12

B. Rule 9(b)'s Requirements Have Been Met. ........................................ 12

1. Plaintiff's Counsel Undertook a Reasonable Pre-Filing Investigation. ........................................ 14

2. Plaintiff Need Not Plead the Prevailing Market Price at This Juncture to Support His FAL Claim. ........................................ 17

C. The Fourth Claim Is Also Predicated Upon Affirmative Misrepresentations. ........................................ 18

1. The Economic Loss Rule Does Not Apply to Affirmative Misrepresentations. ........................................ 19

2. The Economic Loss Rule Does Not Apply to Fraudulent Concealment. ..... 19

3. A Party Is Not Required to Plead with Specificity the Alleged Wrongdoer's State of Mind. ..... 20

D. Leave to Amend Should Be Granted. ..... 21

**CERTIFICATE OF COMPLIANCE** ..... 22

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Starbucks Corp.*,
2020 WL 4196248 (C.D. Cal. July 9, 2020) (Selna, J.) ....... 11, 13

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....... 6

*Azimpour v. Sears, Roebuck & Co.*,
2017 WL 1496255 (S.D. Cal. Apr. 26, 2017) ....... 4

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ....... 6

*Branca v. Nordstrom, Inc.*,
2015 WL 10436858 (S.D. Cal. Oct. 9, 2015) ....... 4, 17

*Calderon v. Kate Spade & Co., LLC*,
2020 WL 1062930 (S.D. Cal. Mar. 5, 2020) ....... 3, 17, 18

*Carvalho v. HP, Inc.*,
2022 WL 2290595 (N.D. Cal. June 24, 2022) ....... 6

*Carvalho v. HP, Inc.*,
2022 WL 17825688 (N.D. Cal. Dec. 20, 2022) ....... 3, 4, 5

*Chase v. Hobby Lobby Stores, Inc.*,
2017 WL 4358146 (S.D. Cal. Oct. 2, 2017) ....... 18

*Chase v. Hobby Lobby Stores, Inc.*,
2018 WL 786743 (S.D. Cal. Feb. 8, 2018) ....... 4

*Chester v. TJX Cos., Inc.*,
2016 WL 4414768 (C.D. Cal. Aug. 18, 2018) (Wright, J.) ....... *passim*

*Concha v. London*,
62 F.3d 1493 (9th Cir. 1995) ....... 20

*Covell v. Nine West Holdings, Inc.*,
2018 WL 558976 (S.D. Cal. Jan. 25, 2018) ....... 3, 8, 16, 19

*Delman v. J. Crew Group, Inc.*, 2017 WL 3048657 (C.D. Cal. May 15, 2017) (Fitzgerald, J.) ............................3

*Dennis v. Ralph Lauren Corp.*, 2017 WL 3732103 (S.D. Cal. Aug. 29, 2017)....................................................4

*Evans v. DSW, Inc.*, 2017 WL 7058233 (C.D. Cal. Feb. 2, 2017) (Bernal, J.) .................... 1, 4, 11, 18

*Fisher v. Eddie Bauer LLC*, 2019 WL 9467922 (S.D. Cal. Oct. 18, 2019)...............................................4, 14

*Fisher v. Eddie Bauer LLC*, 2020 WL 4218228 (S.D. Cal. Feb. 3, 2020)............................................ *passim*

*Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107 (N.D. Cal. 2020).......................................................3, 18

*Harris v. PFI Western Stores, Inc.*, 2020 WL 3965022 (C.D. Cal. Apr. 9, 2020) (Selna, J.)..................................3, 7

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013) ..................................................................3, 9, 18

*Horosny v. Burlington Coat Factory of Cal., LLC*, 2015 WL 12532178 (C.D. Cal. Oct. 26, 2015)...................................................7

*Inga v. Bellacor.com, Inc.*, 2020 WL 5769080 (C.D. Cal. July 17, 2020) (Fitzgerald, J.) ........................3, 10

*Jacobo v. Ross Stores, Inc.*, 2016 WL 3482041 (C.D. Cal. Feb. 23, 2016) ..................................................15

*Jacobo v. Ross Stores, Inc.*, 2016 WL 3483206 (C.D. Cal. June 17, 2016) (Fitzgerald, J.) ............................4

*John v. AM Retail Group, Inc.*, 2018 WL 1400718, at *7 (S.D. Cal. Mar. 20, 2018) ...............................................................................................4

*Keating v. Nordstrom, Inc.*, 2018 WL 6431879 (D. Alaska Oct. 19, 2018)....................................................4

*Lopez v. Smith*, 203 F.3d 1122 (9th Cir. 2000) ...................................................................21

*Marino v. Coach, Inc.*,
264 F. Supp. 3d 558 (S.D.N.Y. 2017) ....................................................................4

*Morrow v. Carter's, Inc.*,
2017 WL 9882667 (N.D. Ga. Mar. 6, 2017) .........................................................4

*Muniz v. United Parcel Serv., Inc.*,
738 F.3d 214 (9th Cir. 2013) ..................................................................................2

*Munning v. Gap, Inc.*,
2016 WL 6393550 (N.D. Cal. Oct. 28, 2016) .................................................3, 8

*Ochoa v. Zeroo Gravity Grames LLC*,
2023 WL 4291650, at *8-*9 (C.D. Cal. May 24, 2023) (Wu, J.), *adopted in*, No. 2:22-cv-05896-GW-AS, Doc. 53 (C.D. Cal. May 25, 2023); ................................................................................ 3, 14, 15, 16

*Ostrovskaya v. St. John Knits, Inc.*,
2022 WL 2102895 (C.D. Cal. Mar. 31, 2022) (Gee, J.)..........................3, 14, 17

*Rael v. New York & Co., Inc.*,
2017 WL 3021019 (S.D. Cal. July 17, 2017) ...........................................4, 6, 16

*Rattagan v. Uber Techs., Inc.*,
19 F.4th 1188 (9th Cir. 2021) ...........................................................................19, 20

*Real v. Y.M.I. Jeanswear, Inc.*,
2017 WL 11675686 (C.D. Cal. Sept. 1, 2017) (Bernal, J.) ........................ *passim*

*Rubenstein v. Neiman Marcus Group LLC*,
687 Fed. Appx. 564 (9th Cir. 2017)...............................................................10, 16

*Russell v. Kohl's Department Stores, Inc.*,
2015 WL 12781206 (C.D. Cal. Oct. 6, 2015) (Klausner, J.)..........................4, 18

*Safransky v. Fossil Group, Inc.*,
2018 WL 1726620 (S.D. Cal. Apr. 9, 2018).........................................................4

*Shimono v. Harbor Freight Tools USA, Inc.*,
2016 WL 6238483 (C.D. Cal. Oct. 24, 2016) (Snyder, J.)................ 3, 13, 14, 15

*Simon v. Carter's, Inc.*,
2020 WL 13505608 (N.D. Cal. July 13, 2020) ....................................................3

*Sperling v. Stein Mart, Inc.*,
2016 WL 11265686 (C.D. Cal. Mar. 15, 2016) .................................. 4, 7, 11, 12

*Sperling v. Stein Mart, Inc.*,
291 F. Supp. 3d 1076 (C.D. Cal. 2018) (Birotte, J.) ......................................7, 11

*Stathakos v. Columbia Sportswear Co.*,
2016 WL 1730001 (N.D. Cal. May 2, 2016) ......................................................14

*Stephens v. Nordstrom, Inc.*,
2018 WL 7143623 (C.D. Cal. Dec. 26, 2018) (Fischer, J.) ...............................12

*Tompkins v. 23andMe, Inc.*,
840 F.3d 1016 (9th Cir. 2016) ..........................................................................2

*Williams v. Gerber Products Co.*,
552 F.3d 934 (9th Cir. 2008) ...................................................................7, 8, 17

**California Cases**

*Brockey v. Moore*,
107 Cal. App. 4th 86 (2003) ..............................................................................8

*Dhital v. Nissan North Amer.*,
523 P.3d 392, 304 Cal. Rptr. 3d 82 (2023) ........................................... 19, 19, 20

*Dhital v. Nissan North Amer., Inc.*,
84 Cal. App. 5th 828 (2022), *rev. granted*, No. S277568, 523 P.3d 392 (Feb. 1, 2023) ..............................................................................................19

*Hansen v. Newegg.com Americas, Inc.*,
25 Cal. App. 5th 714 (2018) ..........................................................................2, 3

*Kwikset Corp. v. Superior Court*,
51 Cal. 4th 310 (2011) .......................................................................................3

*Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda County*,
9 Cal. 5th 279 (2020) .........................................................................................2

*People v. Overstock.com, Inc.*,
12 Cal. App. 5th 1064 (2017) ............................................................... *passim*

*Rattagan v. Uber Techs.*,
No. S272113 (Feb. 9, 2022) ...............................................................................20

*Robinson Helicopter Co., Inc. v. Dana Corp.*,
34 Cal. 4th 979 (2004) .......... 19

**Federal Statutes**

FTC Act .......... 10

**Federal Regulations**

16 C.F.R. § 233 (2019) .......... 2

16 C.F.R. § 233.1 .......... 9

16 C.F.R. § 233.1(a) .......... 10

16 C.F.R. § 233.1(e) .......... 9

16 C.F.R. § 233.2 .......... 10

16 C.F.R. § 233.2(b) .......... 11

Federal Trade Commission Guides Against Deceptive Pricing .......... 2, 9, 10

**California Statutes**

Business & Professions Code
§ 17501 .......... 15, 17
False Advertising Law .......... 2, 14, 17, 18
Unfair Competition Law .......... *passim*

Civil Code
Consumers Legal Remedies Act .......... 14, 18

**Federal Rules**

Rules of Civil Procedure
Rule 9 .......... 18
Rule 9(b) .......... *passim*
Rule 12(b)(6) .......... 6
Rule 15(a)(2) .......... 21

**State Rules**

Rule of Court
8.1105(b)… .......... 19

8.1105(e)(1)(B) ....................19
8.1105(e)(2) ....................19

**Other Authorities**

1A Callmann on Unfair Competition, Tr & Mono. § 5:59 (4th ed. 2015) ................9

https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2369232&doc_no=S272113&request_token=NiIwLSEmLkg%2BW1BdSCJNSEhJQFQ0UDxTJCI%2BQztTQCAgCg%3D%3D (last visited Nov. 24, 2023) ....................20

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant advertised strikethrough prices ***without any explanatory text*** on its website at: https://www.ekster.com/ (the "Website"), which caused Plaintiff an economic injury because Plaintiff relied upon a particular strikethrough price for a certain gunmetal color aluminum cardholder that he purchased from the Website as the basis for his purchase. There is a reason why retailers use reference pricing: "it makes consumers think they are getting a deal." *Chester v. TJX Cos., Inc.*, 2016 WL 4414768, at *11 (C.D. Cal. Aug. 18, 2018) (Wright, J.); *Evans v. DSW, Inc.*, 2017 WL 7058233, at *9 (C.D. Cal. Feb. 2, 2017) (Bernal, J.) ("The impression one is getting a deal is precisely why reference pricing is a popular way to attract customers[.]"). When reference pricing is misleading, consumers suffer an economic injury as a result of false advertising, which is why the California Legislature has prohibited it. That is precisely what happened to Plaintiff. None of Defendant's grounds for dismissal warrant the dismissal of any portion of the Complaint. In particular, Defendant's heavy reliance on extrinsic evidence to argue that it also sells the same "or similar" products via an Amazon.com storefront is not only procedurally improper, it is also irrelevant as it does nothing to show that Plaintiff's legal theories regarding Defendant's deceptive conduct are implausible. Accordingly, the instant Motion should be denied.

## II. ARGUMENT

### A. The Complaint Plausibly Alleges Violations of California Law.

#### 1. Numerous Courts Have Denied Similar Motions to Dismiss in Similar Actions Alleging Either Strikethrough Pricing Schemes or Other Similarly Deceptive Reference Pricing Schemes.

Defendant conveniently omits mentioning the California Court of Appeal decision in *People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064, 1079-87 (2017), which affirmed the trial court's judgment against a retailer for unfair business practices and

false advertising based upon the defendant's deceptive strikethrough pricing scheme.[1] In *Overstock.com*, the Court of Appeal affirmed the trial court's finding that the defendant merchant made untrue and misleading statements regarding pricing in violation of the UCL and FAL and affirmed the trial court's granting of injunctive relief prohibiting the defendant from advertising an advertised reference price "based on a similar but nonidentical product without disclosure." *Id.* at 1074; *id.* at 1079 ("The [trial] court concluded that every time Overstock displayed a list price based on a formula or a similar product rather than the actual list price of the ***identical*** product, it made an untrue statement.") (emphasis added). In other words, the Court of Appeal agreed with the trial court that unless a disclosure is made that a reference price is based on a "similar" product, such reference price should not be used for a "nonidentical product." Also, *Overstock.com* held that "using the highest available price to set the [advertised reference price], without regard to ***the prevailing market price*** and without disclosure of the practice, had the capacity to mislead." *Id.* at 1084 (emphasis added). "[T]he *Overstock.com* court relied in part on the Federal Trade Commission (FTC) Guides Against Deceptive Pricing (16 C.F.R. § 233 (2019))." *Nationwide Biweekly Admin., Inc. v. Superior Court of Alameda County*, 9 Cal. 5th 279, 311 (2020) (citing *Overstock.com*, 12 Cal. App. 5th at 1081). "The Court of Appeal decision in *Overstock.com* illustrates that … the complexities and nuances that are often involved in the determination whether an advertisement should properly be considered untrue or misleading for purposes of the FAL are often ameliorated by judicial reference to the relevant guidelines developed by the FTC regarding deceptive advertising." *Nationwide Biweekly Admin.*, 9 Cal. 5th at 311. *Overstock.com* provides important guidance here.

So does *Hansen v. Newegg.com Americas, Inc.*, 25 Cal. App. 5th 714, 726-33

---

[1] The Ninth Circuit has noted that it "generally will 'follow a published intermediate state court decision regarding California law unless we are convinced that the California Supreme Court would reject it.'" *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1023 (9th Cir. 2016) (quoting *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013).

(2018) (holding that plaintiff alleging strikethrough pricing scheme had statutory standing because he had pled an economic injury even if purchased product was worth the same amount as what he had paid) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1102, 1104-06 (9th Cir. 2013) and *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 329, 330 n.14, 332-33 (2011)).

Defendant also omits mentioning the existence of numerous decisions that have denied similar motions to dismiss in cases involving strikethrough pricing scheme allegations. *See, e.g.*, *Ochoa v. Zeroo Gravity Grames LLC*, 2023 WL 4291650, at *8-*9 (C.D. Cal. May 24, 2023) (Wu, J.) (tentative ruling), *adopted in*, No. 2:22-cv-05896-GW-AS, Doc. 53 (C.D. Cal. May 25, 2023); *Carvalho v. HP, Inc.*, 2022 WL 17825688, at *5-*6 (N.D. Cal. Dec. 20, 2022) ("*Carvalho II*");[2] *Inga v. Bellacor.com, Inc.*, 2020 WL 5769080, at *3-*4 (C.D. Cal. July 17, 2020) (Fitzgerald, J.); *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1111-13 (N.D. Cal. 2020); *Covell v. Nine West Holdings, Inc.*, 2018 WL 558976, at *4, *6-*7 (S.D. Cal. Jan. 25, 2018); *Real v. Y.M.I. Jeanswear, Inc.*, 2017 WL 11675686, at *3-*5 (C.D. Cal. Sept. 1, 2017) (Bernal, J.); *Delman v. J. Crew Group, Inc.*, 2017 WL 3048657, at *6-*8 (C.D. Cal. May 15, 2017) (Fitzgerald, J.); *Munning v. Gap, Inc.*, 2016 WL 6393550, at *4-*5 (N.D. Cal. Oct. 28, 2016); *Shimono v. Harbor Freight Tools USA, Inc.*, 2016 WL 6238483, at *5-*6 (C.D. Cal. Oct. 24, 2016) (Snyder, J.).

Defendant also omits mentioning the existence of numerous decisions that have denied similar motions to dismiss in cases involving similarly deceptive reference pricing scheme allegations. *Ostrovskaya v. St. John Knits, Inc.*, 2022 WL 2102895, at *3-*4 (C.D. Cal. Mar. 31, 2022) (Gee, J.); *Simon v. Carter's, Inc.*, 2020 WL 13505608, at *2-*4 (N.D. Cal. July 13, 2020); *Harris v. PFI Western Stores, Inc.*, 2020 WL 3965022, at *4 (C.D. Cal. Apr. 9, 2020) (Selna, J.); *Calderon v. Kate Spade & Co., LLC*, 2020 WL 1062930, at *4-*6 (S.D. Cal. Mar. 5, 2020); *Fisher v. Eddie Bauer LLC*, 2020

[2] Notably, the action in *Carvalho II* remains currently pending.

WL 4218228, at *3-*5 (S.D. Cal. Feb. 3, 2020); *Keating v. Nordstrom, Inc.*, 2018 WL 6431879, at *6-*7 (D. Alaska Oct. 19, 2018); *Fisher v. Eddie Bauer LLC*, 2019 WL 9467922, at *7 (S.D. Cal. Oct. 18, 2019); *Chester*, 2016 WL 4414768, at *10-*13; *Safransky v. Fossil Group, Inc.*, 2018 WL 1726620, at *10-*14 (S.D. Cal. Apr. 9, 2018); *John v. AM Retail Group, Inc.*, 2018 WL 1400718, at *7 (S.D. Cal. Mar. 20, 2018); *Chase v. Hobby Lobby Stores, Inc.*, 2018 WL 786743, at *4-*5 (S.D. Cal. Feb. 8, 2018); *Dennis v. Ralph Lauren Corp.*, 2017 WL 3732103, at *5 (S.D. Cal. Aug. 29, 2017); *Marino v. Coach, Inc.*, 264 F. Supp. 3d 558, 567-71 (S.D.N.Y. 2017); *Evans*, 2017 WL 7058233, at *7-*11; *Rael v. New York & Co., Inc.*, 2017 WL 3021019, at *4 (S.D. Cal. July 17, 2017); *Azimpour v. Sears, Roebuck & Co.*, 2017 WL 1496255, at *7-*9 (S.D. Cal. Apr. 26, 2017); *Morrow v. Carter's, Inc.*, 2017 WL 9882667, at *6-*8 (N.D. Ga. Mar. 6, 2017); *Jacobo v. Ross Stores, Inc.*, 2016 WL 3483206, at *2-*4 (C.D. Cal. June 17, 2016) (Fitzgerald, J.); *Sperling v. Stein Mart, Inc.*, 2016 WL 11265686, at *5-*6 (C.D. Cal. Mar. 15, 2016); *Russell v. Kohl's Department Stores, Inc.*, 2015 WL 12781206, at *5 (C.D. Cal. Oct. 6, 2015) (Klausner, J.); *Branca v. Nordstrom, Inc.*, 2015 WL 10436858, at *7-*9 (S.D. Cal. Oct. 9, 2015).

The Court can and should consider the foregoing case authority as supporting Plaintiff's position that the claims alleged in the Complaint have been plausibly alleged as a matter of law.

**2.      The Court Should Deny Defendant's Request for Judicial Notice.**

The Court should deny Defendant's Request for Judicial Notice ("RJN").  Courts in similar cases alleging deceptive strikethrough prices have denied similar requests for judicial notice.  *Carvalho*, 2022 WL 17825688, at *3-*4.

Defendant's stated purpose in citing Exhibit 1 to Defendant's RJN is to "show[] the existence of Ekster's website on Amazon.com," to show that Defendant "offers for sale on Amazon the same or similar products as are offered on its website," and to show "the sale of Ekster's products, including its aluminum cardholder wallet."  (Def.'s RJN at 3:5-8; 3:27-28.)

Exhibit 1, however, does not reflect ***any*** pricing for any products on Amazon.com's website. That is, Exhibit 1 does not show that Defendant ever offered for sale its gunmetal grey color aluminum cardholder product via its Amazon.com webstore, which is the specific item purchased by Plaintiff, (Compl. ¶ 17), nor that it has offered any of its aluminum cardholder products at the $100 reference price reflect in paragraph 17 of the Complaint. Thus, Exhibit 1 is irrelevant.

Notably, Defendant's reliance upon its Amazon.com webpage begs the question as to precisely when such webpage has been in existence and the pricing history of Defendant's products on such webpage. Consideration of such extrinsic evidence is premature.

**3. Defendant's Contention that the Complaint Is Defective Because It Does Not Characterize Defendant's Products as "Exclusive" Versus "Non-Exclusive" Is a Red Herring Argument.**

Although Defendant's primary argument is that the Complaint is defectively pled because it does not characterize Defendant's products as "exclusive" products versus "non-exclusive" products, (Def.'s Mem. at 5:1-6:8), Defendant's argument is best characterized as a red herring argument intended to distract the Court from the relevant inquiry.

*Carvalho II* is significant because it rejected reliance upon the "exclusive vs. non-exclusive product framework" as "not particular instructive in this case, as the facts do not fit neatly into either category." *Carvalho II*, 2022 WL 17825688, at *5. *Carvalho II* held:

> "Instead, the Court will look at the reasoning underlying both non-exclusive and exclusive products cases: ***whether a price is false or misleading in light of the price(s) at which that item is generally available for purchase***."

*Id.* at *5 (emphasis added); *Fisher*, 2020 WL 4218228, at *4 (holding that the defendant's argument distinguishing between exclusive products and non-exclusive products "does not recognize that ***the alleged fraud, i.e. that the discounted***

***merchandise was not truly discounted, is the same regardless of whether the product is exclusive or not***" as the reason why the district court viewed the defendant's arguments as "not persuasive") (emphasis added).

*Carvalho II* is instructive because, as was the case therein, "the facts do not fit neatly into either category" here. For example, although it appears that some of Defendant's products appear to be offered for sale via multiple e-commerce websites, which function as online storefronts of Defendant (as opposed to a third-party retailer), other products of Defendant appear to be offered for sale solely on Defendant's Website.

Defendant is surely familiar with *Carvalho II* because it has cited an earlier decision in that same action, which preceded *Carvalho II, i.e., Carvalho v. HP, Inc.*, 2022 WL 2290595, at *4 (N.D. Cal. June 24, 2022) ("*Carvalho I*"). (Def.'s Mem. at 5:6-11; 6:6-10; 10:6-8.) Defendant's failure to acknowledge the highly relevant subsequent history of *Carvalho I* is remarkable.

The Complaint in the instant action alleges that the Website contains deceptive pricing because reasonable consumers including Plaintiff interpret the strikethrough prices listed on the Website as listing actual retail prices at which consumers have generally purchased the item purchased by Plaintiff (and other products offered for sale on such Website) via such Website as opposed to mere ***estimates*** of the value of such items. (Compl. ¶¶ 17-20, 23.) The Complaint also alleges that Defendant "rarely, if ever, sells any of its products at the Reference Price." (Compl. ¶ 18.) These allegations of fact are required to be assumed as true as opposed to a conclusion for purposes of the instant Motion. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss [courts] must take all of the factual allegations in the complaint as true."); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) ("Rule 12(b)(6) does not countenance ... dismissals based on a judge's disbelief of a complaint's factual allegations"); *Rael*, 2017 WL 3021019, at *4.

Defendant argues that "in non-exclusive-products cases such as this one, courts tend to reject claims unless the plaintiff specifically establishes that the comparative

reference price is misleading." (Def.'s Mem. at 5:21-23.) In support, Defendant cites *Sperling v. Stein Mart, Inc.*, 291 F. Supp. 3d 1076, 1084 (C.D. Cal. 2018) (Birotte, J.). Defendant conveniently omits to mention, however, that in *Sperling*, the Court also noted:

> "***The plaintiff does not need to prove that no other retailer sold the item for the comparative reference price***, but he or she must at least assert evidence from which a rational trier of fact could infer that the comparative reference price was inaccurate."

*Sperling*, 291 F. Supp. 3d at 1085 (emphasis added); *id*. at 1086 ("***Plaintiffs do not necessarily need to prove that no other retailer sold the products for the 'Compare At' prices***, but they do need to assert some evidence from which a jury could infer that the 'Compare At' prices were incorrect.") (emphasis added). Thus, Plaintiff, here, does not need to prove that no other retailer sold the item purchased by Plaintiff for $100.

Moreover, the need of the plaintiff to "at least assert evidence from which a rational trier of fact could infer that the comparative reference price was inaccurate," *Sperling*, 291 F. Supp. 3d at 1085, only applies to a situation in which "the language of the advertisement implies a comparison to another retailer." *Harris*, 2020 WL 3965022, at *4 (citing *Horosny v. Burlington Coat Factory of Cal., LLC*, 2015 WL 12532178, at *6 (C.D. Cal. Oct. 26, 2015)). Here, the language of the advertisement does not imply a comparison to another retailer. Instead, it implies a former price of Defendant on its Website.

**4. The Complaint Plausibly Alleges Enough to Satisfy the Reasonable Consumer Test.**

Defendant's invocation of the reasonable consumer test as a ground for dismissal, (Def.'s Mem. at 6:19-8:9), is without merit.

"[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008). It is a "rare situation in which granting a motion to

dismiss is appropriate," for example, when "the advertisement itself made it ***impossible*** for the plaintiff to prove that a reasonable consumer was likely to be deceived." *Id.* at 939 (emphasis added). Here, there is nothing "impossible" about how a reasonable consumer could be deceived by the Website's pricing of its products.

First, it is settled law in California that the advertising itself serves as the "primary evidence" in a false advertising action. *Williams*, 552 F.3d at 938 ("It is true that 'the primary evidence in a false advertising case is the advertising itself.'") (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)).

Second, the Complaint depicts a screenshot of the advertising showing the reference price as $100 with strikethrough type (~~$100~~). (Compl. ¶ 17.) Significantly, the reference price contains no explanatory text or disclaimer including any asterisk from which a reasonable consumer would glean the intent of such strikethrough pricing from Defendant's perspective. *Id.* It is reasonable to infer that the strikethrough pricing on such advertising is intended to reflect the ***former*** pricing on such identical item. *Munning*, 2016 WL 6393550, at *5 ("***By alleging that products on Defendants' websites listed crossed-out prices*** followed by a percentage discount and a new price, ***Plaintiff has provided enough facts such that it is plausible a reasonable consumer could view the prices as being deceptive***.") (emphasis added); *see also Covell*, 2018 WL 558976, at *6 ("the FAC alleges that a reasonable consumer could be misled by [defendant's] price markings into thinking she was paying a discounted price for a product, when in fact she was paying the product's normal or usual price").

As the Court explained in *Chester*:

> "[T]here is a reason Defendants, just like Stein Mart and others, use reference pricing: it makes consumers think they are getting a deal. If the phrasing did not work just so, retailers would find another way to get consumers in the door and its merchandise in people's shopping carts. Consumers are easily wooed by 'Compare At' pricing advertisements because they believe that they are not only getting a deal, but also a high-quality item at a wallet-friendly price. When these

> reference prices are misleading, the consumer suffers an 'obvious economic injury as a result of false advertising ... because the bargain hunter's expectations about the product he just purchased is precisely that it has a higher perceived value and therefore has a higher resale value.'"

*Chester*, 2016 WL 4414768, at *11 (citing *Hinojos*, 718 F.3d at 1106).

"An advertised discount price can be deceptive because it does not differ from the normal price, the product has rarely been sold at the putative list price, or because the alleged original price constituted a false valuation of the product." *Real*, 2017 WL 11675686, at *3 (citing 1A Callmann on Unfair Competition, Tr & Mono. § 5:59 (4th ed. 2015); 16 C.F.R. § 233.1) (stating "if the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison")).

As the Court explained in *Real*:

> "The Federal Trade Commission's Guide against Deceptive Pricing ("FTC's Pricing Guide" or "Guide") also notes other fictitious price comparisons include an advertiser using a price "at which he never offered the article at all" or a price "not used in the regular course of business" or "not used in the recent past but at some remote period in the past, without making disclosure of that fact." 16 C.F.R. § 233.1. The Guide also cautions that if the former price is in the advertisement, with or without descriptive terminology, the advertiser "should make certain that the former price is not a fictitious one." *Id.*"

*Real*, 2017 WL 11675686, at *3.

*Real* provides important guidance here. *Real* found that the FTC's Pricing Guide on former price comparisons to be "informative." *Real*, 2017 WL 11675686, at *4. *Real* noted that former price comparisons can be set in an advertisement "whether accompanied or not by descriptive terminology." *Id.* (quoting 16 C.F.R. § 233.1(e)). Significantly, *Real* held:

"***The placement of a price in strike-through font next to a lower price is***

> ***reasonably believed to be a former price comparison.*** This style of price comparison differs from the use of text such as "Comparable Value" or "Retail Value, My Price," deemed "retail price comparisons" or "comparable value comparisons" by the FTC Pricing Guide. 16 C.F.R. § 233.2."

*Real*, 2017 WL 11675686, at *4 (emphasis added).

"The Ninth Circuit has held … that a violation of the FTC Act may constitute conduct prohibited by the UCL." *Inga*, 2020 WL 5769080, at *3 (citing *Rubenstein v. Neiman Marcus Group LLC*, 687 Fed. Appx. 564, 567 (9th Cir. 2017)). "Courts look to FTC Guides for direction concerning what practices the FTC considers deceptive and thus violative of public policy." *Inga*, 2020 WL 5769080, at *3.

The regulation on "[f]ormer price comparisons" states:

> "One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. ***If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison***. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price."

(16 C.F.R. § 233.1(a) (emphasis added).)

Third, although Defendant argues that a reasonable consumer "would have realized Ekster's practice of sourcing reference prices from Ekster's Amazon.com storefront," (Def.'s Mem. at 7:24-8:2), Defendant's argument is misleading because it makes no attempt to demonstrate that such storefront made ***substantial sales*** of its aluminum cardholders at a $100 price point. *Chester*, 2016 WL 4414768, at *1 n.2

(when an advertiser "represents that he is selling below the prices being charged in his area for a particular article," that advertiser must be "reasonably certain that the higher price he advertises does not appreciably exceed the price at which ***substantial sales of the article are being made in the area***") (emphasis added). Thus, even if multiple retailers sold Defendant's products, the applicable FTC regulation provides "a vital qualifier, which is that comparison prices cannot 'appreciably exceed the price at which ***substantial sales of the article are being made in the area***.'" *Evans*, 2017 WL 7058233, at *10 (emphasis added); *Overstock.com*, 12 Cal. App. 5th at 1084 ("using the highest available price to set the [advertised reference price], without regard to ***the prevailing market price*** and without disclosure of the practice, had the capacity to mislead.") (emphasis added). Thus, it is improper to set a reference price for a product based upon the highest price of such product in the relevant market. What matters is the "prevailing market price" over the course of a period of time as opposed to an "isolated and unrepresentative" price. 16 C.F.R. § 233.2(b).

There is nothing to indicate that Defendant set a $100 prevailing market price on its webstore on Amazon.com that matches the strikethrough price advertised on the Website.

Finally, Defendant's assumption that a reasonable consumer is expected to search the Internet for Defendant's Amazon.com webstore advertisements to find possible disclaimers thereon is wrong. *Adams v. Starbucks Corp.*, 2020 WL 4196248, at *3 (C.D. Cal. July 9, 2020) (Selna, J.) ("[n]o authority suggests a reasonable consumer is expected to search …all of a company's statements across all forms of advertisements[] to find all possible disclaimers") (citation omitted).

**5. *Sperling v. Stein Mart, Inc.* Is Distinguishable.**

Defendant's reliance upon *Sperling*, 291 F. Supp. 3d at 1084, is misplaced because it is distinguishable. In *Sperling*, the Court granted the defendant's motion for summary judgment in a consumer protection action involving allegedly deceptive comparative reference pricing. Significantly, there were five products at issue therein.

For all five products at issue therein, the Court viewed the undisputed evidence as indicating all five products were sold by multiple retailers, which is why the Court put the ***evidentiary burden*** on the plaintiffs to show that the comparative reference prices in the form of MSRPs from suppliers were deceptive. Thus, *Sperling* is procedurally distinguishable. In addition, *Sperling* decided a motion for summary judgment unlike the motion at issue here. Furthermore, *Sperling* is distinguishable because it is improper to treat the single item purchased by Plaintiff, *i.e.*, a gunmetal color aluminum cardholder, as offered for sale by other retailers.

**6. Plaintiff Sufficiently Alleges an Economic Injury.**

Contrary to Defendant's argument, (Def.'s Mem. at 8:9-9:4), the Complaint sufficiently alleges Plaintiff's economic injury caused by Defendant's false advertising. (Compl. ¶¶ 28-34, 54, 69.) Defendant's reliance upon *Stephens v. Nordstrom, Inc.*, 2018 WL 7143623 (C.D. Cal. Dec. 26, 2018) (Fischer, J.), is misplaced because *Stephens* denied a motion for class certification because "it is not clear that there is any model for classwide damages that would be practicable here." *Id.* at *5. The products at issue in *Stephens* were vintage, pre-owned Rolex watches. *Id.* at *1. The *Stephens* Court stated that "[d]etermining damages for each individual member of the class appears to require a retroactive valuation of each watch at the time it was sold by Defendants." *Id.* at *5. The crucial issue was that "each watch is unique," so "deciding an accurate fair market value for the watch *at the time of purchase* several years ago on a class-wide basis, to compare to the amount potential class members paid for that watch, appears extraordinarily difficult, if not impossible." *Id.* at *5 (emphasis in original). Unlike the unique, pre-owned Rolex watches at issue in *Stephens*, there is nothing to indicate that deciding an accurate fair market value for Defendant's aluminum cardholder products (or other products) offered for sale on its Website during the Class Period would be so unique as to hinder their valuation.

**B. Rule 9(b)'s Requirements Have Been Met.**

Contrary to Defendant's argument, (Def.'s Mem. at 10:10-11:3), Rule 9(b)'s

requirements have been met.

In the Complaint, Plaintiff alleges that in August 2023 (the "when"), Plaintiff (the "who") purchased the gunmetal grey colored Aluminum Card Holder from Defendant's Website (the "where"). (Compl. ¶¶ 1, 7, 17.) Defendant's assumption that Plaintiff is required to plead the precise date of his purchase is wrong. *See Adams*, 2020 WL 4196248, at *5 ("November 2019" is "the when"); *Shimono*, 2016 WL 6238483, at *5 ("Plaintiff has alleged his own purchase of a security light with sufficient particularity to enable the defendant to 'prepare an adequate answer[.] Plaintiff alleges that he purchased a solar security light in ***June 2015***, which was listed at a 'sale' price of $39.99 and advertised with a strike-through price of $59.99.") (internal citation omitted and emphasis added); *Chester*, 2016 WL 4414768, at *12 (stating that one of the named plaintiffs sufficiently pled the "when" of when she purchased an item with the suspect price reference tag by noting that the complaint alleged that she made her purchase in "June 2015"). If the pleading of the precise month and year of a plaintiff's purchase of a product is sufficient to satisfy the "when" requirement of Rule 9(b) as was held in *Shimono*, then the Court should follow *Shimono* on this precise point.

The Complaint alleges that Defendant misled customers through the strikethrough prices on its Website including for the gunmetal grey colored aluminum cardholder that Plaintiff purchased (the "what"). (Compl. ¶¶ 13-34); *Chester*, 2016 WL 4414768, at *12 (holding that the plaintiffs sufficiently pled the "what" requirement "with their use of 'Compare At' pricing tags").

Regarding the "how" requirement, the Complaint alleges that the Website had a $80 actual price for the gunmetal grey colored aluminum cardholder product that he purchased, with a strikethrough price of $100. (Compl. ¶ 19.) The Complaint alleges that "Plaintiff purchased the card holder, but before doing so, relied on the representation that the product listed above had in fact been offered for sale, or previously sold, in the recent past at the stated Reference Price." (Compl. ¶ 21.) As the Court held in *Real*, 2017 WL 11675686, at *5, "a plaintiff must only provide sufficient

information to meet the reasonable consumer test for how and why the pricing was deceptive." "The focus is on whether enough facts support a reasonable consumer's reaction to an allegedly deceptive advertisement—***not whether enough facts can definitively prove fraud at the pleading stage***." *Chester*, 2016 WL 4414768, at *12 (emphasis added); *Shimono*, 2016 WL 6238483, at *5 (citing *Chester*). And, plaintiffs alleging a deceptive pricing scheme in similar circumstances "do not need to allege that the deal they received on their purchases was subpar, or even that the items were unfairly priced—such allegations are not required to state a UCL, FAL, or CLRA claim." *Chester*, 2016 WL 4414768, at *13. "Instead, simply meeting the 'reasonable consumer test' will suffice to meet the 'how' prong[.]" *Id.*

Multiple federal district courts have found that similar allegations were sufficient to plead a plausible claim alleging a misleading pricing scheme. *See, e.g.*, *Real*, 2017 WL 11675686, at *5; *Shimono*, 2016 WL 6238483, at *5-*6.

**1. Plaintiff's Counsel Undertook a Reasonable Pre-Filing Investigation.**

"It is true that some district courts have required plaintiffs to plead with particularity that they undertook an investigation of the price history of the defendants' products[,]" "[b]ut other district courts have held that no investigation is required to be pled at all." *Ostrovskaya v. St. John Knits, Inc.*, 2022 WL 2102895, at *3 (C.D. Cal. Mar. 31, 2022) (Gee, J.);[3] *Fisher*, 2020 WL 4218228, at *4 ("some district courts have found that 'plaintiffs are not required to plead that they had conducted a pre-suit investigation – or include the results of such investigations – in every case, particularly where the information is not within the personal knowledge of the pleader'") (quoting *Stathakos v. Columbia Sportswear Co.*, 2016 WL 1730001, at *4 (N.D. Cal. May 2, 2016)); *Ochoa*, 2023 WL 4291650, at *9 ("the Court finds persuasive Plaintiffs' argument that they should not be required at the pleading stage to 'time travel to get

[3] Notably, the Court in *Ostrovskaya* noted that it "does not believe that Rule 9(b) is so exacting" as was held in *Fisher v. Eddie Bauer LLC*, 2019 WL 9467922, at *6 (S.D. Cal. Oct. 18, 2019). Thus, the Court in *Ostrovskaya* held that *Fisher* was "unpersuasive" with respect to its Rule 9(b) analysis.

screenshots from their devices on' or before the dates they made their purchases."). Even as to the courts that require a plaintiff to conduct an investigation into the price history of the defendant's products, only "some facts" must be pled. *Shimono*, 2016 WL 6238483, at *5 ("Pursuant to Rule 9(b), '[p]laintiffs must conduct a reasonable investigation into their claims and plead at least some facts to bolster their 'belief' that the 'Compare At' prices were inaccurate.'") (quoting *Jacobo v. Ross Stores, Inc.*, 2016 WL 3482041, at *3 (C.D. Cal. Feb. 23, 2016)).

Assuming *arguendo* that a plaintiff must conduct a reasonable investigation into his or her claims and plead at least "some facts" to bolster the plaintiff's belief that the strikethrough prices were inaccurate, the Complaint alleges that Plaintiff has conducted an investigation into the price history of Defendant's products on the Website by using the Wayback Machine to determine the price history of Defendant's products. (Compl. ¶¶ 24-26); Bus. & Prof. Code § 17501 ("No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.").

Although Defendant challenges the adequacy of Plaintiff's investigation by purporting to rely upon the existence of the sale of certain products via its Amazon webpage, that webpage is inconsequential because ***Defendant has made no attempt to show, let alone, argue that the particular item that Plaintiff purchased in August 2023 in the gunmetal grey color has ever been on sale at $100 via such webpage***. Indeed, Plaintiff's investigation of the Amazon webpage indicates that the aluminum cardholder item in the gunmetal grey color is not available for purchase on Defendant's Amazon.com webpage.[4] (Ferrell Decl. ¶ 2.)

[4] The Court should consider Plaintiff's counsel's declaration only if the Court considers Defendant's extrinsic evidence in the form of the Cleary Declaration, (Doc. 23-1), and Exhibit 1 of Defendant's RJN, (Doc. 23-2).

Significantly, even if Plaintiff's investigation of Defendant's pricing before Plaintiff's purchase is viewed as inadequate, Plaintiff can still rely upon and conduct an investigation ***subsequent*** to Plaintiff's purchase as was the case in *Real* in which the "Plaintiffs' investigation took place ***a year after Plaintiff Real's purchase***." *Real*, 2017 WL 11675686, at *5 (emphasis added); *id.* ("***This Court declines to find that an investigation must take place prior to or concurrently with a plaintiff's purchase to plead a sufficient claim***.") (emphasis added); *Ochoa*, 2023 WL 4291650, at *9 ("Evidence that the same sale price was offered on multiple occasions ***at later dates*** supports those theories.") (emphasis added). Surely, the fact that the Amazon webpage currently does not show even a single aluminum cardholder offered for sale at $100 in any color (nor even a former price in that precise amount) further bolsters Plaintiff's position. (Ferrell Decl. ¶ 3.) Plaintiff is amenable to amending the Complaint to plead the fact that Plaintiff's investigation of the Amazon.com webpage of Defendant currently does not show even a single aluminum cardholder offered for sale at $100 in any color (nor even a former price in that precise amount).

In addition, the heightened standard for pleading fraud under Rule 9(b) is relaxed insofar as a plaintiff cannot reasonably be expected to have access to pricing practices of the defendant. *Rubenstein*, 687 Fed. Appx. at 568 ("Without an opportunity to conduct any discovery, [plaintiff] cannot reasonably be expected to have detailed personal knowledge of [defendant's] internal pricing policies or procedures for its [outlet] stores."); *Covell*, 2018 WL 558976, at *4 ("Without an opportunity to conduct any discovery, Plaintiff cannot reasonably be expected to have detailed personal knowledge of [Defendant's] internal pricing policies."); *Rael*, 2017 WL 3021019, at *4 ("the information about the discounts offered by Defendants is primarily within the Defendants' knowledge"); *Chester*, 2016 WL 4414768, at *12 ("Contrary to Defendants' wishes, litigants do not need to plead the 'who, what, when, where, and how' ***when access to answers for those questions is in Defendants' control***.") (emphasis added). Assuming *arguendo* that Defendant's Amazon.com webpage did

offer for sale the aluminum cardholder item in the gunmetal grey color at some point in time in the past, it would have been unreasonable to expect Plaintiff to have knowledge of such pricing practices especially if Defendant offered such item for sale at $100 long before Plaintiff made his purchase from the Website.

Instead, a plaintiff must plead with particularity how and why he was personally deceived by the defendant's advertising. *Chester*, 2016 WL 4414768, at *12 ("Instead, a plaintiff must 'plead[ ] with particularity how and why he was personally deceived by the 'Compare At' tags.'") (quoting *Branca v. Nordstrom, Inc.*, 2015 WL 10436858, at *7 (S.D. Cal. Oct. 9, 2015)). Plaintiff has done so here.

"Plaintiff has pled enough to put Defendant on notice of the circumstances of the alleged fraudulent practices." *Ostrovskaya*, 2022 WL 2102895, at *4. "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision on [a motion to dismiss]." *Williams*, 552 F.3d at 938. "The Ninth Circuit has yet to address in a published opinion the level of factual detail required under Rule 9(b) to sufficiently plead similar claims brought under the FAL, UCL, and CLRA." *Fisher*, 2020 WL 4218228, at *4.

**2. Plaintiff Need Not Plead the Prevailing Market Price at This Juncture to Support His FAL Claim.**

Although Defendant contends that Plaintiff must plead the prevailing market price in order to support the FAL claim under Bus. and Prof. Code § 17501, (Def.'s Mem. at 9:5-10:10), Defendant ignores the case authority rejecting the imposition of any such purported requirement. *Calderon*, 2020 WL 1062930, at *6 ("Defendant is in the best position to know its internal pricing policies. Plaintiffs would not have knowledge of the actual prices of the merchandise without access to discovery."); *Chester*, 2016 WL 4414768, at *12 ("Plaintiffs are not required to list … *what the reference price should have been* in order to survive a Motion to Dismiss.") (emphasis in original), at *13 ("this Court refuses to require Plaintiffs to know what the reference price 'should have been,' as 'facts supporting allegations of fraud that are exclusively within the defendant's

possession and of which a plaintiff cannot be expected to have personal knowledge prior to discovery' are not held to Rule 9's heightened strictures.") (denying motion to dismiss FAL, UCL, and CLRA claims) ("Plaintiffs cannot be expected to know what a particular item sold for in every retailer in southern California in a given month[.]").

In addition, "courts have held that the difference between the price Plaintiffs' paid, and the value of the product received is … not the exclusive form of measuring damages." *Calderon*, 2020 WL 1062930, at *7, *8 ("the question of whether Plaintiffs can later prove the amount of monetary restitution is a question better addressed at a later stage") ("the Court could fashion a remedy by rescinding the transactions and refunding the amounts paid for the goods"); *Freeman*, 443 F. Supp. 3d at 1113 ("Determination of whether plaintiff can offer a viable model for measuring restitution is premature at this point in the litigation."); *Russell v. Kohl's Department Stores, Inc.*, 2015 WL 12781206, at *5 (C.D. Cal. Oct. 6, 2015) (Klausner, J.) ("While it remains to be seen whether Plaintiffs can adduce sufficient evidence of a measurable amount of restitution, such an inquiry is premature at this early pleading stage."); *Evans*, 2017 WL 7058233, at *11 ("Plaintiff is not required to show that she paid more than the 'actual value' of the shoes to state claims under the FAL, UCL, and CLRA."); *Chase v. Hobby Lobby Stores, Inc.*, 2017 WL 4358146, at *10 (S.D. Cal. Oct. 2, 2017) ("the 'price to value method' does not set forth the exclusive measure of restitution available in a consumer fraud case").

Finally, the Ninth Circuit has held in a similar deceptive reference pricing case that a plaintiff need not plead how much such plaintiff would have paid for the purchased merchandise without the deceptive pricing representation. *Hinojos*, 718 F.3d at 1105 ("There is no requirement … that [plaintiff] separately plead how much he would have paid for the merchandise had he known its true market value.").

**C.    The Fourth Claim Is Also Predicated Upon Affirmative Misrepresentations.**

Defendant's assumption that the fourth claim for relief is limited to a fraudulent concealment theory of liability is mistaken.  Notably, the fourth claim pled in the

Complaint incorporates all preceding paragraphs "as if fully set forth herein." (Compl. ¶ 77.) That includes the Complaint's allegations of affirmative misrepresentations including the strikethrough pricing misrepresentations. (Compl. ¶ 17); *Covell*, 2018 WL 558976, at *4 & n.2 ("Plaintiff has adequately pled claims based on affirmative misrepresentations").

**1. The Economic Loss Rule Does Not Apply to Affirmative Misrepresentations.**

Defendant's argument that the fourth claim is barred by the economic loss rule is without merit because "the California Supreme Court has held that the economic loss rule does not bar fraud claims premised on affirmative misrepresentations." *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1191 (9th Cir. 2021) (citing *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal. 4th 979, 991-92 (2004)).

**2. The Economic Loss Rule Does Not Apply to Fraudulent Concealment.**

Although Defendant contends that the fourth claim is barred by the economic loss rule under the fraudulent concealment theory alleged in the Complaint, Defendant ignores *Dhital v. Nissan North Amer., Inc.*, 84 Cal. App. 5th 828, 843 (2022), *rev. granted*, No. S277568, 523 P.3d 392 (Feb. 1, 2023), which concluded that "under California law, the economic loss rule does not bar plaintiffs' claim here for fraudulent inducement by concealment." *Id.* at 843.

Although the California Supreme Court has granted review in *Dhital*, this does not affect the status of the Court of Appeal's decision as a published decision. *See* Rule of Court 8.1105(e)(1)(B) ("Grant of review by the Supreme Court of a decision by the Court of Appeal does not affect the appellate court's certification of the opinion for full or partial publication under rule 8.1105(b)…."). Under Rule of Court 8.1105(e)(2), "The Supreme Court may order that an opinion certified for publication is not to be published ….The Supreme Court may also order depublication of part of an opinion at any time after granting review." In granting review of *Dhital*, the California Supreme Court has expressly stated, "The request for an order directing depublication of the

opinion is denied." *Dhital v. Nissan North Amer.*, 523 P.3d 392, 393, 304 Cal. Rptr. 3d 82 (2023).

It is also noteworthy that in response to the Ninth Circuit's certification of the question, "Under California law, are claims for fraudulent concealment exempted from the economic loss rule?," in *Rattagan v. Uber Techs., Inc.*, 19 F.4th 1188, 1193 (9th Cir. 2021), the California Supreme Court granted the Ninth Circuit's request for certification on February 9, 2022, nearly two full years ago. *Rattagan v. Uber Techs.*, No. S272113 (Feb. 9, 2022). The matter before the California Supreme Court is fully briefed. Oral argument has yet to be calendared. https://appellatecases.courtinfo.ca.gov/search/case/dockets.cfm?dist=0&doc_id=2369232&doc_no=S272113&request_token=NiIwLSEmLkg%2BW1BdSCJNSEhJQFQ0UDxTJCI%2BQztTQCAgCg%3D%3D (last visited Nov. 24, 2023).

Thus, unless this Court is convinced that the Supreme Court would disagree with the Court of Appeal's holding in *Dhital*, which seems unlikely given that the Supreme Court expressly decided not to de-publish *Dhital*, the Court should follow *Dhital*.

Given that the California Supreme Court granted review of *Rattagan* nearly two years ago and given that *Dhittal* was published over a year ago, Defendant has no excuse for omitting either *Dhittal* or the granting of review in *Rattagan*.

**3. A Party Is Not Required to Plead with Specificity the Alleged Wrongdoer's State of Mind.**

Although Defendant contends that the fraudulent concealment claim for relief should be dismissed because the Complaint allegedly fails to show how Defendant "intentionally" misled Plaintiff or anybody else, (Def.'s Mem. at 12:9), "a party is not required to plead with specificity the alleged wrongdoer's state of mind." *Chester*, 2016 WL 4414768, at *5 (citing *Concha v. London*, 62 F.3d 1493, 1503 (9th Cir. 1995)).

In any event, evidence of the advertisement "strongly supports an inference that the *designer* of the advertisements knew or should have known of this potential [misleading] impact" on consumers. *Overstock.com*, 12 Cal. App. 5th at 1085

(emphasis in original).  "Proof of knowledge, like any other fact, can be circumstantial." *Id.* at 1086.

**D.      Leave to Amend Should Be Granted.**

Leave to amend should be granted to allow Plaintiff an opportunity to address any curable defects.  *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000); Fed. R. Civ. P. Rule 15(a)(2).


Dated:  December 6, 2023               PACIFIC TRIAL ATTORNEYS, P.C.

                                      By: */s/ Scott J. Ferrell*
                                      Scott. J. Ferrell
                                      Attorney for Plaintiff

## CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,969 words, which complies with the word limit of L.R. 11-6.1.

Dated: December 6, 2023

*/s/ Scott J. Ferrell*
Scott J. Ferrell