**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469

Attorneys for Plaintiff

~~SUPERIOR COURT FOR THE~~

UNITED STATE DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

~~COUNTY OF LOS ANGELES~~

| | |
|---|---|
| THOMAS ~~PURCELLEY~~PURSCELLEY, individually and on behalf of all others similarly situated, <br><br>       Plaintiff, <br><br>      v. <br><br> EKSTER INC., a Delaware corporation; and DOES 1 to 10, inclusive, <br><br>       Defendants. | CASE NO. 2:23-cv-07908-WLH-JC <br><br> FIRST AMENDED CLASS ACTION COMPLAINT FOR: <br><br> 1. Violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*; <br> 2. Violation of California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.* <br> 3. Violation of the California Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq.*; and <br> 4. Fraudulent Concealment. <br><br> [Plaintiff's CLRA Venue Affidavit filed concurrently herewith] |

-1-

~~CLASS ACTION~~FIRST AMENDED COMPLAINT

Style Definition: Comment Text
Formatted: Font: 14 pt
Formatted: Font: 14 pt
Formatted: Font: 14 pt
Formatted: Font: 14 pt
Formatted: Font: 14 pt
Formatted: Font: 14 pt
Formatted: Font: 14 pt
Formatted: Font: 14 pt
Formatted: Font: 14 pt
Formatted: Font: 14 pt

Plaintiff Thomas ~~Purcelley~~Purscelley ("Plaintiff"), individually and on behalf of all others similarly situated, complains and alleges as follows based upon personal knowledge as to himself, on the investigation of his counsel, and on information and belief as to all other matters. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth in this complaint after a reasonable opportunity for discovery.

## NATURE OF ACTION

1.     This class action is brought against Ekster Inc. ("Defendant") for its unlawful, unfair, and fraudulent business practice of advertising fictitious prices and corresponding phantom discounts on its wallets and many other items sold through its website, https://www.ekster.com/ (the "Website"). This practice of false reference pricing occurs when a retailer fabricates a fake regular, original, and/or former reference price, and then offers an item for sale at a "discounted" price. The result is a sham price disparity that misleads consumers into believing they are receiving a good deal and induces them into making a purchase. Companies like Defendant drastically benefit from employing a false reference pricing scheme and experience increased sales.

2.     The California legislature prohibits this misleading practice. The law recognizes the reality that consumers often purchase merchandise marketed as being "on sale" purely because the proffered discount seemed too good to pass up. Accordingly, retailers like Defendant have an incentive to lie to customers and advertise false sales. The resulting harm is tangible—the bargain hunter's expectations about the product they purchased is that it has a higher perceived value, and he may not have purchased the product but for the false savings.

3.     The advertised discounts are fictitious because the reference price does not represent a *bona fide* price at which Defendant previously sold a substantial quantity of the merchandise for a reasonable period of time (or at all) as required by the Federal Trade Commission ("FTC"). In addition, the represented

-2-

reference price was not the prevailing market retail price within the three months immediately preceding the publication of the advertised former reference price, as required by California law. The deception is magnified for these products because the representation of the false reference price leads consumers like Plaintiff to believe they are purchasing a product of substantially higher quality and that they are purchasing a product that was previously offered for sale at the significantly higher reference price.

4. Through its false and misleading marketing, advertising, and pricing scheme, Defendant violated and continues to violate California law, which prohibits (1) advertising goods for sale as discounted from former prices that are false, and (2) misleading statements about the existence and amount of price reductions. Specifically, Defendant violated and continues to violate: California's Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.* (the "UCL"); California's False Advertising Law, Business & Professions Code §§ 17500, *et seq.* (the "FAL"); the California Consumer Legal Remedies Act, California Civil Code §§ 1750, *et seq.* (the "CLRA"); and the Federal Trade Commission Act ("FTCA"), 15 U.S.C. §§ 45, 52.

5. Plaintiff brings this action on behalf of himself and other similarly situated California consumers who have purchased one or more wallets, card holders, and/or other items, from Defendant's Website that were deceptively represented as discounted from false former reference prices in order to halt the dissemination of this false, misleading, and deceptive pricing scheme, to correct the false and misleading perception it has created in the minds of consumers, and obtain redress for those who have purchased merchandise tainted by this deceptive pricing scheme. Plaintiff seeks to obtain damages, injunctive relief, and other appropriate relief as a result of Defendant's sales of merchandise offered at a false discount.

6. Finally, Plaintiff seeks reasonable attorneys' fees pursuant to

-3-

California Code of Civil Procedure § 1021.5, as this lawsuit seeks the enforcement of an important right affecting the public interest and satisfies the statutory requirements for an award of attorneys' fees.

**THE PARTIES**

7.    Plaintiff is a citizen of the State of California and resident of the County of Los Angeles. Plaintiff, in reliance on Defendant's false and deceptive pricing, purchased Defendant's "Aluminum Card Holder" in August 2023 from Defendant's Website for $80.00.[1]

8.    Plaintiff is informed and believes, and upon such information and belief alleges, that Defendant is a Delaware corporation with its principal place of business in New York, New York.

9.    Plaintiff does not know the true names or capacities of the persons or entities sued as DOES 1 to 10, inclusive, and therefore sues such Defendants by such fictitious names. Plaintiff is informed and believes, and upon such information and belief alleges, that each of the DOE Defendants is in some manner legally responsible for the damages suffered by Plaintiff and the Class members as alleged in this Complaint. Defendants shall together be referred to as "Defendant."

**JURISDICTION AND VENUE**

10.    This Court has jurisdiction over all causes of action asserted herein.

11.    Venue is proper in this County in accordance with California Civil Code section 1780(d) because Plaintiff purchased Defendant's product while located in Los Angeles County.

12.    Defendant is subject to jurisdiction under California's "long-arm" statute found at California Code of Civil Procedure section 410.10 because the exercise of jurisdiction over Defendant is not "inconsistent with the Constitution of this state or the United States."  Indeed, Plaintiff believes that Defendant generates a minimum of eight percent of its national Website sales to Californians, such that

---

[1] Plaintiff's total purchase price was $88.20, which included tax.

CLASS ACTION FIRST AMENDED COMPLAINT

the website "is the equivalent of a physical store in California." Since this case involves false representations made on Defendant's Website, and Plaintiff's purchase was made through the Website from within Los Angeles County, California, California courts can "properly exercise personal jurisdiction" over the Defendant in accordance with the Court of Appeal opinion in *Thurston v. Fairfield Collectibles of Georgia*, 53 Cal.App.5th 1231 (2020).

## GENERAL ALLEGATIONS

13.    Defendant, through its Website, offers a number of wallets, card holders, bags, accessories, and related items, to California consumers. *See* https://www.ekster.com/ (last visited Aug. 10, 2023).

14.    Unfortunately, Defendant's business model relies upon deceiving customers with fake sales. On a typical day, Defendant prominently displays on pages of the Website some form of a sale where all products are supposedly marked down by approximately 20% - 30%. All or nearly all of Defendant's products on the Website are represented as being significantly marked down from a substantially higher original or reference price, which is prominently displayed to the customer as being the supposed original price (the "Reference Price"), as shown in the following:





*See* https://www.ekster.com/collections/all-wallets (last visited Aug. 10, 2023).

15.   By doing this, Defendant conveys to customers that the products had previously sold in the recent past at the Reference Price, but are being sold to the

-6-

CLASS ACTION FIRST AMENDED  COMPLAINT

Formatted: Font: 14 pt

Formatted: Font: 14 pt, Italic

Formatted: Font: 14 pt

Formatted: Font: 14 pt

Formatted: Font: 14 pt

Formatted: Font: 14 pt

customer at a substantial discount.

16.     However, this Reference Price in the "sale" is almost always—if not always—a falsely inflated price because Defendant rarely, if ever, sells its items at the Reference Price. The only purpose of the Reference Price is to mislead customers into believing that the displayed Reference Price is an original, regular, or retail price at which Defendant usually sells the item or previously sold the item in the recent past. As a result, Defendant falsely conveys to customers that they are receiving a substantial markdown or discount, when in reality, the alleged discount is false and fraudulent.

17.     For example, on the individual product pages of all (or nearly all) of Defendant's products offered on the Website, each product is represented as being marked down and included this representation beside the crossed-out fake Reference Price. For example, the "Aluminum Cardholder" in gunmetal grey (the exact Product Plaintiff purchased) is being offered for $80 with a stricken price of $100 (the Reference Price):



*See* https://www.ekster.com/products/aluminum-cardholder?variant=40126524031039*See* https://www.ekster.com/products/aluminum-

CLASS ACTIONFIRST AMENDED  COMPLAINT

Formatted: Font: 14 pt

Formatted: Font: 14 pt

Formatted: Tab stops:  1.69", Left

cardholder?variant=40126524031039 (last visited Aug. 10, 2023).[2]

18. These pricing and advertising practices reflecting high-pressure fake sales are patently deceptive. They are intended to mislead customers into believing that they are getting a bargain by buying products from Defendant on sale and at a substantial and deep discount. The truth is that Defendant rarely, if ever, sells any of its products at the Reference Price. The Reference Price is, therefore, an artificially inflated price. In turn, the advertised discounts are nothing more than phantom markdowns.

19. What is more, Defendant's products, which are in some cases sold by a handful of other third-party retailers, are, upon information and belief, always sold in accordance with Defendant's own retail pricing guidelines—none of which call for the products to ever be sold at the Reference Price. In other words, Defendant sets its own price for its products, a price below that of the Reference Price, and then directs other third parties to sell the products below the Reference Price as well.

20. Plaintiff is unaware of any third-party retailers who sold the products at the Reference Price at any time prior to the commencement of this lawsuit, let alone within 90 days prior to his purchase of Defendant's product.

**A. Plaintiff's Purchase of the Falsely Advertised Card Holder.**

~~19.~~21. Plaintiff fell victim to Defendant's false advertising and deceptive pricing practices. In August 2023, Plaintiff visited Defendant's Website to shop for a card holder. Plaintiff visited the Website while in Los Angeles County. Plaintiff browsed the Website and observed that all of Defendant's products had a Reference Price that was crossed out and a sale price included. He found the "Aluminum Cardholder" in ~~gunmetal grey~~the color "Astral" that was listed as:

~~$100~~

[2] As of the date of filing of this complaint, other "Aluminum Cardholder" versions are being listed at $72 with a stricken price of $90. Plaintiff purchase one of the "NEW" "Aluminum Cardholders" which are listed at $80 with a stricken price of $100. *See* https://www.ekster.com/products/aluminum-cardholder (last visited Aug. 11, 2023).

Formatted: Font: 14 pt

Formatted: Font: 14 pt

Formatted: Font: 14 pt

Formatted: Font: 14 pt

Formatted: Font: 14 pt

**$80**

20.22. In other words, Plaintiff saw that Defendant represented the card holder as supposedly being on sale at a markdown from a Reference Price. The Reference Price was displayed as a substantially higher price containing a strikethrough.

23.    Additionally, as of the date when Plaintiff purchased the wallet, Ekster was advertising this pricing as part of its so-called sitewide "summer sale:"



24.    In actuality, however, these so-called "sale prices" were the prices at which Ekster always offered its products for sale.

21.25. Plaintiff purchased the card holder, but before doing so, relied on the representation that the product listed above had in fact been offered for sale, or previously sold, in the recent past at the stated Reference Price. Plaintiff relied on Defendant's representation that the card holder was truly on sale and being sold at a substantial markdown and discount, and thereby fell victim to the deception intended by Defendant.

22.26. Plaintiff paid $80.00 for the card holder, excluding tax.

23.27. The truth, however, is that the card holder Plaintiff purchased was not substantially marked down or discounted, or at the very least, any discount he was

Formatted: Font: 14 pt

-9-

receiving had been grossly exaggerated. That is because the card holder Plaintiff bought had never been offered on Defendant's Website or by any other retailer for any reasonably substantial period of time—if ever—at the full Reference Price of $100. In fact, for at least the 90-day period prior to Plaintiff's purchase (and likely for a longer period), Defendant had not offered the card holder at the Reference Price.

24.28. The Reference Price was a fake price used in Defendant's deceptive marketing scheme, which is clear from evidence captured on the "WayBack Machine," an online tool that allows users to view screenshots of websites at particular points in time.  *See* https://archive.org/web/ (explaining how the WayBack Machine captures screenshots from websites created years ago, and allows users to see snapshots of websites it has navigated and archived at various time periods; the tool archives more than 150 billion web pages that have appeared since 1996, creating a digital footprint of everything that has appeared on any given website at various points in time); *see also Marten Transport, LTD v. Platform Advertising, Inc.*, No. 14-2464-JWL, 2016 WL 1718862, at *2 (D. Kan. Apr. 29, 2016) (relying on the WayBack Machine as a source of competent evidence).

29.   More specifically, as shown by the WayBack Machine's screen capture of Defendant's website at various points in time, Defendant was employing the *nearly the exact same Reference Price in January 2023*.[3] In other words, Defendant has not been selling the Product at the Reference Price in the recent past—let alone in the past three months:

---

[3] In January 2023, the Reference Price for the "Aluminum Cardholder" was $89 instead of $90.

CLASS ACTIONFIRST AMENDED  COMPLAINT



*See* https://web.archive.org/web/20230123221732/https://ekster.com/em-cgi/btag/collections/all-wallets (last visited Aug. 11, 2023).

30.   In fact, Ekster even advertised these products as being on a "New Year's Sale" of "up to 35% off," as seen above—all while offering its products at the exact same price as previous products had been offered.

-11-

CLASS ACTION FIRST AMENDED COMPLAINT

26.31. Indeed, approximately three months ago in April 2023, Defendant was listing its card holders with the same Reference Price as listed at the time of filing this complaint, once again describing this supposed sale as "30% off sitewide":



See https://web.archive.org/web/20230414015524/https://ekster.com/em-cgi/btag/products/aluminum-cardholder/ (last visited Aug. 11, 2023).

27.32. Defendant knows that the prices are fake and artificially inflated, and intentionally uses them in its deceptive pricing scheme on its Website to increase sales and profits by misleading Plaintiff and members of the putative class to believe that they are buying products at a substantial discount. Defendant thereby

CLASS ACTIONFIRST AMENDED COMPLAINT

induces customers to buy products they never would have bought—or at the very least, to pay more for merchandise than they otherwise would have if Defendant was simply being truthful about its "sales."

33.   ~~Therefore,~~ Defendant also operates a webstore located on Amazon.com, located at https://www.amazon.com/stores/Ekster/page/F91074DD-81A1-413E-B753-AB7DC2C4A164?ref_=ast_bln, where it sells its products.

34.   Historical pricing data for the Amazon store, available at https://camelcamelcamel.com/product/B08HW22N9H, matches with the pricing offered on Ekster.com. For instance, pricing for the Aluminum Cardholder was never offered at a price higher than $80 prior to May, 2023, at which point the product was offered for sale at $89 for the very first time. It has never been offered for sale at $100 at any time since 2021:



35.   Upon information and belief, Ekster.com and the Amazon webstore are the only major retailers from which California consumers like Plaintiff have purchased Ekster's products.

36.   While third-party retailers may exist, they have minimal footprint—particularly in comparison with Ekster.com and Amazon.

37.   For example, Ekster products are available for purchase on

~~CLASS ACTION~~FIRST AMENDED COMPLAINT

productpine.com, a UK-based company that sells the product internationally: https://productpine.com/products/ekster-aluminum-cardholder?variant=42428653174997. Upon information and belief, Ekster products were never offered at the Reference Price on this site.

38.   Ekster products are also sold on kinzd.com, where the Aluminum Cardholder is currently priced at $89 and ships directly to consumers from Hong Kong:   https://www.kinzd.com/products/ekster-aluminum-cardholder-wallet-for-men-metal-wallets-with-rfid-blocking-layer-slim-minimalist-aluminum-wallet-with-push-button-for-quick-card-access-silver. Upon information and belief, Ekster products were never offered at the Reference Price on this site.

39.   Indeed, searching for Ekster brand products available for purchase new on Google's shopping tool reveals only three retailers: Amazon (via Defendant's webstore), Ekster.com, and eBay, where individual sellers offer new Ekster products available for sale: https://www.google.com/search?sca_esv=683c3575b4f35c07&rlz=1C1GCEU_enUS1105US1105&tbm=shop&sxsrf=ACQVn08D5Kb0tIjQ21gULXt6qddwjD3-TA:1712948716502&q=ekster+wallet&prmd=sivnmbtz&tbs=mr:1,new:1,merchagg:g6296794%7Cm6296724,pdtr0:965410%7C4045227&sa=X&ved=0ahUKEwigpI-er72FAxVrLkQIHafaAWUQsysI2g4oAQ&biw=638&bih=549&dpr=1.5.

40.   In other words, at no point, let alone within 90 days prior to the date when Plaintiff purchased the Product, was the Product offered for sale at the Reference Price by any authorized U.S.-targeted retailer.

41.   At no point, let alone within 90 days prior to the date when Plaintiff purchased the Product, was the Reference Price the prevailing market price for the Product, whether sold directly by Defendant either at Ekster.com or at its Amazon webstore, or at any other retailer.

42.   The same is true with respect to all other products offered for sale by Defendant, all of which utilize the same false strikethrough pricing and are

<div align="center">-14-</div>

<div align="center">CLASS ACTION FIRST AMENDED COMPLAINT</div>

advertised as being on "sale."

43.    Plaintiff reasonably relied on the false strikethrough pricing, which Defendant characterized as part of its "sitewide sale," in believing that the Product was offered at a discount, and had a higher value than the sale price (that of the Reference Price).

28.44. Plaintiff would not have purchased the Product listed above, or at the very least, would not have paid as much as he did, had Defendant been truthful. Plaintiff was persuaded to make his purchase only because of the fake sale based on Defendant's fake Reference Price scheme.  Plaintiff is susceptible to this recurring harm because he cannot be certain that Defendant has corrected this deceptive pricing scheme, and he desires to shop at Defendant's online store in the future.

**B.** **Research Shows That the Use of Reference Price Advertising Schemes Similar to Defendant's Influences Consumer Behavior and Affects Consumers' Perceptions of a Product's Value.**

29.45. The effectiveness of Defendant's deceitful pricing scheme is backed by longstanding scholarly research. In the seminal article entitled *Comparative Price Advertising: Informative or Deceptive?* (cited in *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1106 (9th Cir. 2013)), Professors Dhruv Grewal and Larry D. Compeau write that, "[b]y creating an impression of savings, the presence of a higher reference price enhances subjects' perceived value and willingness to buy the product." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Informative or Deceptive?*, 11 J. PUB. POL'Y & MKTG. 52, 55 (1992). Therefore, "empirical studies indicate that, as discount size increases, consumers' perceptions of value and their willingness to buy the product increase, while their intention to search for a lower price decreases." *Id*. at 56. For this reason, the Ninth Circuit in *Hinojos* held that a plaintiff making a claim of deceptive pricing (strikingly similar to the claim at issue here) had standing to pursue his claim against the defendant

-15-

CLASS ACTIONFIRST AMENDED COMPLAINT

**Formatted:** Font: 14 pt

retailer. In doing so, the Court observed that "[m]isinformation about a product's 'normal' price is . . . significant to many consumers in the same way as a false product label would be." *Hinojos*, 718 F.3d at 1106.

~~30.~~46. Professors Compeau and Grewal reached similar conclusions in a 2002 article: "decades of research support the conclusion that advertised reference prices do indeed enhance consumers' perceptions of the value of the deal." Dhruv Grewal & Larry D. Compeau, *Comparative Price Advertising: Believe It or Not*, 36 J. OF CONSUMER AFFAIRS 287 (2002). The professors also found that "[c]onsumers are influenced by comparison prices even when the stated reference prices are implausibly high." *Id.*

~~31.~~47. In another scholarly publication, Professors Joan Lindsey-Mullikin and Ross D. Petty concluded that "[r]eference price ads strongly influence consumer perceptions of value . . . Consumers often make purchases not based on price but because a retailer assures them that a deal is a good bargain. This occurs when . . . the retailer highlights the relative savings compared with the prices of competitors." Joan Lindsey-Mullikin & Ross D. Petty, *Marketing Tactics Discouraging Price Search: Deception and Competition*, 64 J. OF BUS. RESEARCH 67 (2011).

~~32.~~48. Similarly, according to Professors Praveen K. Kopalle and Joan Lindsey-Mullikin, "research has shown that retailer-supplied reference prices clearly enhance buyers' perceptions of value" and "have a significant impact on consumer purchasing decisions." Praveen K. Kopalle & Joan Lindsey-Mullikin, *The Impact of External Reference Price on Consumer Price Expectations*, 79 J. OF RETAILING 225 (2003).

~~33.~~49. The results of a 1990 study by Professors Jerry B. Gotlieb and Cyndy Thomas Fitzgerald, came to the conclusion that "reference prices are important cues consumers use when making the decision concerning how much they are willing to pay for the product." Jerry B. Gotlieb & Cyndy Thomas Fitzgerald, *An*

1   *Investigation into the Effects of Advertised Reference Prices on the Price*

2   *Consumers Are Willing to Pay for the Product*, 6 J. OF APP'D BUS. RES. 1 (1990).

3   This study also concluded that "consumers are likely to be misled into a willingness

4   to pay a higher price for a product simply because the product has a higher reference

5   price." *Id.*

6   ~~34.~~50. The unmistakable inference to be drawn from this research and the

7   Ninth Circuit's opinion in *Hinojos* is that the deceptive advertising through the use

8   of false reference pricing employed here by Defendant is intended to, and does in

9   fact, influence customer behavior—as it did Plaintiff's purchasing decision here—

10  by artificially inflating customer perceptions of a given item's value and causing

11  customers to spend money they otherwise would not have, purchase items they

12  otherwise would not have, and/or spend more money for a product than they

13  otherwise would have absent the deceptive advertising.

14                          **CLASS ACTION ALLEGATIONS**

15  ~~35.~~51. Plaintiff brings this action on behalf of himself and all persons

16  similarly situated, and seeks certification of the following class:

17          All persons who purchased one or more of Defendant's products from

18          Defendant's Website while in California from August 1, 2020,

19          through the present (the "Class Period") at a discount from a higher

20          reference price and who have not received a refund or credit for their

21          purchase(s).

22          ~~36.~~52.     The above-described class of persons shall hereafter be referred

23  to as the "Class." Excluded from the Class are any and all past or present officers,

24  directors, or employees of Defendant, any judge who presides over this action, and

25  any partner or employee of Class Counsel. Plaintiff reserves the right to expand,

26  limit, modify, or amend this class definition, including the addition of one or more

27  subclasses, in connection with his motion for class certification, or at any other

28  time, based upon, *inter alia*, changing circumstances and/or new facts obtained

-17-

~~CLASS ACTION~~FIRST AMENDED COMPLAINT

during discovery.

37.53. **Numerosity**. The Class is so numerous that joinder of all members in one action is impracticable. The exact number and identities of the members of the Class is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, but on information and belief, Plaintiff alleges that there are thousands of members of the Class. The precise number of Class members is unknown to Plaintiff.

38.54. **Typicality**. Plaintiff's claims are typical of those of other members of the Class, all of whom have suffered similar harm due to Defendant's course of conduct as described in this Complaint. All Class members have been deceived (or were likely to be deceived) by Defendant's false and deceptive price advertising scheme, as alleged in this Complaint. Plaintiff is advancing the same claims and legal theories on behalf of herself and all Class members.

39.55. **Adequacy of Representation**. Plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class. Plaintiff has retained attorneys who are experienced in the handling of complex litigation and class actions, and Plaintiff and his counsel intend to prosecute this action vigorously. Plaintiff has no antagonistic or adverse interests to those of the Class.

40.56. **Predominance of Common Questions of Law or Fact**. Common questions of law and fact exist as to all members of the Class that predominate over any questions affecting only individual members of the Class. These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

     a) Whether, during the Class Period, Defendant advertised false Reference Prices of its products offered on its Website.

     b) Whether, during the Class Period, Defendant advertised price discounts from false Reference Prices on products offered on its

-18-

Website.

c)   Whether the products listed on Defendant's Website during the Class Period were offered at their Reference Prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their Reference Prices.

d)   Whether the Reference Prices were the prevailing market price at any retailer other than Defendant, to the extent such retailers existed for a California market.

d)e)   Whether Defendant's deceptive pricing scheme using false Reference Prices constitutes an "unlawful," "unfair," or "fraudulent" business practice in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq.*

e)f)   Whether Defendant's deceptive pricing scheme using false Reference Prices constitutes "unfair, deceptive, untrue or misleading advertising" in violation of the California Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq.*

f)g)   Whether Defendant's deceptive pricing scheme using false Reference Prices constitutes false advertising in violation of the California False Advertising Law under Business & Professions Code §§ 17500, *et seq.*

g)h)   Whether Defendant's false Reference Prices on products offered on its Website during the Class Period are false representations.

h)i)   Whether and when Defendant learned that false Reference Prices on products offered on its Website during the Class Period were false representations.

i)j)   Whether Defendant had a duty to disclose to its customers that the Reference Prices were fake "original" prices in furtherance of sham sales.

-19-

Formatted: Font: 14 pt

j)k)  To what extent did Defendant's conduct causes, and continues to cause, harm to the Class.

k)l)  Whether the members of the Class are entitled to damages and/or restitution.

l)m) Whether injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising.

m)n) Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

41.57. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all members of the Class is impracticable. Requiring each individual class member to file an individual lawsuit would unreasonably consume the amounts that may be recovered. Even if every member of the Class could afford individual litigation, the adjudication of at least thousands of identical claims would be unduly burdensome to the courts. Individualized litigation would also present the potential for varying, inconsistent, or contradictory judgments and would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.

42.58. By contrast, the conduct of this action as a class action, with respect to some or all of the issues presented, presents no management difficulties, conserves the resources of the parties and of the court system, and protects the rights of the members of the Class. Plaintiff anticipates no difficulty in the management of this action as a class action. The prosecution of separate actions by individual members of the Class may create a risk of adjudications with respect to them that would, as a practical matter, be dispositive of the interests of the other members of the Class who are not parties to such adjudications, or that would

-20-

1    substantially impair or impede the ability of such non-party Class members to

2    protect their interests.

3        13.59. **Ascertainability**. Upon information and belief, Defendant keeps

4    extensive computerized records of their sales and customers through, among other

5    things, databases storing customer orders, customer order histories, customer

6    profiles, customer loyalty programs, and general marketing programs. Defendant

7    has one or more databases through which a significant majority of members of the

8    Class may be identified and ascertained, and they maintain contact information,

9    including email addresses and home addresses (such as billing, mailing, and

10   shipping addresses), through which notice of this action is capable of being

11   disseminated in accordance with due process requirements.

12                              **CAUSES OF ACTION**

13                              **First Cause of Action**

14            **Violation of California's Unfair Competition Law**

15            **Cal. Bus. & Prof. Code §§ 17200, *et seq*.**

16        **(By Plaintiff Against Defendants on Behalf of the Class)**

17       44.60. Plaintiff repeats and re-alleges the allegations contained in every

18   preceding paragraph as if fully set forth herein.

19       45.61. California Business and Professions Code §§ 17200 *et seq*., also

20   known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair

21   competition," including any "unlawful, unfair or fraudulent business act or

22   practice" as well as "unfair, deceptive, untrue or misleading advertising." Cal. Bus.

23   & Prof. Code § 17200.

24       46.62. The UCL imposes strict liability. Plaintiff need not prove that

25   Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent

26   business practices—but only that such practices occurred.

27       **"Unlawful" Actions**

28       47.63. A cause of action may be brought under the "unlawful" prong of the

                                        -21-

UCL if a practice violates another law. Such an action borrows violations of other laws and treats these violations, when committed pursuant to business activity, as unlawful practices independently actionable under the UCL. The violation of any law constitutes an "unlawful" business practice under the UCL.

48.64. Here, by engaging in false advertising, as well as the false, deceptive, and misleading conduct alleged above, Defendant has engaged in unlawful business acts and practices in violation of the UCL, including violations of state and federal laws and regulations, such as 15 U.S.C. § 45(a)(1), 16 C.F.R. § 233.1, California Business & Professions Code sections 17500 and 17501, and California Civil Code sections 1770(a)(9) and 1770(a)(13).

49.65. The Federal Trade Commission Act ("FTCA") prohibits "unfair or deceptive acts or practices in or affecting commerce[.]" 15 U.S.C. § 45(a)(1). Under FTC regulations, false former pricing schemes similar to the ones employed by Defendant, are deceptive practices that would violate the FTCA:

> One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison. Where the former price is genuine, the bargain being advertised is a true one. ***If, on the other hand, the former price being advertised is not bona fide but fictitious – for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction – the "bargain" being advertised is a false one***; the purchaser is not receiving the unusual value he expects. In such a case, the

-22-

"reduced" price is, in reality, probably just the seller's regular price.

16 C.F.R. §§ 233.1(a) (emphasis added).

66.    Defendant's advertised bargains were fictitious in that Defendant's products were never offered for sale at the advertised Reference Prices, rendering these former prices not bona fide.

50.67. Further, as detailed below in the Second Cause of Action, Defendant's conduct also violates California's false advertising laws. Specifically, California Business & Professions Code section 17500 provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

68.    Defendant's strikethrough Reference Pricing was untrue and misleading in that Defendant had never previously offered its products for sale at the Reference Prices.

69.    Defendant's pricing was untrue and misleading in that Defendant advertised and described the actual sale prices as "sales" that provided a percentage discount off of Defendant's ordinary pricing, when in actuality, these were simply the prices at which Defendant always offered its products for sale.

51.70. California law also expressly prohibits false former pricing schemes like the one employed by Defendant. California Business & Professions Code section 17501, entitled "Worth or value; statements as to former price," states as follows:

No price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price as

Formatted: Font: 14 pt

Formatted: Font: 14 pt

above defined within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly and conspicuously stated in the advertisement.

Cal. Bus. & Prof. Code § 17501.

71.   The Reference Prices on Defendant's Website were not the prevailing market prices because the products were not offered for sale at the Reference Prices by Defendant on its Website or Amazon store at any point prior to the commencement of this lawsuit.

72.   Upon information and belief, Defendant is the exclusive authorized retailer of its new products for US-based consumers.

73.   Defendant is also the manufacturer of its products and has exclusive control over its pricing policies and procedures. To the extent any third parties are authorized to sell Defendant's products, Defendant controls the manufacturer's suggested retail price ("MSRP").

74.   The Reference Prices on Defendant's Website exceeded Defendant's own internal MSRP pricing for its products.

75.   The Reference Prices on Defendant's Website were also not the prevailing market prices because, upon information and belief, there is no other retailer that offered the products for sale to California consumers at the Reference Prices at any time prior to the commencement of this lawsuit.

76.   In the alternative, even if such third-party authorized retailers existed, the Reference Prices on Defendant's Website were not the prevailing market prices because the Reference Prices were not the prevailing prices at which Defendant's products were sold, where the primary source of sales to US-based consumers was from Defendant's Website and Amazon webstore.

52.77. Moreover, as detailed below in the Third Cause of Action, Defendant's conduct also violates the California Consumer Legal Remedies Act

Formatted: Font: 14 pt

("CLRA"). *See* Cal. Civ. Code §§ 1750, *et seq*. More specifically, Defendant violated the CLRA's provisions prohibiting businesses from "[a]dvertising goods or services with intent not to sell them as advertised," Cal. Civ. Code § 1770(a)(9), and "[m]aking false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions[.]" Cal. Civ. Code § 1770(a)(13).

**"Unfair" Actions**

53.78. A business act or practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications, and motives of the practice against the gravity of the harm to the alleged victims.

54.79. Here, Defendant's actions constitute "unfair" business acts or practices because, as alleged above, Defendant engaged in a misleading and deceptive pricing scheme by advertising and representing false Reference Prices and thereby falsely advertising and representing markdowns or "discounts" that were false and inflated. Defendant's deceptive marketing practice gave consumers the false impression that its products were regularly sold on the market for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were. Defendant's acts and practices therefore offended an established public policy, and they engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers.

55.80. The harm to Plaintiff and members of the Class outweighs the utility of Defendant's practices. There were reasonably available alternatives to further Defendant's legitimate business interests, other than the misleading and deceptive conduct described in this Complaint.

**"Fraudulent" Actions**

56.81. A business act or practice is "fraudulent" within the meaning of the

-25-

UCL if members of the public are likely to be deceived.

~~57~~ 82. Here, members of the public are likely to be deceived by Defendant's conduct as alleged above. Among other things, Defendant affirmatively misrepresented the Reference Prices of its products, which thereby misled and deceived customers into believing that they were buying merchandise from Defendant at substantially marked-down and discounted prices. Defendant's deceptive marketing practice gave consumers the false impression that their products were regularly sold on the market for a substantially higher price in the recent past than they actually were and led to the false impression that Defendant's products were worth more than they actually were.

83.    Defendant knew that the Reference Prices and associated "sale" and "discount" language were false because Defendant knew that it had never offered its products at the Reference Prices.

84.    Defendant further knew that the Reference Prices and associated "sale" and "discount" language were false because Defendant knew that its Reference Prices exceeded even its own MSRP.

85.    Defendant intended to induce reliance in California consumers by making these representations because it specifically described itself as offering "sitewide sales," or discounts, as described above, with the intent that consumers would believe the Reference Price was the ordinary price for the product, and therefore purchase Defendant's products to take advantage of the so-called "sales."

86.    California consumers, including Plaintiff, reasonably relied on Defendant's representations because they believed Defendant was telling the truth about the usual sale price for its products (which they understood to be the Reference Price).

87.    As a result, California consumers, including Plaintiff, were damaged by Defendant's misrepresentations, in that they purchased items they would not otherwise have purchased, and received items of lesser value than the advertised

-26-

Reference Price.

58.88. In addition, Defendant had a duty to disclose the truth about its pricing deception, including, among other things, that the Reference Prices advertised and published on its Website were not, in fact, prices at which Defendant's products had sold for in the recent past for a reasonably substantial period of time, but that instead, in reality, Defendant's products rarely (if ever) were offered at the advertised Reference Prices. Defendant, however, concealed this material information from customers and the general public. Members of the public, therefore, were also likely to be deceived by Defendant's failure to disclose material information.

59.89. Plaintiff and each member of the Class suffered an injury in fact and lost money or property as a result of Defendant's unlawful, unfair, and/or fraudulent business practices, and as a result of Defendant's unfair, deceptive, untrue or misleading advertising.

60.90. Plaintiff, on behalf of himself and the members of the Class, seeks disgorgement of all moneys received by Defendant through the conduct described above.

61.91. Plaintiff, on behalf of himself and the members of the Class, seeks a temporary, preliminary, and/or permanent injunction from this Court prohibiting Defendant from engaging in the patterns and practices described herein, including but not limited to, putting a stop to their deceptive advertisements and false Reference Prices in connection with the sale of Defendant's products on its Website.

62.92. Injunctive relief is necessary to prevent future harm to consumers, including Plaintiff, who would like to purchase the products in the future. Every day, consumers like Plaintiff are misled into believing they are receiving a discount. Without injunctive relief, Defendant will continue to mislead consumers, and consumers will purchase products they otherwise would not have purchased

**Formatted:** Font: 14 pt

because they will be unable to determine whether they are actually receiving a discount.

**Second Cause of Action**

**Violation of California's False Advertising Law**

**Cal. Bus. & Prof. Code §§ 17500,** *et seq.*

**(By Plaintiff Against Defendants on Behalf of the Class)**

63.93. Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

64.94. The California False Advertising Law, codified at California Business & Professions Code sections 17500, *et seq.* (the "FAL") provides, in relevant part, that it is unlawful for any corporation, with intent directly or indirectly to dispose of personal property, to make or disseminate in any "manner or means whatever, including over the Internet, any statement, concerning that . . . personal property . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading[.]" Cal. Bus. & Prof. Code § 17500.

65.95. Similarly, the FAL provides, in relevant part, that "no price shall be advertised as a former price of any advertised thing, unless the alleged former price was the prevailing market price . . . within three months next immediately preceding the publication of the advertisement or unless the date when the alleged former price did prevail is clearly, exactly, and conspicuously stated in the advertisement." Cal Bus. & Prof. Code § 17501.

66.96. Here, Defendant routinely disseminated on its Website false Reference Prices for the products offered foradvertised as on sale on their website, including to Plaintiff. Such statements of Defendant were untrue, or at the very least, were misleading. Among other things, Defendant rarely, if ever, offered Defendant's products on its Website at the Reference Prices displayed in connection with its products. Further, Defendant rarely, if ever, offered its products

Formatted: Font: 14 pt

-28-

CLASS ACTIONFIRST AMENDED COMPLAINT

on its Website at the Reference Prices within the three months immediately preceding the publication of the Reference Prices. Defendant therefore misled customers, including Plaintiff, into believing that the Reference Prices are, or were, genuine former prices and that the "sale" prices relative to the published Reference Prices, in fact, reflected real and substantial discounts. Defendant's deceptive marketing practice gave consumers the false impression that their products were regularly sold for a substantially higher price in the recent past than they actually were and thus led to the false impression that Defendant's products were worth more than they actually were.

97.   A reasonable consumer would believe and understand that Defendant's products were ordinarily offered at the crossed out Reference Prices, but that they were now being sold at a reduced price, when in fact the products were not on sale at all, because they were never offered at the Reference Prices in the first place.

67.98.  Defendant engaged in this deceptive conduct with the intent to dispose of personal property—namely, with the intent to increase sales of Defendant's products offered by Defendant on its Website.

68.99.  Defendant knew, or by the exercise of reasonable care should have known, that its dissemination of Reference Prices for its products sold on its Website were untrue and/or misleading. Among other things, Defendant represented the Reference Prices in connection with its products sold on its Website even though it knew, or in the exercise of reasonable care should have known, that such products had rarely, if ever, sold at the crossed-out Reference Prices.

100.  Indeed, Defendant knew that the Reference Prices exceeded even its own MSRP for its Products.

101.  Defendant additionally knew that the Reference Prices exceeded the prices at which its products sold on the Amazon webstore.

102.  Defendant additionally knew that the products offered for sale on its

Formatted: Font: 14 pt

Website had not been offered for sale at the Reference Prices at any time in the 90 days prior to when the products were sold to Plaintiff or the putative class.

103. Upon information and belief, Defendant (whether via the Website or the Amazon webstore) was the exclusive authorized retailer of its products to California consumers as of the date when this lawsuit was filed.

104. In the alternative, the Reference Prices were never the prevailing market prices for Defendant's products, in that the Reference Prices exceeded Defendant's own MSRP, there was no substantial sales volume to California consumers by other retailers compared to Defendant's own sales volume, and because even the small number of international retailers that Plaintiff has been able to identify to date have not offered Defendant's products at the Reference Prices.

~~69.~~105.     As a direct and proximate result of Defendant's misleading and false advertisements, Plaintiff and members of the Class have suffered injury in fact and have lost money. As such, Plaintiff requests that this Court order Defendant to restore this money to Plaintiff and all members of the Class, and to enjoin Defendant from continuing its false and misleading advertising practices in violation of California law in the future. Otherwise, Plaintiff, members of the Class, and the broader general public will be irreparably harmed and/or denied an effective and complete remedy.

**Third Cause of Action**

**Violation of the California Consumer Legal Remedies Act**

**Cal. Civ. Code §§ 1750,** *et seq.*

**(By Plaintiff Against Defendants on Behalf of the Class)**

~~70.~~106.     Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

~~71.~~107.     The Consumer Legal Remedies Act of 1970, Cal. Civ. Code §§ 1750, *et seq.* (the "CLRA") is a California consumer protection statute which allows plaintiffs to bring private civil actions for "unfair methods of competition

-30-

and unfair or deceptive acts or practices undertaken by any person in a transaction . . . which results in the sale or lease of goods or services to any consumer." Cal. Civ. Code § 1770(a). The purposes of the CLRA are "to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection." Cal. Civ. Code § 1760.

72.108.    Plaintiff and each member of the Class are "consumers" as defined by California Civil Code section 1761(d). Defendant's sale of its products on the Website to Plaintiff and the Class were "transactions" within the meaning of California Civil Code section 1761(e). The product purchased by Plaintiff and the Class are "goods" within the meaning of California Civil Code section 1761(a).

73.109.    Defendant violated and continues to violate the CLRA by engaging in the following practices prohibited by California Civil Code section 1770(a) in transactions with Plaintiff and the Class which were intended to result in, and did result in, the sale of Defendant-branded products:

(1) Advertising goods or services with the intent not to sell them as advertised; and

(2) Making false or misleading statements of fact concerning reasons for, the existence of, or amounts of price reductions.

Cal. Civ. Code §§ 1770(a)(9) & (13).

74.110.    With regard to section 1770(a)(9), Defendant advertised and represented its branded products on the Website with the "intent not to sell" them as advertised because, among other things the false Reference Prices advertised in connection with products offered on their website misled and continue to mislead customers into believing the merchandise was previously offered for sale and/or sold at the higher Reference Prices for some reasonably substantial period of time.

75.111.    With regard to section 1770(a)(13), Defendant made false or misleading statements of fact concerning the "existence of" and the "amounts of price reductions" because, among other things no true price reductions existed—or

at the very least, any price reductions were exaggerated—in that Defendant's products were rarely, if ever, previously offered for sale and/or sold at the higher Reference Prices for a reasonably substantial period of time.

76.112.   At this time Plaintiff seeks only injunctive relief as to this cause of action. Pursuant to Cal. Civ. Code § 1782, in conjunction with the filing of this action, Plaintiff's counsel is notifying Defendant by separate letter of the particular violations of the CLRA and demanding that it correct or agree to correct the actions described in this Complaint. If Defendant fails to do so, Plaintiff shall amend his Complaint as a matter of right (or otherwise seek leave to amend the Complaint) to include compensatory and monetary damages to which Plaintiff and the Class are entitled.

**Fourth Cause of Action**

**Fraudulent Concealment**

**(By Plaintiff Against Defendants on Behalf of the Class)**

77.113.   Plaintiff repeats and re-alleges the allegations contained in every preceding paragraph as if fully set forth herein.

78.114.   Defendant uniformly disclosed some facts to Plaintiff and all members of the Class during the Class Period in connection with its products on the Website. Namely, Defendant disclosed a Reference Price for each item by displaying a Reference Price substantially higher than the offered selling price, which is marked down or discounted from the Reference Price by a significant discount.

79.115.   Defendant, however, intentionally failed to disclose other facts, making Defendant's disclosure deceptive. Specifically, Defendant failed to disclose that Defendant rarely, if ever, previously offered for sale and/or sold its products at the higher Reference Price for any reasonably substantial period of time. As a result, Defendant deceived Plaintiff and the Class into believing that they were purchasing items at a substantial markdown or discount when, in reality,

-32-

CLASS ACTIONFIRST AMENDED COMPLAINT

the false Reference Price and discounting practice artificially inflated the true market value of the items they purchased.

80.116.   As a separate basis for concealment, Defendant uniformly and intentionally concealed from Plaintiff and all members of the Class that the items they purchased from Defendant had rarely, if ever, been sold by Defendant in the recent past at the substantially higher Reference Price displayed on Defendant's Website and/or in the prevailing market. These were facts known only to Defendant that Plaintiff and the Class could not have discovered.

**Formatted:** Font: 14 pt

81.117.   Plaintiff and the Class did not know of the concealed facts.

82.118.   Defendant intended to deceive Plaintiff and the Class by concealing the facts described above, with the intent that Plaintiff and the Class would rely on these representations to purchase its products at false "sale" pricing.

**Formatted:** Font: 14 pt

83.119.   Had the omitted information been disclosed, Plaintiff reasonably would have behaved differently. Among other things, Plaintiff would not have purchased the item he purchased from Defendant, or at the very least, would not have paid as much for the items as he ultimately did.

84.120.   The omitted information was material and thus, reliance is presumed on a class-wide basis. *Davis-Miller v. Auto. Club of S. Cal.*, 201 Cal.App.4th 106, 122 (2011). The omitted information related to the price of the items sold on Defendant's Website and whether Plaintiff was receiving a true and genuine substantial discount or whether, instead, Plaintiff was being deceived into buying products through a pricing scheme utilizing fake, artificially inflated former prices. A reasonable person would plainly attach importance to matters affecting pricing in determining their purchasing decision.

85.121.   As a direct and proximate result of the above, Plaintiff and the Class have been harmed and suffered damages in an amount to be proven at trial.

86.122.   Defendant undertook these illegal acts intentionally or with conscious disregard of the rights of Plaintiff and the Class, and did so with fraud,

-33-

malice, and/or oppression. Based on the allegations above, Defendant's actions constituted fraud because Defendant intended to and did deceive and injure Plaintiff and the Class. Based on the allegations above, Defendant's actions constituted malice because Defendant acted with the intent to and did cause injury to Plaintiff and the Class, and also because Defendant's deceptive conduct was despicable and was done with a willful and knowing disregard of the rights of Plaintiff and the Class. Based on the allegations above, Defendant's actions constituted oppression because Defendant's deceptive conduct was despicable and subjected Plaintiff and the Class to cruel and unjust hardship in knowing disregard of their rights.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for relief and judgment in favor of himself and the Class as follows:

**On the First Cause of Action for Violations of the Unfair Competition Law (Cal. Bus. & Prof. Code §§ 17200, _et seq._)**

A.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.    For an award of equitable and declaratory relief.

C.    For pre- and post-judgment interest and costs of suit incurred herein.

D.    For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

E.    For such other and further relief as the Court may deem just and proper.

**On the Second Cause of Action for Violations of the False Advertising Law (Cal. Bus. & Prof. Code §§ 17500, _et seq._)**

A.    For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel

-34-

1    be designated as class counsel.

2         B.    For an injunction putting a stop to the deceptive and misleading
3    conduct described herein and ordering Defendant to correct its deceptive and
4    misleading advertising and pricing practices.

5         C.    For an award of restitution and disgorgement of moneys paid that
6    Defendant obtained as a result of its unfair, deceptive, untrue, and misleading
7    advertising, all as described above.

8         D.    For an award of equitable and declaratory relief.

9         E.    For pre- and post-judgment interest and costs of suit incurred herein.

10        F.    For attorneys' fees incurred herein pursuant to California Code of
11   Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

12        G.    For such other and further relief as the Court may deem just and
13   proper.

14        **On the Third Cause of Action for Violations of the Consumer Legal**
15        **Remedies Act (Cal. Civ. Code §§ 1750, _et seq._)**

16        A.    For an order certifying that the action be maintained as a class action,
17   that Plaintiff be designated the class representative, and that undersigned counsel
18   be designated as class counsel.

19        B.    For an injunction putting a stop to the deceptive and misleading
20   conduct described herein and ordering Defendant to correct its deceptive and
21   misleading advertising and pricing practices.

22        C.    For pre- and post-judgment interest and costs of suit incurred herein.

23        D.    For attorneys' fees incurred herein pursuant to California Civil Code
24   section 1780, or to the extent otherwise permitted by law.

25        E.    For such other and further relief as the Court may deem just and
26   proper.

27        **On the Fourth Cause of Action for Fraudulent Concealment**

28

-35-

CLASS ACTIONFIRST AMENDED COMPLAINT

A.     For an order certifying that the action be maintained as a class action, that Plaintiff be designated the class representative, and that undersigned counsel be designated as class counsel.

B.     For compensatory damages in an amount to be proven at trial.

C.     For pre- and post-judgment interest and costs of suit incurred herein.

D.     For attorneys' fees incurred herein pursuant to California Code of Civil Procedure section 1021.5, or to the extent otherwise permitted by law.

/ / /

/ / /

/ / /

E.     For such other and further relief as the Court may deem just and proper.


Dated:  April 12, 2024                    Respectfully submitted,

                                                    PACIFIC TRIAL ATTORNEYS, APC


                                                    By:  /s/Scott J. Ferrell
                                                    Scott. J. Ferrell
                                                    Attorneys for Plaintiff


-36-

CLASS ACTIONFIRST AMENDED COMPLAINT

### CERTIFICATE OF SERVICE

I hereby certify that on April 12, 2024, I electronically filed the foregoing **FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

*/s/ Scott J. Ferrell Esq.*
Scott J. Ferrell, Esq.

Formatted: Font: 14 pt

-37-