**PACIFIC TRIAL ATTORNEYS**
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialattorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Ste. 800
Newport Beach, CA  92660
Tel: (949) 706-6464
Fax: (949) 706-6469
Attorneys for Plaintiff

**WALKER STEVENS CANNOM LLP**
HANNAH LYNN CANNOM (SBN 245635)
hcannom@wscllp.com
500 Molino Street, Suite 118
Los Angeles, California 90013
Telephone: (213) 712-9145
Facsimile: (213) 403-4906
Attorneys for Defendant EKSTER INC.

### UNITED STATES DISTRICT COURT
### CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS PURSCELLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EKSTER INC., a Delaware corporation; and DOES 1 to 10, inclusive,<br><br>Defendants. | Case No. 2:23-cv-07908-WLH-JC<br><br>**LOCAL RULE 37 JOINT STIPULATION RE DISCOVERY DISPUTE**<br><br>**REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED UNDER SEAL**<br><br>[Filed concurrently with Joint Application to Seal]<br><br>Motion Date: July 12, 2024<br>Motion Time: 1:30 p.m. |

Discovery Cut-Off: September 27, 2024
Pretrial Conference: December 20, 2024

Filed: August 11, 2023
Trial Date: January 7, 2025

## JOINT STIPULATION

Plaintiff Thomas Purscelley ("Plaintiff") and Defendant Ekster Inc. ("Defendant") (collectively, the "Parties") hereby submit this Joint Stipulation pursuant to Local Rule 37 due to the discovery dispute that has arisen between the Parties and cannot be resolved through meet and confer efforts pursuant to Local Rule 37-1.

**I.   PREFILING CONFERENCE OF COUNSEL**

Counsel for the Parties have fulfilled their meet and confer requirements pursuant to Local Rule 37-1. Specifically, Victoria C. Knowles, counsel for Plaintiff, met and conferred telephonically with Kevin Murphy, counsel for Defendant, on May 3, 2024. (Knowles Decl., ¶ 2). Ms. Knowles also met and conferred with Michael Senzer, also counsel for Defendant, on May 21, 2024. (*Id.*) Counsel met and conferred telephonically as they reside in different counties. (*Id.*)

**II.   PLAINTIFF'S POSITION**

   **A.   Introduction**

The discovery dispute between the Parties is straightforward – Defendant has unilaterally and arbitrarily applied both temporal and subject matter limitations on the information and responses it is producing in response to all of Plaintiff's discovery requests. Specifically, Defendant has (1) refused to produce discovery responses and responsive documents outside the unilaterally picked timeframe of May 1, 2022, to August 11, 2023, despite the proposed class period and all applicable statutes of limitation being far more than an arbitrary 15 months, and (2) is refusing to produce responsive information and documents aside from that related solely to

56 SKUs/products it has picked itself.  Defendant's refusal is improper.

### B. Background Information

This class action, initiated on August 11, 2023, is brought against Defendant for its unlawful, unfair, and fraudulent business practice of advertising fictitious prices and corresponding phantom discounts on its wallets and other everyday carry items sold through its website, https://www.ekster.com/ (the "Website").  Defendant fabricates a fake regular, original, and/or former reference price, and then offers the item for sale at a "discounted" price.   The result is a sham price disparity that misleads consumers into believing they are receiving a good deal and induces them into making a purchase. Companies like Defendant drastically benefit from employing a false reference pricing scheme and experience increased sales.

The advertised discounts are fictitious because the reference price does not represent a *bona fide* price at which Defendant previously sold a substantial quantity of the merchandise for a reasonable period of time (or at all) as required by the Federal Trade Commission.  In addition, the represented reference prices were not the prevailing market retail prices within the three months immediately preceding the publication of the advertised former reference price, as required by California law.  The deception is magnified for these products because the representation of the false reference price leads consumers like Plaintiff to believe they are purchasing a product of substantially higher quality and that they are purchasing a product that was previously offered for sale at the significantly higher reference price.

Based on the foregoing, Plaintiff asserts four causes of action: (1) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (2) California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (3) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750, *et seq.*; and (4) Fraudulent Concealment.  (ECF No. 49).

The proposed class definition is, "<u>All persons who purchased one or more of Defendant's products from Defendant's Website while in California from August 1, 2020, through the present (the "Class Period") at a discount from a higher reference</u>

price and who have not received a refund or credit for their purchase(s)." (FAC [EFC No. 49] at ¶ 51).

## C. Plaintiff's Discovery Requests and Defendant's Responses

Plaintiff propounded and Defendant responded to, Requests for Admission (Set One), Requests for Production (Set One), and Interrogatories (Set One). (Knowles Decl., Ex. B, C, D). In response to each, Defendant included the following objection is its "General Objections" to each:

> "Ekster objects to Plaintiff's defined term "Class Period" to the extent it means or refers to any time prior to May 1, 2022, on the grounds that an earlier time period calls for disclosure of an answer or information which precedes the time in which Plaintiff could reasonably be considered an actual or potential Ekster consumer; partly precedes the date of Ekster's incorporation; and is unreasonable in scope, overbroad, unduly burdensome, oppressive, not relevant to any claim or defense, and/or likely to impose significant and disproportionate expense or inconvenience on Ekster."

(*Id.* at Ex. B at ¶ 10, Ex. C at ¶ 14, Ex. D at ¶ 11).

Defendant asserted a similar objection in response to Plaintiff's Notice of Deposition of Defendant pursuant to Fed. R. Civ. Proc. 30(b)(6), which is set to proceed on May 29, 2024. (Knowles Decl., ¶ 6, Ex. E at ¶ 11).

Because the instant Stipulation is related to the general dispute on Defendant's temporal and subject-matter objections to all discovery requests and devices rather than to any specific discovery request or interrogatory, Plaintiff attaches each of the complete request/responses to each as exhibits to the supporting Declaration of Victoria C. Knowles.

## D. Applicable Law

Nonprivileged information is discoverable under Rule 26 if it is (1) relevant to any party's claim or defense, and (2) proportional to the needs of the case. Fed. R. Civ. P. 26(b). Information need not be admissible to be discoverable. *Id.* The Court has broad discretion in determining relevancy for discovery purposes. *Surfvivor*

*Media Inc. v. Survivor Prods.*, 406 F.3d 625, 635 (9th Cir. 2005); *see U.S. Fidelity and Guar. Co. v. Lee Investments L.L.C.*, 641 F.3d 1126, 1136 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and [their] rulings will not be overturned in the absence of a clear abuse of discretion.") (internal quotation and citations omitted).Rule 26(b) no longer limits discovery to information "reasonably calculated to lead to the discovery of admissible evidence." *In Re Bard IVC Filters Prods. Liab. Litig.*, 317 F.R.D. 562, 563–64, 564 n.1 (D. Ariz. 2016) (discussing the 2015 amendments to the Federal Rules of Civil Procedure and the advisory committee's explicit removal of the phrase "reasonably calculated," and listing cases that continue to use the outdated pre-2015 standard).

The relevance standard is commonly recognized as one that is necessarily broad in scope in order "to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Doherty v. Comenity Capital Bank*, No. 16cv1321-H-BGS, 2017 WL 1885677, at *2 (S.D. Cal. May 9, 2017) (internal quotation omitted).

Admittedly, information must be "proportional to the needs of the case" to fall within the scope of permissible discovery. Fed. R. Civ. P. 26(b)(1). When analyzing the proportionality of a party's discovery requests, a court should consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to the information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*. "The 2015 amendments to Rule 26(b)(1) emphasize the need to impose 'reasonable limits on discovery through increased reliance on the common-sense concept of proportionality.' " *Roberts v. Clark Cty. Sch. Dist.*, 312 F.R.D. 594, 603 (D. Nev. 2016) (internal citation omitted).

Once the propounding party establishes that the request seeks relevant and proportional information, "[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215,

217 (C.D. Cal. 2009). The party resisting discovery must specifically detail the reasons why each request is irrelevant or otherwise objectionable, and may not rely on boilerplate, generalized, conclusory, or speculative arguments. *F.T.C. v. AMG Servs., Inc.*, 291 F.R.D. 544, 553 (D. Nev. 2013). Where "the responding party provides a boilerplate or generalized objection, said 'objections are inadequate and tantamount to not making any objection at all.'" *Bess v. Cate*, No. 07cv1989-JAM-JFM, 2008 WL 5100203, at *4 (E.D. Cal. Nov. 26, 2008) (quoting *Walker v. Lakewood Condominium Owners Ass'n*, 186 F.R.D. 584, 587 (C.D. Cal. 1999)). Arguments against discovery must be supported by "specific examples and articulated reasoning." *U.S. E.E.O.C. v. Caesars Ent.*, 237 F.R.D. 428, 432 (D. Nev. 2006).

District courts have broad discretion to manage discovery. *Laub v. United States DOI*, 342 F.3d 1080, 1093 (9th Cir. 2003); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). This discretion extends to crafting discovery orders that may expand, limit, or differ from the relief requested. *See Crawford-El v. Britton*, 523 U.S. 574, 598 (1998) (trial court has "broad discretion to tailor discovery narrowly and to dictate the sequence of discovery"); *UMG Recordings, Inc. v. Doe*, No. C 08-1038 SBA, 2008 WL 2949427, at *3 (N.D. Cal. Jul. 30, 2008) ("[T]he district courts wield broad discretion" in fashioning discovery orders).

### E. Defendant's Unilateral 15-Month Scope Is Improper

Defendant has refused to provide responsive information and documents that fall outside the very narrow, approximate 15-month timeframe it has arbitrarily chosen. This is problematic because not only does it unilaterally restrict the class definition to those purchasers from only May 1, 2022, to August 11, 2023, but it also does so despite the statute of limitations for each cause of action, the longest of which is four years. Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued.").

Responsive information and documents outside the arbitrary 15-month

window set by Defendant are *highly* relevant for several immediately obvious reasons. First, Plaintiff's proposed class definition includes a proposed period of August 2020 to the present, in part because the CLRA's statute of limitations period is three years, Cal. Civ. Code § 1783. Typically, class periods are defined in part by the statutes of limitation in the case but in some instances are *longer*, not shorter. *Gottesman v. Santana*, No. 16cv2902-JLS-JLB, 2017 WL 5889765, at *5 (S.D. Cal. Nov. 29, 2017) ("Information before the statute of limitations period may fall within the scope of discoverable information.") ("[t]he statute of limitations is not a rigid barrier separating discoverable information from information outside the scope of discovery."); *see, e.g.*, *Hatamian v. Advanced Micro Devices, Inc.*, No. 14cv226-YGR-JSC, 2015 WL 7180662, at *2 (N.D. Cal. Nov. 16, 2015) ("In general, courts allow discovery to extend to events before and after the period of actual liability so as to provide context.") (internal quotations omitted); *accord Owens v. Sprint/United Mgmt. Co.*, 221 F.R.D. 649, 655 (D. Kan. 2004) ("[D]iscovery of information both before and after the liability period...may be relevant and/or reasonably calculated to lead to the discovery of admissible evidence and courts commonly extend the scope of discovery to a reasonable number of years both prior to and following such period.").

During the meet and confer process, Defendant's reasoning for its arbitrary May 1, 2022, start date was "splitting the baby" between the proposed class period start date of August 2020, and August 2023 when Plaintiff's claims arose. (Knowles Decl., ¶ 7). Though Defendant references an entity shift somewhere around May 2022 in its General Objections (which it did not raise as reasoning during the meet and confer process), Defendant *has not* indicated that this shift limits its control over or access to responsive information. This makes since because the Website was functioning the same way, selling the same and similar products, using the same improper strikethrough/reference price scheme, back in 2020 at the appropriate start time for a class period. *See* https://web.archive.org/web/20200806190100/https://ekster.com/ (last visited May

23, 2024).

The relevance of the responsive information *after* the August 11, 2023, date unilaterally chosen by Defendant is also immediately obvious when considering Defendant's refusal to produce responsive documentation during the discovery process. For example, two documents produced by Defendant during discovery explicitly reference immediately relevant information that Defendant has refused to produce in full. Document DEF0001467, ███████████████████████ ███████████████████████████████████████████████████ (Knowles Decl., Ex. F). That message is both relevant and responsive as it tends to reference the FTC's Pricing Guides that a product cannot include a reference price that it has not been sold at in the last 90 days. *See* 15 U.S.C. § 45(a)(1); 16 C.F.R. §§ 233.1(a). Similarly, at DEF0001434, ███████████████████████████████████████████ ███████████████ (Knowles Decl., Ex. G). Any reference *at all* to strikethrough pricing, especially in California, is *of course* incredibly relevant to Plaintiff's claims.

During the telephonic meet and confer process, Defendant did not clarify, explain, or support its broad temporal objection in any substantive way aside from a vague assertion of "reasonableness." *Superior Commc'ns v. Earhugger, Inc.*, 257 F.R.D. 215, 217 (C.D. Cal. 2009) ("[t]he party who resists discovery has the burden to show discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections."). In a follow-up meet and confer email, Defendant did raise the issue of alleged burdensomeness; however, simply because producing responsive information from a broader range of *relevant* time may be somewhat burdensome, that does not alleviate Defendant's discovery obligations and does not outweigh Rule 26(b)'s expanse.

  **F.**  **Defendant's Limitation to Only 56 SKUs It Chose Unilaterally Is Improper**

In addition to Defendant's unilateral temporal limitation on its production, it has also limited production to 56 SKUs for products sold on its Website rather than including all products from Plaintiff's proposed class definition: "<u>All persons who purchased one or more of Defendant's products from Defendant's Website while in California from August 1, 2020, through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s)</u>."  (FAC [EFC No. 49] at ¶ 51).

In short, Defendant is attempting to limit its responses and production to wallets sold on the Website, presumably because Plaintiff purchased a wallet on the Website, rather that *all* products on the Website that were sold using a strikethrough reference price.

Defendant seems to be making an early and inappropriate determination related to commonality and typicality under Rule 23 before it has produced responsive information to Plaintiff, or afforded the Court the opportunity to consider the facts and evidence.  If Defendant is employing a common reference price scheme on its Website applicable to most or all of its products, which Plaintiff contends it is, then Plaintiff should be afforded the opportunity to conduct discovery thereon and present to the Court the propriety of representing all California consumers who purchased a product from Defendant that employed improper strikethrough pricing.

### III.  <u>DEFENDANT'S POSITION</u>

Plaintiff Thomas Purscelley ("Plaintiff") and Defendant Ekster Inc. ("Ekster") can agree that the case is straightforward, but certainly disagree with respect to any of Plaintiff's allegations.  Defendant's supporting exhibits can be found in the Declaration of Kevin Murphy, provided herewith.  Without basis, the Plaintiff has filed a proposed class action against Ekster for its alleged violation of California's Consumer Protection Statutes, namely California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 et seq. (the "UCL"), False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 et seq. (the "FAL") and Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750 et seq. (the "CLRA"), along with a nebulous

Fraudulent Concealment claim. None of Plaintiff's claims have any merit, and are based on only one alleged purchase of an Ekster wallet by Plaintiff in August 2023. Plaintiff's claim was already dismissed for his slipshod investigation of Ekster's prices and his consequent failure to adequately state a claim under the Consumer Protection Statutes. *See* Dkt. 48. Ekster intends to vigorously contest Plaintiff's certification of his class period and Plaintiff's ability to represent the proposed class, and in fact will move, when appropriate, for summary judgment dismissal of all claims. In the meantime, Plaintiff should not be able to engage in a fishing expedition, seeking all sales and pricing history from Defendant back to its unreasonable proposed class period of four years. Plaintiff's motion to compel should be denied.

## Factual Background

### A. Ekster Was Formed Months After the Proposed Class Period Began.

The unreasonableness of Plaintiff's proposed class period initially becomes apparent from the caption itself. Plaintiff has proposed a class period from August 1, 2020 to present. Ekster, however, is the only named defendant in this case. Ekster was incorporated on May 5, ***2021***. Murphy Decl. at ¶4. The Court's Scheduling Order required the parties to implead any additional parties no later than March 29, 2024. Plaintiff has not done so. Thus, any class period with respect to Ekster could only reasonably begin from May 5, 2021. This temporal restriction is imposed by reality, not by Ekster.

### B. Ekster's Pricing Policy was Lawful in All Respects

As Judge Hsu acknowledged in the Court's dismissal of Plaintiff's Complaint, Ekster sells its products to California residents through multiple channels, including on its website https:///www.ekster.com, and on the Ekster webstore at www.Amazon.com. *See generally* Dkt. 48. Plaintiff concluded, after a review of only certain wallet pricing on the Ekster website, that Ekster had been deceiving himself and others by inventing all of its list prices and offering discounts from those invented list prices. (Murphy Decl., Ex. 1, T. Purscelley Dep. Tr. at

95:9–95:20, 99:8–99:17.)  But Plaintiff made no effort to check into Ekster's prices on its publicly-available Amazon.com website.  In fact, Ekster has sold wallets at list price on its website, and it has sold wallets at list price on the Amazon.com store.

The Consumer Protection Statutes prohibit the offering of discounts from fictitious prices.  *See* 16 C.F.R. § 233.1(a) (Federal Trade Commission Regulation stating that "where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the 'bargain' being advertised is a false one").  California's FAL further specifies that the advertising of a price as a "former" price is illegal unless that price was the prevailing price for the item in a preceding period of 90 days.  *See* Cal. Bus. & Prof. Code § 17501 (2024). But, as the undisputed evidence of record demonstrates, Ekster advertises its list prices on its website and on its Amazon.com store through a price book devised before any sales price is generated.  When Ekster offers a sale on its products, Ekster displays these list prices with a line through them, or strikethrough, near the sales price, demonstrating that the product is now available at a discounted sales price.  At no time did Ekster ever describe this list, or reference, price as a former price.  A reasonable consumer could do nothing but identify the reference price as the regular price for each product.  Contrary to Plaintiff's oft-stated and ill-formed conclusion, Ekster never deceived anyone, and is not liable under the Consumer Protection Statutes.  *See, e.g.*, Cal. Bus. & Prof. Code § 17200 (2024) (FAL section prohibiting "unfair, deceptive, untrue or misleading advertising"); Cal. Civ. Code § 1770(13) (2024) (CLRA section requiring a misrepresentation of fact with respect to "reasons for, existence of, or amounts of, price reductions").

Shortly following the filing of the Complaint, in order to prevent the filing of further baseless copycat lawsuits, Ekster modified its website to include a disclaimer for all strikethrough prices noting that "[r]eference prices can be found on the Ekster Inc. Amazon account here."  (Murphy Decl., Ex. 2, Ekster Website Pricing Terms.)  As Plaintiff has alleged that Ekster's reference prices were

fictitious, any discovery relating to reference prices in the period following the change is irrelevant, and in any event inadmissible as a subsequent remedial measure. *See* Fed. R. Evid. 407. As Plaintiff himself admits that he seeks such discovery to show awareness of prior wrongdoing, rather than for an admissible purpose, the discovery should be denied.

**C. The Proposed Class Action is Supported by Only One Plaintiff and One Purchase in August 2023**

Mr. Purscelley is the only representative plaintiff proposed in this action. He made one purchase from Ekster—an Aluminum Astral wallet on August 1, 2023, Ekster Stock Keeping Unit ("SKU") EK-ALU-ATL. *See* Am. Compl. (Dkt. 49) ¶ 21. Ekster established the list price for the Astral Wallet sold at $99 in January 2023. (Murphy Decl., Ex. 3, DEF0000212, Pricebook at pp. 3 & 7.[1]) Later in 2023, Ekster modified its list prices by increasing the price by one dollar to $100, ████████████████████████████████████████████ Ekster was running a sale on the Astral wallet of an $80 sale price, and displayed the list price of $100 as a strikethrough price on that day. *See* Am. Compl. (Dkt. 49) ¶¶ 21–22; *see* Ans. (Dkt. 53) ¶¶ 21–22. The $100 list price was not fictitious, and was never labeled as the "former" price. *See* Am. Compl. (Dkt. 49) ¶ 21–22; *see* Ans. (Dkt. 53) ¶¶ 21–22.

Plaintiff purchased no other product from Ekster apart from the Astral wallet. He never contemplated purchasing anything else from Ekster in the period from August 2020[2] through July 2024. (Murphy Decl., Ex. 1, T. Purscelley Dep. Tr. at 47:18–48:20.)

Plaintiff's demand for all pricing history for Ekster products for the last four years exceeds the bounds of reasonable pre-certification discovery. Ekster met Plaintiff's demand more than halfway, however, by producing all discovery related

---

[1] The Ekster Pricebook was created in Excel format and produced that way. The Pricebook has been produced to the Court in pdf, and the pages referred to correspond to digital numbering in the pdf.

[2] Indeed, the first available date any such purchase could have been made was May 5, 2021.

to its sale of wallets purchased by California residents from May 2022 through August 2023, when Plaintiff purchased the wallet at issue, pricing history for every conceivable wallet product at issue for 16 months.

**D. Ekster Did Not Grant Itself a Subject Matter Exemption.**

In addition to wallets, Ekster sells a range of other "everyday carry" products, including key holders and backpacks. Plaintiff never contemplated nor purchased any product from Ekster other than a wallet. Both parties initially sought discovery related to everyday carry products. Both parties objected as everyday carry products were not relevant. At a meet and confer between counsel on March 1, 2024, the parties agreed to narrow the scope of discovery to wallets. (Murphy Decl., Ex. 5, March 1, 2024 Letter to Plaintiff's Counsel; Knowles Decl., Ex. C, Defendant's Responses and Objections to Plaintiff's Document Requests at 3.) For reasons unknown, Plaintiff has reneged on this agreement. The agreement should be maintained, as expanding the scope of discovery to products Plaintiff never contemplated purchasing is unreasonable in an already-complex proposed class action.

**E. Further Pre-Certification Discovery is Not Warranted.**

    **1. Plaintiff has failed to demonstrate a prima facie case for class relief or that discovery is likely to produce substantiation of class allegations.**

Plaintiff treats the instant discovery dispute in this proposed-class-action matter as if it were any discovery dispute. But "[p]rior to certification of a class action, discovery is generally limited and in the discretion of the court." *Prado v. Wal-Mart Stores, Inc.*, No. CV 17-5630-AB (KKx), 2018 WL 3487057, *2 (C.D. Cal. July 18, 2018) (quoting *Del Campo v. Kennedy*, 236 F.R.D. 454, 459 (N.D. Cal. 2006)); *see also Gutierrez v. Converse Inc.*, No. 2:23-cv-06547-KK-MAR, 2024 WL 2106952, at *10 (C.D. Cal. May 2, 2024) ("[T]he Court finds persuasive Defendant's argument that Plaintiff is not automatically entitled to all discovery throughout the class period alleged in their Complaint. At this stage, the district judge has not yet certified a class or defined a class period. Accordingly,

1 Plaintiff's definition of the class period is based solely on her own definition in the
2 Complaint. Therefore, under Plaintiff's logic, putative class action litigants would
3 be able to unilaterally determine the temporal scope of permissible discovery by
4 defining an arbitrary period of time, even if that period of time was divorced from
5 the concrete allegations in the complaint. As other courts have noted, there is no
6 such default rule, and such a rule would be impractical."). The Court has yet to
7 certify this action as a class action, and thus Plaintiff is required to show a prima
8 facie case for class relief under Rule 23, or that the discovery withheld is likely to
9 substantiate the class allegations. *Doninger v. Pac. Nw. Bell, Inc.*, 564 F.2d 1304,
10 1312–13 (9th Cir. 1977). He has not done either. Rather, he simply repeats the
11 unsupported allegations of the First Amended Complaint. Plaintiff has had the
12 benefit of extensive discovery concerning Ekster wallets in and around the date of
13 his purchase of an Ekster wallet. If he cannot satisfy his obligations using the
14 discovery he has already obtained, it is unreasonable to assume he will do better
15 with information more than two years before his purchase of the Ekster wallet, or
16 information concerning products of types he never purchased. Satisfying those
17 obligations is particularly important in this matter given that Plaintiff has not yet
18 established claims sufficient to survive a motion to dismiss. *See Kaminske v. JP*
19 *Morgan Chase Bank N.A.*, No. SACV 09-00918 JVS (RNBx), 2010 WL 5782995,
20 at *2 (C.D. Cal. May 21, 2010). This Court is well-positioned to require the prima
21 facie case that the Plaintiff evidently cannot advance despite months of robust
22 discovery. *See Vinole v. Countryside Home Loans, Inc.*, 571 F.3d 935, 942 (9th
23 Cir. 2009) (noting "district courts have broad discretion to control the class
24 certification process and whether or not discovery will be permitted lies within the
25 sound discretion of the trial court") (citation omitted).

      In *Nguyen v. Baxter Healthcare Corp.*, this Court restricted a proposed class
26 action plaintiff in a labor-violations case from securing discovery concerning labor
27 practices for facilities beyond the Irvine facility where the plaintiff worked.
28 *Nguyen v. Baxter Healthcare Corp.*, 275 F.R.D. 503, 507–08 (C.D. Cal. 2011).

Similar to Plaintiff's broad-ranging allegations here, the *Nguyen* plaintiff claimed that the defendant's practices elsewhere "must [] have violated these same guidelines," although the plaintiff was ignorant of any goings-on at these locations. *Id*. at 508. Absent evidence to suggest company-wide violations, the Court denied expansion of pre-certified discovery. *See id.*

Here, the Ekster website screenshot from August 6, 2020 relied upon by Plaintiff shows, according to Plaintiff, that the website was, prior to Ekster's incorporation, "functioning the same way, selling the same and similar products." The screenshot of the website, however, actually contains none of strikethrough prices that Plaintiff complains about, showing that Plaintiff has failed to meet his burden on this motion. *Gutierrez*, 2024 WL 2106952, at *2 ("[T]he moving party bears the burden of demonstrating 'actual and substantial prejudice' from the denial of discovery. In other words, the moving party bears the burden of demonstrating the sought discovery is relevant. In addition, relevancy alone is no longer sufficient to obtain discovery.") (citations omitted). Thus, Ekster requests that a rule of reason should be applied here, cutting off discovery prior to May 2022, particularly given Plaintiff's failure to adduce any evidence that Ekster misrepresented its list prices as former prices at any time period.

2. **The Discovery Sought is Not Proportional to the Needs of the Case**

Plaintiff admits that discovery must be proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b).  This Circuit has for years seen the wisdom of this limitation.  "In determining whether to grant discovery the court must consider its need, the time required, and the probability of discovery resolving any factual issue necessary for the determination. . . . Where the necessary factual issues may be resolved without discovery, it is not required." *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 209–10 (9th Cir. 1975); *see also Teradyne, Inc. v. Astronics Test Sys., Inc.*, No. 2:20-cv-02713-GW-SHK, 2022 WL 18397125, at *5 (C.D. Cal. Dec. 22, 2022) ("[T]he district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests,

assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled. . . . Because discovery must be both relevant and proportional, the right to discovery, even plainly relevant discovery, is not limitless."). Plaintiff has granted to himself in his Complaint an absurdly long time period prior to his own purchase of an Ekster wallet in order to increase the discovery burden on Ekster and to go fishing for potentially relevant information. By providing Defendant 16 months of pricing history for the products at issue prior to Plaintiff's purchase, Ekster has provided all discovery necessary and proportional to any issues raised by Plaintiff's defective claims. Had multiple representative plaintiffs purchased multiple Ekster products over the course of a four-year period, Plaintiff might have been eligible for additional discovery. As it stands now, however, he is not. His motion should be denied.

Respectfully submitted,

Date: June 3, 2024        PACIFIC TRIAL ATTORNEYS

By: */s/ Victoria C. Knowles*
Victoria C. Knowles

*Attorneys for Plaintiff Thomas Purscelley*

Date: June 3, 2024        WALKER STEVENS CANNOM LLP

By:*/s/ Hannah L. Cannom*
Hannah L. Cannom

*Attorneys for Defendant Ekster Inc.*

WUERSCH & GERING LLP

By:*/s/ Kevin Murphy*
Kevin Murphy

*Attorneys for Defendant Ekster Inc.*

*I, Scott J. Ferrell, hereby certify that the content of this document is acceptable to all persons required to sign this document and that I obtained the authorizations necessary for the electronic signatures of all parties for this document.*

/s/   *Scott J. Ferrell*
Scott J. Ferrell

**CERTIFICATE OF SERVICE**

I hereby certify that on June 5, 2024, I electronically filed the foregoing **LOCAL RULE 37 JOINT STIPULATION RE DISCOVERY DISPUTE** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

        */s/*    Scott J. Ferrell
        Scott J. Ferrell, Esq.