1  PACIFIC TRIAL ATTORNEYS
   A Professional Corporation
2  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialatttorneys.com
3  Victoria C. Knowles, Bar No. 277231
   vknowles@pacifictrialattorneys.com
4  4100 Newport Place Drive, Suite 800
   Newport Beach, CA 92660
5  Telephone: (949)706-6464

6  Attorney for Plaintiff

7

8              UNITED STATES DISTRICT COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10

11  THOMAS PURSCELLEY, individually      Case No.  2:23-cv-07908-WLH (JCx)
    and on behalf of all others similarly
12  situated,                            **REDACTED VERSION OF**
                                         **DOCUMENT PROPOSED TO BE**
13              Plaintiff,               **FILED UNDER SEAL**

14              v.                       **AMENDED NOTICE OF MOTION**
                                         **AND MOTION FOR CLASS**
15  EKSTER INC., a Delaware corporation; **CERTIFICATION; MEMORANDUM**
    and DOES 1 to 10, inclusive,         **OF POINTS AND AUTHORITIES**
16
                Defendants.              [Declarations of Thomas Purscelley and
17
                                         Scott J. Ferrell; Request for Judicial Notice
18
                                         filed concurrently herewith; [Proposed]
19
                                         Order lodged concurrently herewith]
20
                                         Date:  August 2, 2024
21                                       Time: 11:00 a.m.
                                         Ctrm:  9B
22                                       Judge: Hon. Wesley L. Hsu

23

24

25

26

27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

PLEASE TAKE NOTICE that on August 2, 2024, at 11:00 a.m., or as soon thereafter as counsel may be heard in Courtroom 9B of the United States District Court for the Central District of California, located at the First Street United States Courthouse, 350 West 1st St., Los Angeles, CA 90012, the Honorable Wesley L. Hsu, United States District Judge, presiding, Plaintiff Thomas Purscelley ("Plaintiff") will and hereby does move for an order pursuant to Rule 23 of the Federal Rules of Civil Procedure certifying a class under Rule 23(b)(3) consisting of:

> All persons who purchased one or more of Defendant's products from Defendant's Website while in California from August 1, 2020, through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s).

Excluded from the Class are Defendant's officers, directors, and employees, any partner or employee of Class Counsel.

Plaintiff also seeks an order appointing himself as class representative and appointing Pacific Trial Attorneys, P.C. as Class Counsel.

This motion is made based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the concurrently-filed Declarations of Thomas S. Purscelley and Scott J. Ferrell, Request for Judicial Notice, the pleadings and papers on file in this action, and upon such further evidence and argument as may be presented before or at the time of hearing.

This motion is made following the conference of counsel pursuant to Local Rule 7-3 which took place on May 31, 2024.

Dated:  June 10, 2024

PACIFIC TRIAL ATTORNEYS
A Professional Corporation

By: _/s/Scott J. Ferrell_
Scott J. Ferrell
Attorney for Plaintiff

# TABLE OF CONTENTS

I.   ARGUMENT ........................................................................................ 1

   A.   Applicable Standard ................................................................. 1

   B.   Plaintiff's Proposed Class ....................................................... 2

   C.   Common Evidence Will Be Used to Prove the Class's Claims. ................. 3

      1.   All Products Have the Same Type of Advertisement with Identical Strikethrough Reference Price Representations. ................. 3

      2.   Evidence of Reference Prices and Actual Prices Has Been Gathered From Defendant Via Discovery. ........................... 4

      3.   Evidence of Both Reference Prices and Actual Prices on Defendant's Website Collected Via the Wayback Machine Shall Be Proper Subjects of Judicial Notice. ................................. 4

      4.   Common Evidence Will Be Used to Prove that the Products' Advertisements Are False or Misleading. ........................... 5

      5.   The Class Is Entitled to a Partial Refund Calculable on a Classwide Aggregate Basis. ...................................................... 7

   D.   Plaintiff Has Satisfied the Rule 23(a) Prerequisites. ................. 7

      1.   The Proposed Class Is Numerous. .................................... 7

      2.   The Claims Are Common. ............................................... 8

      3.   Plaintiff's Claims Are Typical. ....................................... 9

      4.   Plaintiff and His Counsel Will Continue to Adequately Represent the Class. ...................................................... 11

   E.   Rule 23(b)(3) Is Satisfied. .......................................................... 12

      1.   Predominance Is Satisfied. .............................................. 12

         a.   Questions of Fact .............................................. 15

            i.   Materiality ............................................. 15

            ii.   Reliance .............................................. 16

iii.     Falsity ............................................................................ 17

iv.     Damages and Restitution.............................................. 17

b.     Questions of Law ................................................................... 19

2.     Superiority ......................................................................... 20

a.     Interest of Each Class Member in Controlling the Prosecution of Separate Actions. ............................................................ 20

b.     Litigation Already Commenced by Class.............................. 20

c.     Desirability of Concentrating the Litigation in This Court. .. 21

d.     Difficulties Likely to Be Encountered in Management of Class Action ......................................................................... 21

II.     CONCLUSION........................................................................... 21

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*Amchem Prods., Inc. v. Windsor,*
    521 U.S. 591 (1997)............................................................ 2, 12, 13

*Amgen Inc. v. Conn. Ret. Plans & Tr. Funds,*
    568 U.S. 455 (2013)................................................................1, 16

*Beck-Ellman v. Kaz USA, Inc.,*
    283 F.R.D. 558 (S.D. Cal. 2012) .................................................11, 12

*Briseno v. ConAgra Foods, Inc.,*
    844 F.3d 1121 (9th Cir. 2017) ......................................................21

*Bruno v. Quten Research Inst., LLC,*
    280 F.R.D. 524 (C.D. Cal. 2011) (Carter, J.)....................................9

*Carnegie v. Household Int'l, Inc.,*
    376 F.3d 656 (7th Cir. 2004) ........................................................2

*Clevenger v. Welch Foods Inc.,*
    342 F.R.D. 446 (C.D. Cal. 2022)..............................................15, 16

*Comcast Corp. v. Behrend,*
    569 U.S. 27 (2013)..................................................................1, 17

*Delarosa v. Boiron, Inc.,*
    275 F.R.D. 582 (C.D. Cal. 2011) (Staton, J.) ...................................9

*Eisen v. Carlisle & Jacquelin,*
    417 U.S. 156 (1974)...................................................................2

*Ellis v. Costco Wholesale Corp.,*
    657 F.3d 970 (9th Cir. 2011) ........................................................8

*F.T.C. v. Pantron I Corp.,*
    33 F.3d 1088 (9th Cir. 1994) ........................................................9

*Forcellati v. Hyland's, Inc.,*
    2014 WL 1410264 (C.D. Cal. Apr. 9, 2014) (King, C.J.) ....................9

*Guido v. L'Oreal USA, Inc.*,
   2013 WL 3353857 (C.D. Cal. July 1, 2013) (Snyder, J.) ..................................9

*Guido v. L'Oreal, USA, Inc.*,
   284 F.R.D. 468 (C.D. Cal. 2012) (Snyder, J.) ...................................................10

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) ............................................... 9, 10, 11

*Hanon v. Dataproducts Corp.*,
   976 F.2d 497 (9th Cir. 1992) ...............................................................10

*Harris v. Palm Springs Alpine Estates, Inc.*,
   329 F.2d 909 (9th Cir. 1964) ...............................................................8

*In re American Express Merchants' Litig.*,
   667 F.3d 204 (2d Cir. 2012) ...............................................................2

*In re Ferrero Litig.*,
   278 F.R.D. 552 (S.D. Cal. 2011) ...................................................12, 17

*In re Linkedin User Privacy Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015).......................................................7, 8

*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*,
   422 F. Supp. 3d 194 (D.D.C. 2019).....................................................15

*Int'l Molders' & Allied Workers' Local 164 v. Nelson*,
   102 F.R.D. 457 (N.D. Cal. 1983).........................................................8

*Jasso v. Money Mart Exp., Inc.*,
   879 F. Supp. 2d 1038 (N.D. Cal. 2012)...............................................2

*Johns v. Bayer Corp.*,
   280 F.R.D. 551 (S.D. Cal. 2012) (Battaglia, J.)...................................11

*Korolshteyn v. Costco Wholesale Corp.*,
   2017 WL 1020391 (S.D. Cal. Mar. 16, 2017) ....................................21

*Mazza v. Am. Honda Motor Co., Inc.*,
   666 F.3d 581 (9th Cir. 2012) ......................................................16, 20

*Negrete v. Allianz Life Ins. Co. of N. Am.*,
   287 F.R.D. 590 (C.D. Cal. 2012) (Snyder, J.) ....................................8, 9

*Ochoa v. Zeroo Gravity Grames LLC*,
   2023 WL 4291650, at *9 (C.D. Cal. May 24, 2023) (Wu, J.) (tentative
   ruling), *adopted in*, No. 2:22-cv-05896-GW-AS, Doc. 53 (C.D. Cal.
   May 25, 2023)..............................................................................................6

*Pulaski & Middleman, LLC v. Google, Inc.*,
   802 F.3d 979 (9th Cir. 2015) ...............................................................17, 18

*Racies v. Quincy Bioscience, LLC*,
   2017 WL 6418910 (N.D. Cal. Dec. 15, 2017) (Gilliam, J.) .................. 17, 20, 21

*Real v. Y.M.I. Jeanswear, Inc.*,
   2017 WL 11675686 (C.D. Cal. Sept. 1, 2017) (Bernal, J.) .................................6

*Reynoso v. S. Cnty. Concepts*,
   No. SACV 07-373-JVS(RCx), 2007 WL 4592119 (C.D. Cal. Oct. 15,
   2007) (Staton, J.)..........................................................................................8

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016)..................................................................................13, 16

*Valentino v. Carter-Wallace, Inc.*,
   97 F.3d 1227 (9th Cir. 1996) .......................................................................20

*Valenzuela v. The Kroger Co.*,
   2024 WL 1336959 (C.D. Cal. Mar. 28, 2024) (Gee, J.) ....................................4

*Vizcarra v. Unilever U.S., Inc.*,
   339 F.R.D. 530 (N.D. Cal. 2021).................................................................15

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011).............................................................................1, 8, 9

*Wiener v. Dannon Co.*,
   255 F.R.D. 658 (C.D. Cal. 2009) (Otero, J.) .............................................11, 12

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) .........................................................................3

*Yokohama v. Midland National Life Ins. Co.*,
   594 F.3d 1087 (9th Cir. 2010) .....................................................................17

*Zinser v. Accufix Research Inst., Inc.*,
   253 F.3d 1180 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d
   1266 (9th Cir. 2001)......................................................................................1

**California Cases**

*Brockey v. Moore*,
      107 Cal. App. 4th 86 (2003) ........................................................................3

*Discover Bank v. Superior Court*,
      134 Cal. App. 4th 886 (2005) ....................................................................20

*In re Steroid Hormone*,
      181 Cal. App. 4th 145, 104 Cal.Rptr.3d 329 (2010) ................................16

*In re Tobacco II Cases*,
      46 Cal. 4th 298 (2009) ....................................................................... *passim*

*In re Vioxx Class Cases*,
      180 Cal. App. 4th 116 (2009) ....................................................................19

*Kraus v. Trinity Mngt. Servs., Inc.*,
      23 Cal. 4th 116 (2000) ................................................................................2

*Kwikset Corp. v. Superior Court*,
      51 Cal. 4th 310 (2011) ....................................................................... *passim*

*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals,
      Inc.*,
      107 Cal. App. 4th 1336 (2003) .............................................................13, 17

**California Statutes**

Business & Professions Code
      § 17200, *et seq.* .......................................................................................14
      § 17204.......................................................................................................11
      § 17500, *et seq.* .......................................................................................14
      Unfair Competition Law ................................................................ 13, 14, 17, 19
      False Advertising Law ................................................................... 13, 14, 17, 19

Civil Code
      §§ 1770 *et seq.* .......................................................................................13
      § 1783.........................................................................................................3
      Consumer Legal Remedies Act ............................................................ *passim*

**Federal Rules**

Rules of Civil Procedure

PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION

Rule 23 ..................................................................................................1, 21
Rule 23(a).............................................................................................1, 7
Rule 23(a)(1) ..............................................................................................7
Rule 23(a)(2) ..............................................................................................8
Rule 23(a)(3) ..............................................................................................9
Rule 23(b) .................................................................................................1
Rule 23(b)(3)............................................................................... 1, 12, 15, 20

**Other Authorities**

Advertising News:  Hobby Lobby Settles New York State's False
     Advertising Investigation, 2014 WL 2610626 (June 12, 2014) .......................6, 7

PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.     ARGUMENT

### A.     Applicable Standard

Plaintiff bears the burden of showing by a preponderance of the evidence that class certification is appropriate under Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011). Class certification is a two-step process. First, a plaintiff must establish that each of the four requirements of Rule 23(a) is met: numerosity, commonality, typicality, and adequacy of representation. *Id.* Second, he must establish that at least one of the bases for certification under Rule 23(b) is met. *Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013). Where, as here, a plaintiff seeks to certify a class under Rule 23(b)(3), he must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.' " *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 465–66 (2013) (quoting *Wal–Mart*, 564 U.S. at 351). Nevertheless, Rule 23 does not permit "free-ranging merits inquiries at the certification stage." *Id.* at 466. "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* If a court concludes that the moving party has met its burden of proof, the court has broad discretion to certify the class. *Zinser v. Accufix Research Inst., Inc.*, 253 F.3d 1180, 1186 (9th Cir.), *opinion amended on denial of reh'g*, 273 F.3d 1266 (9th Cir. 2001).

As the California Supreme Court has noted:

"[C]onsumer class actions . . . serve important roles in the enforcement of consumers' rights. [They] make it economically feasible to sue when individual claims are too small to justify the expense of litigation, and thereby encourage

attorneys to undertake private enforcement actions. . . . These actions supplement the efforts of law enforcement and regulatory agencies. This court has repeatedly recognized the importance of these private enforcement efforts."

*In re Tobacco II Cases*, 46 Cal. 4th 298, 313 (2009) (quoting *Kraus v. Trinity Mngt. Servs., Inc.*, 23 Cal. 4th 116, 126 (2000)).

"Supreme Court precedent recognizes that the class action device is the only economically rational alternative when a large group of individuals or entities has suffered an alleged wrong, but the damages due to any single individual or entity are too small to justify bringing an individual action." *Jasso v. Money Mart Exp., Inc.*, 879 F. Supp. 2d 1038, 1045 (N.D. Cal. 2012) (quoting *In re American Express Merchants' Litig.*, 667 F.3d 204, 214 (2d Cir. 2012) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 161 (1974) ("[n]o competent attorney would undertake this complex antitrust action to recover so inconsequential an amount ... [e]conomic reality dictates that petitioner's suit proceed as a class action or not at all.") and *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 617 (1997))); *see also Carnegie v. Household Int'l, Inc.*, 376 F.3d 656, 661 (7th Cir. 2004) ("the realistic alternative to a class action is not 17 million individual suits, but zero individual suits, as only a lunatic or a fanatic sues for $30").

**B. Plaintiff's Proposed Class**

Plaintiff seeks to certify the following Class:

"All persons who purchased one or more of Defendant's products from Defendant's Website while in California from August 1, 2020, through the present (the "Class Period") at a discount from a higher reference price and who have not received a refund or credit for their purchase(s)."

(FAC ¶ 51.)  Excluded from the proposed Class are Defendant's officers, directors, and employees, any partner or employee of Class Counsel.  (FAC ¶ 52.)

**C.      Common Evidence Will Be Used to Prove the Class's Claims.**

**1.      All Products Have the Same Type of Advertisement with Identical Strikethrough Reference Price Representations.**

" '[T]he primary evidence in a false advertising case is the advertising itself.' " *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (quoting *Brockey v. Moore*, 107 Cal. App. 4th 86, 100 (2003)).

Throughout the Class period, which is subject to a three-year statute of limitations under the CLRA, Cal. Civ. Code § 1783, Defendant manufactured, distributed, marketed, and sold the Products to consumers throughout the state of California.

Every Product sold to consumers throughout the Class period conveys the same affirmative message that the Product is offered for sale on the Website at a discounted price below its reference price or its prevailing market price.

For example, Plaintiff bought Defendant's Aluminum Card Holder product in the color Astral at a cost of $80 plus tax when it was advertised on Defendant's website at https://www.ekster.com/ (the "Website") at a reference price of $100 with a strikethrough symbol indicating that such price had been discounted by Defendant.  (Purscelley Decl. ¶¶ 2-3; Ferrell Decl. ¶ 3 & Ex. 1.)  This same type of strikethrough pricing is consistent throughout the Website for various other wallets.  (Ferrell Decl. ¶ 4 & Ex. 2.)

Defendant has admitted in response to Plaintiff's Request for Admission (Set One) that it included a reference price for products on the Website to "selectively encourage[e] certain consumer wallet Product sales on Ekster's website" as "among the reasons such Reference Prices were provided."  (Defendant Ekster Inc.'s Objections and Responses to Pl.'s Requests for Admission (Set No. One) at 9:18-22; Ferrell Decl. Ex. 10.)

Thus, each and every consumer who purchased the Product was exposed to Defendant's deceptive representations about the products advertised on the Website at a purported discounted price at the point of purchase.

Furthermore, "Ekster admits" that it "sets pricing for its products in conjunction with pricing policies of third-party retailers."  (Answer to FAC ¶¶ 73, 103.)  Regarding

its own Website, there are no "third-party retailers" involved.  (Ferrell Decl. ¶ 2.)  Thus, common evidence can be gathered with respect to Defendant's pricing policies and practices on its own Website.

### 2.    Evidence of Reference Prices and Actual Prices Has Been Gathered From Defendant Via Discovery.

Plaintiff shall rely upon common evidence of reference prices and actual prices and product sales produced by Defendant in response to Plaintiff's discovery.  (Ferrell Decl. ¶¶ 28-29, 31-33 & Exs. 12-13, 15-17.)  Defendant's reference prices are compiled in Excel spreadsheets referred to as a "price book."  (Ferrell Decl. Ex. 18 at 20:22.)

"Ekster admits the allegations of paragraph 74 insofar as certain of its products for a limited period of time were advertised on its website at a reference price set at an ending digit -0 rather than an ending digit -9, i.e., one (1) dollar higher than the recommended regular price."  (Answer to FAC ¶ 74; *see id.* ¶ 100; Doc. 53.)

The parties in this action are currently in the midst of an ongoing discovery dispute as to the scope of responsive information and documents to be produced by Defendant in discovery.  In particular, Defendant has responded to Plaintiff's discovery limited to the time frame from May 1, 2022 to August 11, 2023 only.  (Ferrell Decl. ¶ 35.)

### 3.    Evidence of Both Reference Prices and Actual Prices on Defendant's Website Collected Via the Wayback Machine Shall Be Proper Subjects of Judicial Notice.

Plaintiff shall rely upon evidence collected via the Wayback Machine to obtain historical reference price and actual price information for products offered for sale on Defendant's Website.  (Ferrell Decl. ¶¶ 5-6 & Exs. 3-6.)  "In this district, the contents of web pages available through the Wayback machine are generally proper subjects of judicial notice 'as facts that can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned[.]'"  *Valenzuela v. The Kroger Co.*, 2024 WL 1336959, at *3 n.7 (C.D. Cal. Mar. 28, 2024) (Gee, J.) (citations omitted).

### 4. Common Evidence Will Be Used to Prove that the Products' Advertisements Are False or Misleading.

Plaintiff will prove with evidence common to the Class that Defendant's uniform advertising is false and/or misleading.

First, Plaintiff will prove with evidence obtained from Defendant via discovery that the prevailing market price on Defendant's various products advertised on its own Website is not what Class members were led to believe in the form of reference prices with strikethrough symbols. That is, Plaintiff has obtained documentary evidence in the form of Defendant's business records, which confirm that reference prices on Defendant's Website are consistently not what Class members were actually charged. (Ferrell Decl. ¶ 33 & Ex. 17.) In other words, Defendant's business records confirm that such reference prices were a sham.

Second, although Defendant has claimed that its pricing on Amazon.com consistently reflects no discounted pricing (with the rare exception of 1-day lightning sales) such that such pricing should reflect pricing equivalent to the reference prices reflected on Defendant's Website, Plaintiff will prove with evidence obtained from the commercial website at amazon.com that Defendant offers a substantial *twenty percent discount* on the prices for the *vast majority* of its products offered for sale on Amazon.com, and that such discounts are offered across *multiple days*, if not longer. (Ferrell Decl. ¶¶ 7-21.) For example, Defendant's Amazon storefront pricing has consistently identified $89 as the purported reference price for its aluminum cardholder wallet products in various colors, (Ferrell Decl. ¶¶ 9, 22 & Ex. 7), which does not come close to matching the $100 reference price used by Defendant on its own Website to advertise the Astral color aluminum cardholder wallet product purchased by Plaintiff. (Purscelley Decl. ¶ 3.)

During Plaintiff's November 2023 investigation of Amazon.com, Defendant's Amazon.com webpage did not show even a single aluminum cardholder wallet product offered for sale at $100 in any color (nor even a former price in that precise amount) for

1    any aluminum cardholder wallet product advertised for sale on such website.  Rather, all

2    versions of the aluminum cardholder wallet products offered for sale on Amazon.com in

3    November 2023 were offered for sale at $62.30 at a thirty percent off "Black Friday Deal"

4    discount from the purported regular price of $89.00.  (Ferrell Decl. ¶ 23 & Ex. 8.)  Such

5    evidence is highly significant because it is entirely inconsistent with Defendant's position

6    claiming that:  (i) the source of the reference pricing used on the Website are the products

7    advertised on its Amazon.com storefront; and (ii) the products advertised on Defendant's

8    storefront on Amazon.com are never discounted from the reference price with the

9    exception of rare, 1-day "lightning sales".  (Ferrell Decl. ¶ 34 & Ex. 18 at 82:6-12.)

10         Notably, evidence of Defendant's pricing and sales on Amazon.com obtained via

11    an investigation conducted ***subsequent*** to Plaintiff's purchase is recognized as

12    appropriate in similar reference pricing cases as was the case in *Real v. Y.M.I. Jeanswear,*

13    *Inc.*, 2017 WL 11675686, at *5 (C.D. Cal. Sept. 1, 2017) (Bernal, J.), in which the

14    "Plaintiffs' investigation took place ***a year after Plaintiff Real's purchase***." *Real*, 2017

15    WL 11675686, at *5 (emphasis added); *id.* ("***This Court declines to find that an***

16    ***investigation must take place prior to or concurrently with a plaintiff's purchase to***

17    ***plead a sufficient claim***.") (emphasis added); *Ochoa v. Zeroo Gravity Grames LLC*, 2023

18    WL 4291650, at *9 (C.D. Cal. May 24, 2023) (Wu, J.) (tentative ruling) ("Evidence that

19    the same sale price was offered on multiple occasions ***at later dates*** supports those

20    theories.") (emphasis added), *adopted in*, No. 2:22-cv-05896-GW-AS, Doc. 53 (C.D. Cal.

21    May 25, 2023).

22         And, Defendant's employee who is its then-head of e-commerce and current

23    director of operations, (Ferrell Decl. Ex. 18 at 78:17-24), has admitted:



27    (Ferrell Decl. ¶ 27 & Ex. 11); Advertising News:  Hobby Lobby Settles New York State's

28    False Advertising Investigation, 2014 WL 2610626 (June 12, 2014) ("'When companies

mislead customers by advertising never-ending sales, our office will hold them accountable,' [Eric] Schneiderman stated.  'Ultimately, a permanent sale is no sale at all.'").

Third, Plaintiff will prove with evidence obtained from a certain third-party website, www.camelcamelcamel.com, that monitors pricing on Amazon.com that the alleged pricing on Defendant's storefront on Amazon.com did not, in fact, match the purported reference pricing advertised on Defendant's Website for certain products.  For example, such website has tracked the pricing of the aluminum cardholder in the Midnight Blue color since November 2021.  From November 2021 through June 2024, the price of such product has not exceeded $89.  (Ferrell Decl. ¶ 25 & Ex. 9.)

It is beyond dispute that such question regarding whether Defendant's online advertising is false or misleading is common to all Class members, and that it predominates over any other question.

**5. The Class Is Entitled to a Partial Refund Calculable on a Classwide Aggregate Basis.**

If Plaintiff proves that the Products are being sold through false advertising, then Plaintiff submits that there are multiple ways in which classwide damages or restitution can be calculated on a classwide basis by analyzing the foregoing evidence of reference prices on the Website, actual prices on the Website, and other information such as comparator pricing that Plaintiff has obtained.  (Ferrell Decl. ¶ 36.)  For example, under one approach, the monetary loss to each Class member for a particular product would be identical, which is the difference between the reference price and price at which each Class member purchased the Products.

**D. Plaintiff Has Satisfied the Rule 23(a) Prerequisites.**

**1. The Proposed Class Is Numerous.**

Rule 23(a)(1) provides that a class action may be maintained only if "the class is so numerous that joinder of all parties is impracticable."  Fed. R. Civ. P. 23(a)(1).  "In this context, 'impracticability' is not equated with impossibility; it is only an apparent

1  difficulty or inconvenience from joining all members of the class." *In re Linkedin User*
2  *Privacy Litig.*, 309 F.R.D. 573, 583 (N.D. Cal. 2015) (quoting *Harris v. Palm Springs*
3  *Alpine Estates, Inc.*, 329 F.2d 909, 913–14 (9th Cir. 1964)).

4       Defendant admits that it offers through its Website a number of wallets, card
5  holders, bags, accessories, and related items to California consumers. (Answer to FAC ¶
6  13; Doc. 53.)   Defendant also admits that "California consumers purchase Ekster's
7  products from its website." (Answer to FAC ¶ 35.)

8       In response to Plaintiff's Interrogatories to Defendant (Set No. One), Defendant
9  has responded to Interrogatory No. 13, "████████████████████████████████
10 █████████████████████████████████████████████████████████
11 ████████████████████ (Def.'s Resp. to Pl.'s Rogs. at 32:14-16; Ferrell Decl.
12 ¶ 30 & Ex. 14.)

13      Numerosity is satisfied.  *See, e.g.*, *In re Linkedin User Privacy Litig.*, 309 F.R.D.
14 573, 583 (N.D. Cal. 2015) ("[S]atisfaction of the numerosity requirement is not dependent
15 upon any specific number of proposed class members, but 'where the number of class
16 members exceeds forty, and particularly where class members number in excess of one
17 hundred, the numerosity requirement will generally be found to be met.'") (quoting *Int'l*
18 *Molders' & Allied Workers' Local 164 v. Nelson*, 102 F.R.D. 457, 461 (N.D. Cal. 1983));
19 *see also Reynoso v. S. Cnty. Concepts*, No. SACV 07-373-JVS(RCx), 2007 WL 4592119,
20 at *2 (C.D. Cal. Oct. 15, 2007) (Staton, J.).

21            **2.**     **The Claims Are Common.**

22      Commonality requires that Plaintiff and the Class members share a common claim
23 that is "capable of classwide resolution," meaning that determination of the claims' "truth
24 or falsity will resolve an issue that is central to [the claims'] validity. . . in one stroke."
25 *Dukes*, 564 U.S. at 350.  Rule 23(a)(2) has "been construed permissively," and "all that
26 is required is a ***single common question*** for plaintiffs to satisfy their 'limited burden'
27 under Rule 23(a)(2)." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 981 (9th Cir. 2011)
28 (quotation marks and citation omitted; emphasis added); *Negrete v. Allianz Life Ins. Co.*

1  *of N. Am.*, 287 F.R.D. 590, 603 (C.D. Cal. 2012) (Snyder, J.). "What matters to class

2  certification . . . [is] the capacity of a classwide proceeding to generate common answers

3  apt to drive the resolution of the litigation." *Dukes*, 564 U.S. at 350 (quotation marks and

4  citation omitted).

5       Plaintiff's claim arises from uniform product advertisements, which Class

6  members were exposed to and saw the same representations, the truth or falsity of which

7  will resolve a common issue central to all claims "in one stroke." *Guido v. L'Oreal USA,*

8  *Inc.*, 2013 WL 3353857, at *5 (C.D. Cal. July 1, 2013) (Snyder, J.); *Forcellati v.*

9  *Hyland's, Inc.*, 2014 WL 1410264, at *9 (C.D. Cal. Apr. 9, 2014) (King, C.J.) ("'Because

10  a determination of the truth or falsity of Defendant[s'] representation of [the products']

11  efficacy will resolve an issue that is central to the validity of each one of the claims in

12  one stroke,' and the products' efficacy can be established on a class-wide basis through

13  …expert testimony, Plaintiffs have sufficiently shown commonality.") (quoting *Delarosa*

14  *v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011) (Staton, J.)).

15       Materiality is also a common issue because "this inquiry focuses on ***the***

16  ***[d]efendants'*** representations about the product." *Bruno v. Quten Research Inst., LLC*,

17  280 F.R.D. 524, 537 (C.D. Cal. 2011) (Carter, J.) (collecting cases) (emphasis added).

18  The uniform representations on the products advertisements are material on their face as

19  price discounts are surely an important reason for anyone to purchase the products.

20  Therefore, classwide reliance under the CLRA is properly presumed or inferred.  *See,*

21  *e.g.*, *F.T.C. v. Pantron I Corp.*, 33 F.3d 1088, 1095-96 (9th Cir. 1994) ("Express product

22  claims are presumed to be material . . . ."); *Kwikset Corp. v. Superior Court*, 51 Cal. 4th

23  310, 328 (2011) (same).

### 3.   Plaintiff's Claims Are Typical.

25       Rule 23(a)(3) requires that "the claims or defenses of the representative parties are

26  typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).  "Under the rule's

27  permissive standards, representative claims are 'typical' if they are reasonably co-

28  extensive with those of absent class members; they need not be substantially identical."

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998).  "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (quotation omitted).

First, the action is based on conduct that is not unique to Plaintiff.  Plaintiff was motivated to purchase the Product because of the advertisement statement that the Product was offered at a substantial $20 discount (*i.e.*, 20 percent off) from its prevailing market price or reference price.  (Purscelley Decl. ¶ 3.)  Other consumers were surely motivated as well due to the materiality of the statement that the Product was substantially discounted from its prevailing market price.  Whether the misrepresentation at issue "may not have had the 'same impact on all consumers' and may not have informed an individual's buying decision is not relevant, because the standard is an objective one".  *Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468, 475 n.6 (C.D. Cal. 2012) (Snyder, J.).

"It is not ... necessary that [the plaintiff's] reliance upon the truth of the fraudulent misrepresentation be the sole or even the predominant or decisive factor influencing his conduct.... It is enough that the representation has played a substantial part, and so had been a substantial factor, in influencing his decision."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 326 (Cal. 2009).  Because the Product's pricing was offered to a cost conscious individual like Plaintiff at a substantial discount, it follows that representations about the Product constituting pricing discounts were a "substantial factor" in Plaintiff's—and all consumers'—purchasing decision.

Second, putative Class members have the same injury as Plaintiff, which is the loss of money because of Defendant's deceptive conduct.  Notably, the manner in which Plaintiff used the Products is not at issue in this case.  Under the CLRA, the relevant inquiry and related injury occurs at the time the consumer purchased the product based on the product advertisement.  *Cf. Kwikset Corp.*, 51 Cal. 4th at 329 ("A consumer who relies on a product label and challenges a misrepresentation contained therein can satisfy

the standing requirement of section 17204 by alleging ... that he or she would not have bought the product but for the misrepresentation."); *id.* at 334 ("in the eyes of the law, a buyer forced to pay more than he or she would have is ***harmed at the moment of purchase***") (emphasis added); *Johns v. Bayer Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012) (finding typicality satisfied where proposed class "paid money to purchase the [defendant's product]") (Battaglia, J.).

The Court should find that Plaintiff's claims are "reasonably co-extensive" with those of the proposed class members, *Hanlon*, 150 F.3d at 1020, and that, therefore, Plaintiff has satisfied the typicality requirement.

### 4. Plaintiff and His Counsel Will Continue to Adequately Represent the Class.

Plaintiff seeks appointment as class representative.

A representative is adequate if: (1) there is no conflict of interest between the representative, his counsel, and absent class members; and (2) the representative and his counsel will "prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F. 3d at 1020; *see also Wiener v. Dannon Co.*, 255 F.R.D. 658, 667 (C.D. Cal. 2009) (Otero, J.).

Plaintiff purchased the Product relying on the representations on the Product's advertising on the Website. (Purscelley Decl. ¶ 3.) After his purchase, based on the information that Plaintiff now has, Plaintiff now believes that the Product that he purchased was overpriced by the amount of the discount advertised on the Website. *Id.*

Defendant admits that it listed the wallet purchased by Plaintiff for $80 on its Website, and that it was offered and sold with a corresponding strikethrough price on its Website, that Plaintiff purchased it for $80, and that it shipped the product to Plaintiff's address. (Answer to FAC ¶¶ 11, 21, 22, 26, 28.)

Thus, the interests of Plaintiff and the members of the proposed Class are fully aligned for purposes of determining whether Defendant's advertising representations of the strike-through price are false. *Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 566-

67 (S.D. Cal. 2012) (holding that adequacy is met when plaintiff and the proposed class share the same claims and interest in obtaining relief, and she is vigorously pursuing relief on behalf of the proposed class); *In re Ferrero Litig.*, 278 F.R.D. 552, 559 (S.D. Cal. 2011) (holding that adequacy is met when there is no conflict of interest between the proposed class representatives, their counsel, and the class).

In addition, Plaintiff is aware that he is bringing this action as a representative of a class of consumers, and is knowledgeable and informed about the claims in this action and the relief he is requesting.  (Purscelley Decl. ¶ 5.)

Finally, Plaintiff retained counsel with significant experience in prosecuting class actions, including false advertising cases.  (Ferrell Decl. ¶¶ 37-46.)  Thus, Plaintiff and his counsel meet the adequacy requirement.  Plaintiff requests the appointment of the law firm of Pacific Trial Attorneys, P.C. as Class Counsel.

### E. Rule 23(b)(3) Is Satisfied.

Under Rule 23(b)(3), a class action may be maintained if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Rule 23(b)(3) encompasses cases "in which a class action would achieve economies of time, effort, and expense, and promote. . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Amchem Prods., Inc.*, 521 U.S. at 615; *Wiener*, 255 F.R.D. at 668.

#### 1. Predominance Is Satisfied.

"Predominance is a test readily met in certain cases alleging consumer … fraud…." *Amchem Prods. v. Windsor, Inc.*, 521 U.S. 591, 625 (1997).

Under Rule 23(b)(3), a plaintiff seeking to certify a class must show that questions of law or fact common to the members of the class "predominate over any questions affecting only individual members and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P.

23(b)(3). "The 'predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.'" *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 623 (1997)). The Supreme Court has defined an individual question as "one where members of a proposed class will need to present evidence that varies from member to member...." 577 U.S. at 453 (quotation omitted). A common question, on the other hand, "is one where the same evidence will suffice for each member to make a prima facie showing [or] the issue is susceptible to generalized, class-wide proof." *Id.* (quotation omitted).

Here, Plaintiff seeks to certify a class of consumers for his CLRA, UCL, FAL, and fraud claims. The CLRA prohibits any "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale or lease of goods or services to any consumer...." (Cal. Civ. Code §§ 1770 *et seq.*) The CLRA claim requires Plaintiff to prove that Defendant's advertising was either false or misleading. *See, e.g.*, *National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc.*, 107 Cal. App. 4th 1336, 1342 (2003). This is an objective standard, asking whether the representations would be material to a reasonable consumer. *See In re Tobacco II Cases*, 46 Cal. 4th at 327; *Kwikset*, 51 Cal. 4th at 332. Plaintiff contends that, accordingly, this case involves common questions and common evidence about the falsity of Defendant's advertising statement (in short, whether Defendant's products are, in fact, discounted, as claimed by Defendant in its advertising of the Product).

These common legal and factual questions, which do not vary among members of the Class, and which may be determined without reference to the individual circumstances of any member of the Class, include, but are not limited to, the following:

a) Whether, during the Class period, Defendant advertised false reference prices of its products offered on its Website.

b) Whether, during the Class period, Defendant advertised price discounts from false reference prices on products offered on its Website.

c)       Whether the products listed on Defendant's Website during the Class period were offered at their reference prices for any reasonably substantial period of time prior to being offered at prices that were discounted from their reference prices.

d)       Whether the reference prices were the prevailing market price at any retailer other than Defendant, to the extent such retailers existed for a California market.

e)       Whether Defendant's deceptive pricing scheme's use of false reference prices constitutes an "unlawful," "unfair," or "fraudulent" business practice in violation of California's Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq.*

f)       Whether Defendant's deceptive pricing scheme's use of false reference prices constitutes "unfair, deceptive, untrue or misleading advertising" in violation of the California's Unfair Competition Law, Cal. Bus & Prof. Code § 17200, *et seq.*

g)       Whether Defendant's deceptive pricing scheme's use of false reference prices constitutes false advertising in violation of California's False Advertising Law under Business & Professions Code § 17500, *et seq.*

h)       Whether Defendant's false reference prices on products offered on its Website during the Class period are false representations.

i)       Whether and when Defendant learned that false reference prices on products offered on its Website during the Class Period were false representations.

j)       Whether Defendant concealed material information, *i.e.*, that it was using false advertising via false reference prices on products offered on its Website during the Class period, from members of the Class.

k)       Whether Defendant had a duty to disclose to its customers that the reference prices were fake "original" prices in furtherance of sham sales.

l)       Whether Defendant's conduct causes, and continues to cause, harm to the Class.

m)       Whether the members of the Class are entitled to damages and/or restitution.

n)       Whether injunctive relief is appropriate and necessary to enjoin Defendant from continuing to engage in false or misleading advertising.

o)      Whether Defendant's conduct was undertaken with conscious disregard of the rights of the members of the Class and was done with fraud, oppression, and/or malice.

### a.      Questions of Fact

#### i.      Materiality

California's consumer protection laws evaluate materiality under a reasonable person standard, not on an individualized basis.  *See In re Tobacco II Cases*, 46 Cal. 4th at 327; *Kwikset*, 51 Cal. 4th at 332.

Plaintiff can use common evidence to establish that Defendant's representations on its advertisements are material under the reasonable consumer test.

*Clevenger v. Welch Foods Inc.*, 342 F.R.D. 446, 460 (C.D. Cal. 2022), is directly on point.  In *Clevenger*, the Court addressed the materiality factor as follows:

> "*In re McCormick & Co., Inc., Pepper Prod. Mktg. & Sales Pracs. Litig.*, 422 F. Supp. 3d 194 (D.D.C. 2019), is instructive. There, the court granted class certification of a CLRA claim alleging nonfunctional slack-fill. The court concluded that "where there is no inherent ambiguity as to the misrepresentation, no question as to the uniformity of exposure, and an objective, reasonable person standard applies," "materiality is a common question for purposes of Rule 23(b)(3) and plaintiffs are not required to proffer extrinsic evidence such as a consumer survey, market research, or an expert opinion." *Id.* at 256; *see also Vizcarra v. Unilever U.S., Inc.*, 339 F.R.D. 530, 548 (N.D. Cal. 2021) (explaining that in cases in which "the alleged misrepresentations could be deceptive as a matter of law," the plaintiff need not "point to common evidence other than the alleged misrepresentations themselves to establish that the question of likelihood of deception can be resolved on a classwide basis").

> Simply stated, at summary judgment or trial, Defendants are free to offer evidence on whether nonfunctional slack-fill is material to a reasonable consumer. ***But the reasonable consumer test is inherently an objective analysis, and thus***

1    ***issues of materiality may be decided on a class-wide basis.*** At this stage, that is all

2    that is required. *See Amgen*, 568 U.S. at 459, 133 S.Ct. 1184; *In re Steroid*

3    *Hormone*, 181 Cal. App. 4th 145, 157, 104 Cal.Rptr.3d 329 (2010); *Tyson Foods,*

4    *Inc. v. Bouaphakeo*, 577 U.S. 442, 457, 136 S.Ct. 1036, 194 L.Ed.2d 124 (2016)

5    (Where "the concern about the proposed class is not that it exhibits some fatal

6    dissimilarity but, rather, a fatal similarity—[an alleged] failure of proof as to an

7    element of the plaintiffs' cause of action—courts should engage that question as a

8    matter of summary judgment, not class certification.")."

9    *Clevenger*, 342 F.R.D. at 460 (emphasis added).

10        As such, the Court should find that Plaintiff has met his burden of showing that the

11   challenged price discount advertising about the products on the Website would be

12   material to a reasonable consumer in making his purchasing decision. *See In re Tobacco*

13   *II Cases*, 46 Cal. 4th at 326.

14                           **ii.    Reliance**

15       Plaintiff anticipates that Defendant shall argue that Plaintiff cannot establish that

16   all class members relied on Defendant's representations about the products' pricing

17   discounts.  Reliance is an essential element of the CLRA and "is proved by showing that

18   the defendant's misrepresentation or nondisclosure was an immediate cause of the

19   plaintiff's injury-producing conduct."  *In re Tobacco II Cases*, 46 Cal. 4th at 326. A

20   plaintiff is entitled to a presumption of reliance if material representations were made to

21   class members.  *Id.*; *see also Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581, 595

22   (9th Cir. 2012).

23       Plaintiff anticipates that Defendant contends that reliance cannot be presumed in

24   this case because consumers have individualized reasons for purchasing the Product.  As

25   discussed above, however, the Court should find that Plaintiff has shown that the

26   representations at issue were material.  And at a minimum, everyone who purchased the

27   products advertised on the Website would have been exposed to the claim that substantial

28   discounts were offered on such products' advertising.  The predominant issue in this case

is whether such representations are false or misleading, not whether consumers were also persuaded to purchase the products for other reasons. *See, e.g.*, *In re Ferrero Litig.*, 278 F.R.D. 552, 560 (S.D. Cal. 2011) (finding predominance satisfied where class members had "common contention" that defendant "made a material misrepresentation regarding the nutritious benefits of Nutella® that violated the UCL, FAL and the CLRA" and "any injury suffered by a class member in this case stems from Defendant's common advertising campaign of Nutella®"). The Court should find that a presumption of reliance is therefore warranted.

### iii.   Falsity

Plaintiff anticipates that Defendant shall argue that Plaintiff cannot establish predominance because proving falsity will entail individual questions rather than common evidence.  In a false advertising case, "[t]he falsity of the advertising claims may be established by testing, scientific literature, or anecdotal evidence." *King Bio*, 107 Cal. App. 4th at 1348.  Here, Plaintiff has established falsity by anecdotal evidence.

"[T]he mere existence of an expert or experts who support the defendant's representations should not insulate a defendant from false advertising claims or foreclose class certification." *Racies v. Quincy Bioscience, LLC*, 2017 WL 6418910, at *4 (N.D. Cal. Dec. 15, 2017) (Gilliam, J.).

### iv.   Damages and Restitution

Plaintiff anticipates that Defendant shall argue that differences in damages calculations defeat class certification.  But, in *Yokohama v. Midland National Life Ins. Co.*, 594 F.3d 1087 (9th Cir. 2010), the Ninth Circuit held that "damage calculations alone cannot defeat certification."  *Id.* at 1094.  Notably, "*Yokohama* remains the law of this court, even after *Comcast*."  *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 988 (9th Cir. 2015).

"UCL and FAL restitution is based on what a purchaser would have paid at the time of purchase had the purchaser received all the information."  *Id.* at 989.  "[I]n calculating restitution under the UCL and FAL, the focus is on the difference between

what was paid and what a reasonable consumer would have paid at the time of purchase without the fraudulent or omitted information." *Id.* "California law 'requires only that some reasonable basis of computation of damages be used, and the damages may be computed even if the result reached is an approximation.'" *Id.* (quotation omitted). "'[T]he fact that the amount of damage may not be susceptible of exact proof or may be uncertain, contingent or difficult of ascertainment does not bar recovery.'" *Id.* (quotation omitted).

Plaintiff submits three methods for calculating damages and restitution. The first method is to calculate the difference between the advertised reference price and actual price at which each Class member purchased one of the Products. Given the evidence of Defendant's advertised reference prices and actual prices that Class members were charged to buy products from the Website produced by Defendant in response to Plaintiff's discovery, (Ferrell Decl. ¶¶ 28-29, 31-33 & Exs. 12-13, 15-17), Plaintiff's evidence is highly reliable and substantial. Assuming that Plaintiff's theory of liability is true, which is that Defendant intentionally inflated its reference prices to deceive consumers into buying its Products at prices that they would otherwise not have paid without such deceptive advertising, Defendant presumably calculated a significant price differential to conceal how much significantly lower the fair market value of its Products would have otherwise been priced at without its false advertising. This price differential has a relationship to the actual value below which Defendant set the actual prices of its Products. For example, Plaintiff purchased the aluminum cardholder offered on Defendant's Website for $80 with a reference price of $100, reflecting a purported discount of $20. (Purscelley Decl. ¶¶ 2-3.) Plaintiff submits that that $20 inflated sum chosen by Defendant was not a randomly selected figure, but rather that Defendant selected such figure because the actual fair market value of the cardholder purchased by Plaintiff was only approximately $60. That is, Defendant selected the $80 actual price with the false advertising to bolster its sales because the actual fair market value of the same product without deceptive advertising was $60.

The second method is to calculate the difference between the advertised reference price and actual price at which Defendant has offered for sale its products after the commencement of the instant action, which put Defendant on notice that its pricing scheme was being scrutinized.  Notably, after the commencement of the instant action, which was originally filed in the California Superior Court on August 11, 2023, (Doc. 1-1; Page ID #11), Defendant adjusted the prices of its aluminum cardholder products offered for sale on its Website (with reference prices) to as low as $59 for some products, mostly $62 for other products, and some products were offered at $69.  (Ferrell Decl. ¶ 25.)  Needless to say, Defendant knew from the instant action that its pricing scheme was under scrutiny, and so it deliberately changed course to ensure that its actual prices were closer to fair market value.  Thus, Defendant's post-filing actual prices for its aluminum cardholder products provides evidentiary support that its pre-suit pricing was not the fair market value of its products, and provides a method by which to calculate restitution for the class.  For example, if a Class member like Plaintiff purchased the Astral color aluminum cardholder for $80, but the price was reduced to $69 after the instant action was filed (with a more accurate self-assessment of the fair market value), then the difference of $11 could serve as a basis for restitution.

The third method is to calculate the "actual value of what the plaintiff received," by calculating the "market price of another, comparable product."  *In re Vioxx Class Cases*, 180 Cal. App. 4th 116, 131 (2009).  "[T]hat measure cannot be awarded without evidence that the proposed comparator is actually a product of comparable value to what was received." *Id.*  Plaintiff intends to rely on evidence of the market price of comparable products.  (Ferrell Decl. ¶ 36.)

### b.    Questions of Law

The questions of law shall all be common because Plaintiff seeks to certify a California-only CLRA/UCL/FAL/fraudulent concealment class.  That is, Plaintiff is ***not*** seeking to certify a nationwide class.

To apply California law on a classwide basis, Plaintiff must show that "California has significant contact or significant aggregation of contacts to the claims of each class member." *Racies*, 2017 WL 6418910, at \*5 (quoting *Mazza*, 666 F.3d at 590). Given that each of Products at issue in this action was purchased in California, that surely exists here. It is beyond dispute that California's CLRA law applies here because of California's strong interest in protecting its consumers. *Discover Bank v. Superior Court*, 134 Cal. App. 4th 886, 895 (2005) ("California does have a strong interest in protecting its consumers….").

### 2. Superiority

The superiority requirement tests whether "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." (Fed. R. Civ. P. 23(b)(3).) The Court considers four non-exclusive factors: (1) the interest of each class member in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the class; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.* "Where classwide litigation of common issues will reduce litigation costs and promote greater efficiency, a class action may be superior to other methods of litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1235 (9th Cir. 1996).

### a. Interest of Each Class Member in Controlling the Prosecution of Separate Actions.

The interest of each class member controlling the prosecution of separate actions is minimal. Notably, if a class member was so interested in prosecuting a separate action, separate actions would exist, which do not. (Ferrell Decl. ¶ 49.)

### b. Litigation Already Commenced by Class

No prior litigation has been commenced by or against the class. (Ferrell Decl. ¶ 49.)

**c.     Desirability of Concentrating the Litigation in This Court.**

Given that this action is pled as a putative California class action, it is desirable to complete the litigation of claims in this Court, which presumably has the single greatest concentration of putative class members statewide.

**d.     Difficulties Likely to Be Encountered in Management of Class Action**

"That there may be some difficulty in identifying all class members is not dispositive:  the Ninth Circuit . . . rejected a similar argument that plaintiffs must identify an administratively feasible way to determine who is in the class in order to satisfy the requirements of Rule 23."  *Racies*, 2017 WL 6418910, at *5 (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1123 (9th Cir. 2017) ("[T]he language of Rule 23 does not impose a freestanding administrative feasibility prerequisite to class certification.")).

"That some individuals may like the product is similarly irrelevant."  *Racies*, 2017 WL 6418910, at *5.

"A refund is also not a superior alternative to *adjudicating* class members' claims."  *Racies*, 2017 WL 6418910, at *5 (citing *Korolshteyn v. Costco Wholesale Corp.*, 2017 WL 1020391, at *8 (S.D. Cal. Mar. 16, 2017) ("[A]llowing class members to obtain a refund is not an alternative to 'adjudicating.' If it were, then Costco (and any retail store) could freely misrepresent the benefits of their products secure in the knowledge that their return policy effectively immunizes them from any suit seeking restitution.")).

The Court should find that the superiority factors are met in this case.

## II.     CONCLUSION

For the foregoing reasons, it is respectfully requested that the Motion be granted, and that the Court grant such further and other relief as it deems appropriate.

Dated:  June 10, 2024                    PACIFIC TRIAL ATTORNEYS, APC

By: */s/Scott J. Ferrell*
Scott J. Ferrell
Attorney for Plaintiff

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 6,952 words, which complies with the word limit of L.R. 11-6.1.

Dated:  June 10, 2024

*/s/ Scott J. Ferrell*
Scott J. Ferrell
