1  Scott J. Ferrell, Bar No. 202091
   sferrell@pacifictrialattorneys.com
2  Victoria C. Knowles, Bar No. 277231
   vknowles@pacifictrialattorneys.com
3  PACIFIC TRIAL ATTORNEYS, P.C.
   4100 Newport Place Drive, Suite 800
4  Newport Beach, CA  92660
   Tel: (949) 706-6464
5  Fax: (949) 706-6469

6  Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| THOMAS PURSCELLEY, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>EKSTER INC., a Delaware corporation; and DOES 1 TO 10, inclusive,<br><br>Defendants. | Case No.  2:23-cv-07908-WLH-JC<br><br>**DECLARATION OF SCOTT J. FERRELL IN SUPPORT OF PLAINTIFF'S AMENDED MOTION FOR CLASS CERTIFICATION**<br><br>[Amended Memorandum of Points and Authorities; Declaration of Thomas Purscelley filed concurrently herewith]<br><br>Date:        August  2, 2024<br>Time:        11:00 a.m.<br>Judge:       Hon. Wesley L. Hsu<br>Courtroom:  9B |

# DECLARATION OF SCOTT J. FERRELL

I, Scott J. Ferrell, hereby declare as follows:

1. I am an attorney licensed to practice law in the State of California, as well as in all of the federal judicial districts therein. I am the founding partner of Pacific Trial Attorneys, P.C. ("Pacific Trial Attorneys"), counsel for plaintiff Thomas Purscelley ("Plaintiff"). If called upon as a witness, I could and would competently testify to the facts set forth below, as I know each to be true based on my own personal knowledge or based upon my review of the files and records maintained by Pacific Trial Attorneys in the regular course of business.

2. The website at: https://www.ekster.com/ (the "Website") contains online Terms of Sale (last updated in November 2023), stating in relevant part, "These terms and conditions (these "Terms") apply to the purchase and sale of products and services through the Ekster website (the "Site"). These Terms are subject to change by Ekster Inc." Thus, Defendant Ekster Inc. ("Defendant") is identified expressly by name within its Terms of Sale.

3. At the time when my law firm investigated the Website in early August 2023, the Website offered its various aluminum cardholder wallet products for sale at a price of $80, which is what Plaintiff paid, and advertised an applicable reference price of $100 with a strikethrough symbol crossing out the $100 amount. Attached hereto as **Exhibit "1"** is a true and correct copy of an excerpt of the webpage for aluminum cardholders wallets on the Website as of August 10, 2023.

4. My law firm has investigated the pricing for various wallets products on the Website by making a copy of a screenshot of the Website on or about August 10, 2023 of the webpage at: https://www.ekster.com/collections/all-wallets. Attached hereto as **Exhibit "2"** is a true and correct copy of an excerpt of such webpage on the Website as of August 10, 2023.

5. My law firm has investigated the historical pricing for the aluminum cardholder products on the Website by using the Internet Archive's Wayback Machine

at: https://wayback-api.archive.org/. Based on such analysis, my law firm was unable to detect any instance in which the $100 reference price for the aluminum cardholder wallet products was actually offered on the Website for any color during the 90-day time period before Plaintiff purchased the Astral colored Aluminum Cardholder Wallet product from the Website on August 1, 2023. In particular, the Wayback Machine has archived webpages of the Website showing that on June 17, 2023, June 10, 2023, and May 22, 2023, aluminum cardholder wallets were offered for sale on the Website at $63, and had a reference price of $90. Attached hereto as **Exhibit "3"** is a true and correct copy of the Wayback Machine's archived webpage of June 17, 2023 of the URL address at: https://www.ekster.com/products/aluminum-cardholder, which is available for viewing at:

https://web.archive.org/web/20230617220520/https://www.ekster.com/products/aluminum-cardholder. Attached hereto as **Exhibit "4"** is a true and correct copy of the Wayback Machine's archived webpage of June 10, 2023 of the following URL address: https://www.ekster.com/products/aluminum-cardholder, which is available for viewing at:

https://web.archive.org/web/20230610143021/https://www.ekster.com/products/aluminum-cardholder. Attached hereto as **Exhibit "5"** is a true and correct copy of the Wayback Machine's archived webpage of May 22, 2023 of the following URL address: https://www.ekster.com/products/aluminum-cardholder, which is available for viewing at:

https://web.archive.org/web/20230522015414/https://ekster.com/products/aluminum-cardholder/

6.  Based on my law firm's investigation of the Website via the Wayback Machine, it is feasible to use the Wayback Machine to obtain historical price information, both actual and reference prices, for other products offered for sale on the Website including various wallets that do not fall within the aluminum cardholder category of products. For example, attached hereto as **Exhibit "6"** is a true and correct

copy of the Wayback Machine's archived webpage of January 23, 2023 of the URL address at: https://ekster.com/collections/all-wallets, which is available for viewing at: https://web.archive.org/web/20230123221732/https://ekster.com/em-cgi/btag/collections/all-wallets.

7. My law firm's investigation of the storefront of products sold by Defendant on the website at Amazon.com indicates that Defendant has offered a twenty percent discount on the prices for the vast majority of its products offered for sale on Amazon.com, and that such discounts have been offered across multiple days, if not longer periods of time.

8. For example, on June 4-7, 2024, Defendant offered for sale on its Amazon storefront all versions of the Parliament Wallet products offered in ten different colors, *i.e.*, Caramel, Classic Brown, Juniper Green, Merlot Red, Milled Beige, Nappy Black, Navy, Onyx, Roma Cognac, and Steel Blue, at a 20 percent discounted price of $71.20 instead of the regular price of $89.00.

9. On June 4-7, 2024, Defendant offered for sale on its Amazon storefront all versions of the Aluminum Cardholder Wallet products offered in eleven different colors, *i.e.*, Classic Black, Gold, Graphite, Green Ore, Matte Black, Midnight Blue, Redwood, Rose Gold, Silver, Space Grey, at a 20 percent discounted price of $71.20 instead of the regular price of $89.00.

10. On June 4-7, 2024, Defendant offered for sale on its Amazon storefront all versions of the Senate Wallet products offered in six different colors, *i.e.*, Classic Brown, Juniper Green, Merlot Red, Nappa Black, Roma Cognac, and Steel Blue, at a 20 percent discounted price of $63.20 instead of the regular price of $79.00.

11. On June 4-7, 2024, Defendant offered for sale on its Amazon storefront all versions of the Aluminum AirTag products offered in six different colors, *i.e.*, Black, Graphite, Green Ore, Midnight Blue, Redwood, and Space Grey, at a 20 percent discounted price of $79.20 instead of the regular price of $99.00.

12. On June 4-7, 2024, Defendant offered for sale on its Amazon storefront all

versions of the Vachetta Parliament Wallet products offered in four different colors, *i.e.*, Bergamo Brown, Bologna Black, Brescia Bronze, Torino Tan, at a 20 percent discounted price of $87.20 instead of the regular price of $109.00.

13. On June 4-7, 2024, Defendant offered for sale on its Amazon storefront all versions of the Recycled Parliament Wallet products offered in three different colors, *i.e.*, Charcoal, Earth, and Sand, at a 20 percent discounted price of $71.20 instead of the regular price of $89.00.

14. On June 4-7, 2024, Defendant offered for sale on its Amazon storefront all versions of the Magnetic Leather Wallet for Men products offered in three different colors, *i.e.*, Black, Brown, and Caramel, at a 20 percent discounted price of $63.20 instead of the regular price of $79.00.

15. On June 4-7, 2024, Defendant offered for sale on its Amazon storefront all versions of the Fortuna Parliament Oak Wallet products offered in three different colors, *i.e.*, Blackwood, Chestnut, and Oak, at a 20 percent discounted price of $140 instead of the regular price of $175.00.

16. On June 4-7, 2024, Defendant offered for sale on its Amazon storefront all versions of the Key Case products in three different colors, *i.e.*, Classic Brown, Black on Black, and Nappa Black, at a 20 percent discounted price of $52.00 instead of the regular price of $65.00.

17. On June 4-7, 2024, Defendant offered for sale on its Amazon storefront all versions of the Parliament AirTag Wallet products offered in two different colors, *i.e.*, Classic Brown and Nappa Black, at a $20 percent discounted price of $79.20 instead of the regular price of $99.00.

18. On June 4-7, 2024, Defendant offered for sale on its Amazone storefront all versions of the Carbon Fiber AirTag Wallet or Carbon Forged AirTag Wallet products at a 20 percent discounted price of $108.00 instead of the regular price of $135.00.

19. On June 4-7, 2024, Defendant offered for sale on its Amazon storefront all

1  versions of the Carbon Fiber Wallet or Carbon Forged Wallet products at a 20 percent
2  discounted price of $100.00 instead of the regular price of $125.00.

3      20.    On June 4-7, 2024, Defendant offered for sale on its Amazon storefront the
4  one and only version of the Money Clip product in the Space Grey color at a 20 percent
5  discounted price of $23.20 instead of the regular price of $29.00.

6      21.    On June 4-7, 2024, the only products that Defendant offered for sale on its
7  Amazon storefront that were not offered at a discounted price were two Senate wallets
8  in the colors Navy and Caramel.  Such products were both offered for sale at $79.00
9  with no discount.

10      22.    Attached hereto as **Exhibit "7"** is a true and correct copy of the webpage
11  on Amazon.com advertising Defendant's Aluminum Cardholder product in the Classic
12  Black color on June 4, 2024 reflecting an opportunity to "Apply 20% coupon".

13      23.    Upon receipt of Defendant's Motion to Dismiss Plaintiff's Complaint filed
14  in this action on November 15, 2023, (Doc. 23), my law firm immediately investigated
15  Defendant's Amazon.com storefront with respect to the pricing of its aluminum
16  cardholder wallet products offered for sale there.  During such investigation in
17  November 2023, Defendant's Amazon.com webpage did not show even a single
18  aluminum cardholder wallet product offered for sale at $100 in any color (nor even a
19  former price in that precise amount) for any aluminum cardholder wallet product
20  advertised for sale on such website.  Rather, all versions of the aluminum cardholder
21  wallet products offered for sale on Amazon.com in November 2023 were offered for
22  sale at $62.30 at a thirty percent off "Black Friday Deal" discount from the purported
23  regular price of $89.00.  Attached hereto as **Exhibit "8"** is a true and correct copy of a
24  webpage on Amazon.com advertising for sale Defendant's aluminum cardholder wallet
25  product in the Midnight Blue color on November 22, 2024.

26      24.    Defendant priced its aluminum cardholder products offered for sale on its
27  own Website (with reference prices) to as low as $59 for some products, mostly $62 for
28  other products, and some products were offered at $69.

25. The website at www.camelcamelcamel.com tracks historical pricing information for products offered for sale on Amazon.com including Defendant's products. For example, such website has tracked the historical pricing of Defendant's Aluminum Cardholder Wallet product in the Midnight Blue color since November 2021 through the present. Attached hereto as **Exhibit "9"** is a true and correct copy of the webpage at the URL: https://camelcamelcamel.com/product/B08HW1S8S2.

26. On March 8, 2024, my law firm received via email service Defendant Ekster Inc.'s Objections and Responses to Pl.'s Requests for Admission (Set No. One), which are dated March 8, 2024. Attached hereto as **Exhibit "10"** is a true and correct copy of Defendant Ekster Inc.'s Objections and Responses to Pl.'s Requests for Admission (Set No. One) dated March 8, 2024.

27. On March 13, 2024, Defendant produced an internal email that is Bates-numbered as DEF000070. Attached hereto as **Exhibit "11"** is a true and correct copy of Bates-numbered page DEF000070, which Defendant has designated as "CONFIDENTIAL" under the Protective Order entered in this action.

28. On March 15, 2024, Defendant produced an Excel file Bates-numbered as DEF0000127, which Defendant has designated as "CONFIDENTIAL" under the Protective Order entered in this action. Attached hereto as **Exhibit "12"** is a true and correct copy of the Excel file Bates-numbered as DEF0000127, which Defendant has designated as "CONFIDENTIAL" under the Protective Order entered in this action.

29. On March 15, 2024, Defendant produced an Excel file Bates-numbered as DEF0000128, which Defendant has designated as "CONFIDENTIAL" under the Protective Order entered in this action. Attached hereto as **Exhibit "13"** is a true and correct copy of the Excel file Bates-numbered as DEF0000128, which Defendant has designated as "CONFIDENTIAL" under the Protective Order entered in this action.

30. On March 18, 2024, my law firm received via email service Defendant Ekster Inc.'s Objections and Responses to Plaintiff's Interrogatories to Defendant (Set No. One), which are dated March 18, 2024. Defendant has designated the foregoing

1  document as "CONFIDENTIAL" under the Protective Order entered in this action.
2  Attached hereto as **Exhibit "14"** is a true and correct copy of Defendant Ekster Inc.'s
3  Objections and Responses to Plaintiff's Interrogatories to Defendant (Set No. One),
4  which are dated March 18, 2024.

5        31.    On April 1, 2024, Defendant produced an Excel file Bates-numbered as
6  DEF0000213, which Defendant has designated as "CONFIDENTIAL" under the
7  Protective Order entered in this action. Attached hereto as **Exhibit "15"** is a true and
8  correct copy of the Excel file Bates-numbered as DEF0000213, which Defendant has
9  designated as "CONFIDENTIAL" under the Protective Order entered in this action.

10        32.    On April 1, 2024, Defendant produced an Excel file Bates-numbered as
11  DEF0000214, which Defendant has designated as "CONFIDENTIAL" under the
12  Protective Order entered in this action. Attached hereto as **Exhibit "16"** is a true and
13  correct copy of the Excel file Bates-numbered as DEF0000214, which Defendant has
14  designated as "CONFIDENTIAL" under the Protective Order entered in this action.

15        33.    On May 21, 2024, Defendant produced an Excel file Bates-numbered as
16  DEF0000238-DEF0001396, which Defendant has designated as "CONFIDENTIAL"
17  under the Protective Order entered in this action. Attached hereto as **Exhibit "17"** is a
18  true and correct copy of the Excel file Bates-numbered as DEF0000238-DEF0001396,
19  which Defendant has designated as "CONFIDENTIAL" under the Protective Order
20  entered in this action.

21        34.    On May 29, 2024, my partner, Victoria C. Knowles, conducted the
22  deposition of Defendant's corporate designee in this action.  Attached hereto as **Exhibit**
23  **"18"** is a true and correct copy of pages 1-2, 4-5, 7-8, 14-15, 16, 18, 20-32, 34-48, 50-
24  76, 78, 82, 84-86, 88-90, 92-93, 95 of the transcript of the deposition of Tom Van Der
25  Kolk as Defendant's corporate designee conducted on May 29, 2024.

26        35.    The parties in this action are currently in the midst of an ongoing discovery
27  dispute as to the scope of responsive information and documents to be produced by
28  Defendant in discovery.  In particular, Defendant has responded to Plaintiff's discovery

limited to the time frame from May 1, 2022 to August 11, 2023 only.  As a result of Defendant's unilateral limitation, Defendant has agreed to produce responsive documents and address in discovery information relating to only 56 SKUs for its products.

36.     My staff have conducted an analysis of comparator products that are similar to Defendant's products offered for sale from third party online merchants other than Defendant reflecting lower prices for such comparator products.

37.     I am a 1996 graduate of Georgetown University Law Center, and have been a member of the State Bar of California since June 1999, and a member of the State Bar of Texas since November 1, 1996.

38.     I have been fortunate to receive many awards and recognitions from my peers.  A few examples include: (1) Top 100 SuperLawyers in California by Law & Politics Magazine; (2) "Top 20 Under 40" by the California Daily Journal (an annual list of the twenty most influential attorneys in California under Age 40); (3) "Top 100 Rainmakers" in California by the California Daily Journal (an annual list of the 100 attorneys in California with the largest "books" of business).

39.     I have tried over a dozen high-profile cases to verdict, many of which have received substantial media coverage.  A few such articles include: (1) Townsend, Rejected: Claim that Del Taco Restrooms Inadequate (Orange County Register December 18, 2008) (describing trial victory in which jury deliberated 13 minutes); (2) Schwada, Prosecutors Say Disabled Man Running Lawsuit Scam (Fox News September, 2008); (3) Barron, After Losing Discrimination Claim, Man Faces Investigation (California Daily Journal, June 10, 2008); (3) Heimpel, Jury Rejects Wheelchair-User's Claim Against Marie Callender; (California Daily Journal August 21, 2007); and (4) DeBenedictis, Prop 65 Case Blows Up in Admission of No Fault, (California Daily Journal, November 15, 2004).

40.     Among the cases that I have tried to verdict was a 2006 trial in the Southern District of California in the case of *Nortel Networks, Ltd. v. Platinum*

*Networks, Inc.*, Case No. Case No. 04-CV-1968-IEG, in which a jury unanimously awarded my client over $47,000,000 in damages. At the time, the San Diego Union-Tribune advised that this verdict was the largest punitive damages verdict in California in 2006. *See* Washburn, Nortel Awarded $47.4 Million in Punitive Damages (San Diego Union-Tribune, June 3, 2006.)

41. I have significant experience in prosecuting class actions, including false advertising cases.

42. I frequently lecture regarding class action strategy at events sponsored by bar associations and continuing legal education providers. I have also served on the Steering Committee of the Plaintiff's Class Action Forum, an invitation-only organization sponsored by Cambridge International, a continuing legal education provider. I have personally been lead counsel in over 100 class actions, representing both class plaintiffs as well as high-profile corporate defendants (including Dell, Chevron, Public Storage, OceanSpray, 7-Eleven, and many others).

43. I have been lead counsel in at least five class action cases that resulted in victorious published opinions for my clients, including: (1) *Rivera v. Bio Engineered Supplements & Nutrition, Inc.*, 2008 WL 4906433 (C.D. Cal. Nov. 13, 2008); *In Re BCBG*, 163 Cal. App. 4th 1293 (2008); (2) *Wolski v. Fremont Investment & Loan*, 127 Cal. App. 4th 347 (2005); (3) *Pollard v. Ericsson*, 125 Cal. App. 4th 214 (2004); (4) *Knevelbaard v. Public Storage, Inc.*, No. G033398, 2004 WL 2185849 (Cal. Ct. App. Sept. 29, 2004); and (5) *Consumer Cause, Inc. v. Emerging Vision, Inc.*, No. G03217, 2004 WL 717001 (Mar. 30, 2004).

44. The attorneys representing Plaintiff are well-suited to represent the putative class in this action. My firm, Pacific Trial Attorneys, is a litigation firm based in Newport Beach, California that has extensive experience in litigating consumer class actions from both a plaintiff's and defendant's perspective. I and the other attorneys of Pacific Trial Attorneys have regularly engaged in complex litigation on behalf of

consumers, and have extensive experience in class action lawsuits similar in size and complexity to the instant action.

45. Attorneys at Pacific Trial Attorneys have been appointed as class counsel in numerous complex consumer class actions in federal or state courts. The attorneys at Pacific Trial Attorneys, including myself, have served as lead counsel in literally hundreds of putative class actions involving billions of dollars of claims. Pacific Trial Attorneys' principals have been certified as class counsel in various cases, including *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. Aug. 24, 2011) (Staton, J.) (granting motion for class certification of false advertising consumer class action in which Court certified classes under Federal Rule of Civil Procedure 23(b)(2) and Rule 23(b)(3)), *Rivera v. Bio Engineered Supplements & Nutrition*, Inc., 2008 WL 4906433 (C.D. Cal. Nov. 13, 2008) (Selna, J.) (certifying nationwide and California statewide classes in false advertising consumer class action), and *Williams et al. v. Bioteb Nutraceuticals, Inc. et al.*, Nos. BC414808, BC415948 (Cal. Super. Ct. L.A. Cty. Feb. 5, 2010) (Palazuelos, J.) (granting motion for class certification of nationwide class in false advertising consumer class action).

46. Pacific Trial Attorneys has a proven history of devoting any and all resources necessary to advance its clients' interests, including advancing costs where appropriate and taking cases to trial. Toward that end, Pacific Trial Attorneys is well-capitalized, has no debt, and has an enviable revenue stream from ongoing hourly work and from class action cases that have previously settled. Pacific Trial Attorneys employs attorneys who attended some of the nation's most prestigious law schools and who are all experienced in class action litigation.

47. Plaintiff's counsel have no conflicts of interest, and will prosecute this action vigorously on behalf of Plaintiff and the putative class. I have been lead counsel in this action since its commencement in state court on August 11, 2023, and can confirm that I and the other attorneys at Pacific Trial Attorneys have diligently investigated the facts and claims in this matter and will continue to do so. The Pacific

DECLARATION OF SCOTT J. FERRELL

Trial Attorneys attorneys working on this case have communicated with Plaintiff, conducted interviews and investigations, conducted substantial research regarding the legal issues, and thoroughly investigated the factual issues in this case.  I and the other attorneys at Pacific Trial Attorneys have reviewed thousands of pages of documents produced in discovery, taken the oral deposition of Defendant's corporate designee, and analyzed historical pricing of Defendant's products on both its own website and on its storefront on Amazon.com.  I have personally conducted research regarding the factual and legal issues in this action.  Pacific Trial Attorneys has the financial resources necessary to fully prosecute this action through trial.

48. In connection with my research regarding the factual and legal issues in this action, I have determined that the likely class members number in the thousands. Accordingly, class members would have little interest in individually controlling the prosecution of separate actions.  Individual damages claims of each class member simply are not substantial enough to warrant individual filings.

49. I am not aware of any other lawsuits against Defendant commenced by or on behalf of members of the Class that I seek to represent concerning the claims and issues raised in this action.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  This declaration was executed on June 10, 2024.

*/s/ Scott J. Ferrell*
Scott J. Ferrell

# CERTIFICATE OF SERVICE

I hereby certify that on June 10, 2024, I electronically filed the foregoing **DECLARATION OF SCOTT J. FERRELL IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS CERTIFICATION** with the Clerk of the Court using the CM/ECF system which will send notification of such filing via electronic mail to all counsel of record.

                                          */s/Scott J. Ferrell*
                                          Scott J. Ferrell