
PACIFIC TRIAL ATTORNEYS
A Professional Corporation
Scott J. Ferrell, Bar No. 202091
sferrell@pacifictrialatttorneys.com
Victoria C. Knowles, Bar No. 277231
vknowles@pacifictrialattorneys.com
4100 Newport Place Drive, Suite 800
Newport Beach, CA 92660
Telephone: (949)706-6464

Attorney for Plaintiff

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THOMAS PURSCELLEY, individually and on behalf of all others similarly situated,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>EKSTER INC., a Delaware corporation; and DOES 1 to 10, inclusive,<br><br>　　　　Defendants. | Case No.  2:23-cv-07908-WLH (JCx)<br><br>**REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF AMENDED MOTION FOR CLASS CERTIFICATION**<br><br>[Declaration of Scott J. Ferrell; Reply Memorandum in Support of Request for Judicial Notice; [Proposed] Order filed concurrently herewith]<br><br>Date:  August 16, 2024<br>Time: 1:30 p.m.<br>Ctrm:  9B<br>Judge: Hon. Wesley L. Hsu |

# **TABLE OF CONTENTS**

I. ARGUMENT ..................................................................................................1

    A. Defendant Concedes Numerosity, Commonality, and Typicality. ................1

    B. Predominance Is Satisfied. ...............................................................................1

        1. The Class Definition Is Narrowly Defined to Include Only Customers Who Purchased Defendant's Product(s) at a Discount From a Higher Reference Price. ...................................................................................1

        2. Whether the Class Period Begins on August 1, 2020 or May 5, 2021 Has Nothing to Do with Predominance. .............................................4

        3. The Narrow Class Definition Renders the Case Manageable at Trial. 4

        4. Defendant's Reliance on the Reasonable Consumer Test to Show Lack of Predominance Is Without Merit. ............................................5

        5. Damages Can Feasibly and Efficiently Be Calculated Once the Common Liability Questions Are Adjudicated. ................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Adams v. Starbucks Corp.*,
  2020 WL 4196248 (C.D. Cal. July 9, 2020) (Selna, J.) .....................................10

*Amchem Products, Inc. v. Windsor*,
  521 U.S. 591 (1997)..............................................................................................4

*Apple, Inc. v. Samsung Electronics Co., Ltd.*,
  2014 WL 976898 (N.D. Cal. Mar. 6, 2014) ..................................................11, 12

*Carvalho v. HP, Inc.*,
  2022 WL 17825688 (N.D. Cal. Dec. 20, 2022)...................................................6

*Castro v. County of Los Angeles*,
  833 F.3d 1060 (9th Cir. 2016) (en banc) ...........................................................10

*Chester v. TJX Cos., Inc.*,
  2016 WL 4414768 (C.D. Cal. Aug. 18, 2018) (Wright, J.)..........................6, 7, 9

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013).......................................................................................10, 11

*Covell v. Nine West Holdings, Inc.*,
  2018 WL 558976 (S.D. Cal. Jan. 25, 2018) ........................................................6

*Delman v. J. Crew Group, Inc.*,
  2017 WL 3048657 (C.D. Cal. May 15, 2017) (Fitzgerald, J.) ............................6

*Evans v. DSW, Inc.*,
  2017 WL 7058233 (C.D. Cal. Feb. 2, 2017) (Bernal, J.) ....................................9

*Freeman v. Indochino Apparel, Inc.*,
  443 F. Supp. 3d 1107 (N.D. Cal. 2020)...............................................................6

*Hinojos v. Kohl's Corp.*,
  718 F.3d 1098 (9th Cir. 2013) .............................................................................7

*In re Hyundai & Kia Fuel Econ. Litig.*,
  881 F.3d 679, 703, 705 (9th Cir. 2018), *ordered as not citable by*, 897
  F.3d 1003 (9th Cir. 2018) ....................................................................................3

*In re Hyundai & Kia Fuel Econ. Litig.*,
    897 F.3d 1003 (9th Cir. 2018) ...................................................................3

*In re Hyundai & Kia Fuel Econ. Litig.*,
    926 F.3d 539 (9th Cir. 2019) ............................................................3, 4, 5

*Inga v. Bellacor.com, Inc.*,
    2020 WL 5769080 (C.D. Cal. July 17, 2020) (Fitzgerald, J.) ..........................6, 8

*Leyva v. Medline Indus. Inc.*,
    716 F.3d 510 (9th Cir. 2013) ...................................................................11

*Lilly v. Jamba Juice Co.*,
    308 F.R.D. 231 (N.D. Cal. 2014)..................................................... 10, 11, 12

*Munning v. Gap, Inc.*,
    2016 WL 6393550 (N.D. Cal. Oct. 28, 2016) .....................................................6

*Ochoa v. Zeroo Gravity Games LLC*,
    No. 2:22-cv-05896-GW-AS, 2023 WL 4291650 (C.D. Cal. May 24,
    2023) (Wu, J.) (tentative ruling), *adopted in*, Doc. 53 (C.D. Cal. May
    25, 2023) ...................................................................................................6

*Real v. Y.M.I. Jeanswear, Inc.*,
    2017 WL 11675686 (C.D. Cal. Sept. 1, 2017) (Bernal, J.) ................... 2, 6, 7, 8

*Rubenstein v. Neiman Marcus Group LLC*,
    687 Fed. Appx. 564 (9th Cir. 2017).................................................................8

*Saavedra v. Eli Lilly & Co.*,
    2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) (Wilson, J.) ................................11

*Schneider v. Chipotle Mexican Grill, Inc.*,
    328 F.R.D. 520 (N.D. Cal. 2018).................................................................11

*Shimono v. Harbor Freight Tools USA, Inc.*,
    2016 WL 6238483 (C.D. Cal. Oct. 24, 2016) (Snyder, J.) ................................6

*Werdebaugh v. Blue Diamond Growers*,
    2014 WL 7148923 (N.D. Cal. Dec. 15, 2014)..................................................12

**California Cases**

*King v. U.S. Bank Nat'l Ass'n*,
    53 Cal. App. 5th 675 (2020) ........................................................................10

*People v. Overstock.com, Inc.*,
  12 Cal. App. 5th 1064 (2017) ..............................................................................6, 9

**Federal Statutes**

FTC Act...........................................................................................................................8

**California Statutes**

Unfair Competition Law ................................................................................................8

**Federal Regulations**

16 C.F.R. § 233.1 ...........................................................................................................7

16 C.F.R. § 233.1(a) .......................................................................................................8

16 C.F.R. § 233.1(e) .......................................................................................................7

16 C.F.R. § 233.2 ...........................................................................................................8

16 C.F.R. § 233.2(b)........................................................................................................9

**Federal Rules**

Fed. R. Civ. P. 23(a).......................................................................................................1

Fed. R. Civ. P. 23(c)(4) .................................................................................................12

**Other Authorities**

1A Callmann on Unfair Competition, Tr & Mono. § 5:59 (4th ed. 2015) ................7

Federal Trade Commission's Guide Against Deceptive Pricing ..........................7, 8

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  ARGUMENT

### A.  Defendant Concedes Numerosity, Commonality, and Typicality.

Defendant concedes that the instant Motion has met the burden of showing numerosity, commonality, and typicality under Fed. R. Civ. P. 23(a). (Def.'s Mem. at 2 n.2.)

### B.  Predominance Is Satisfied.

#### 1.  The Class Definition Is Narrowly Defined to Include Only Customers Who Purchased Defendant's Product(s) at a Discount From a Higher Reference Price.

Although Defendant argues that class certification is inappropriate here because the entire class was not exposed to the challenged advertisements containing strikethrough prices, (Def.'s Mem. at 13:1-14:15), Defendant's argument ignores that the class definition is narrowly drawn to require that *all* class members be exposed to strikethrough prices:

> "All persons who purchased one or more of Defendant's products from Defendant's Website while in California from August 1, 2020, through the present (the "Class Period") at a discount from *a higher reference price* and who have not received a refund or credit for their purchase(s)."

(FAC ¶ 51) (emphasis added). Thus, persons in California who purchased one of Defendant's products from Defendant's website at https://www.ekster.com (the "Website") who were never presented with a webpage advertisement showing a "higher reference price" are *excluded* from the Class.

Although Defendant implies that strikethrough pricing has been rarely used on its Website, (Def.'s Mem. at 13:15-14:4), that argument is a red herring argument insofar as it conveniently ignores that Defendant uses strikethrough pricing for the vast majority of its wallet products. For example, Plaintiff's analysis of the Website's pricing of "Aluminum Cardholder" wallet products indicates that of the 15 Aluminum Cardholder

products advertised on the Website on November 22, 2023,[1] 11 out of 15 products advertised on the Website on such date had reference prices with the strikethrough symbol. (Ferrell Decl. ¶ 2.) Thus, 73.3 percent of such wallets had reference prices on that date. *Id.*

More recently, 12 out of 16 "Ekster Cardholder" wallet products advertised on the Website on July 3, 2024 are advertised using reference prices. (Ferrell Decl. ¶ 3.) Thus, currently 75 percent of "Ekster Cardholder" wallets advertised on the Website use reference prices with the strikethrough symbol. *Id.*

As for "Ekster Wallets" advertised on the Website on July 3, 2024, all 14 out of 14 products, *i.e.*, 100 percent are advertised using reference prices. (Ferrell Decl. ¶ 4.)

As for "Cardholder For Airtag" wallet products advertised on the Website on July 3, 2024, all 8 out of 8 products, *i.e.*, 100 percent, are advertised using reference prices. (Ferrell Decl. ¶ 5.)

As for "Wallet for Airtag" products advertised on the Website on July 3, 2024, both of them, *i.e.*, 2 out of 2 products or 100 percent, are advertised using reference prices. (Ferrell Decl. ¶ 6.)

As for "Modular Bifold" wallet products advertised on the Website on July 3, 2024, 2 out of 3 products, *i.e.*, 66.7 percent, are advertised using reference prices. (Ferrell Decl. ¶ 7.)

As for sole "MagSafe Cardholder" wallet product advertised on the Website on July 3, 2024, it is not advertised using a reference price. (Ferrell Decl. ¶ 8.)

Thus, although Defendant argues that "it is nearly impossible to determine whether any given customer of Ekster wallets … was even exposed to a product bearing one of the allegedly misleading prices," (Def.'s Mem. at 14:2-4), Plaintiff's analysis has detected: (i) 17 "Cardholder" wallet products advertised on the Website on either November 22, 2023 or July 3, 2024 with reference prices, (Ferrell Decl. ¶¶ 2-3); (ii) 14

---

[1] Investigations in reference pricing cases can occur after the plaintiff's purchase. *Real v. Y.M.I. Jeanswear, Inc.*, 2017 WL 11675686, at *5 (C.D. Cal. Sept. 1, 2017) (Bernal, J.).

"Ekster Wallet" products advertised on July 3, 2024 with reference prices, *id.* ¶ 4; (iii) eight "Cardholder For Airtag" wallet products advertised on July 3, 2024 with reference prices, *id.* ¶ 5; (iv) two "Wallet For Airtag" wallet products advertised on July 3, 2024 with reference prices, *id.* ¶ 6; and (v) two "Modular Bifold" wallet products advertised on July 3, 2024 with reference prices, *id.* ¶ 7. For buyers of the aforementioned 43 wallet products, it is irrefutable that they were exposed to strikethrough pricing.

Indeed, Defendant freely admits that it "has identified 56 wallet products that at one time or another from May 2022 through August 2023 utilized strikethrough pricing." (Def.'s Mem. at 15:23-25) (citing Ferrell Decl. of 6/7/24 Ex. 14 at Ex. A; Doc. 61-16.) Exhibit A to Defendant's Responses to Plaintiff's Interrogatories (Set One) identifies 60 wallets. Thus, Defendant has admitted to using strikethrough pricing for the vast majority of such wallets within at least a portion of the proposed class period.

Defendant surely knows which of the four wallet products contained in Exhibit A allegedly were never advertised with strikethrough pricing. Assuming *arguendo* that Defendant's position is accurate, then it should be relatively simple for the Court to exclude evidence regarding such four wallet products from trial via motions in limine or other means.

Defendant's reliance on *In re Hyundai & Kia Fuel Econ. Litig.*, 881 F.3d 679, 703, 705 (9th Cir. 2018), *ordered as not citable by*, 897 F.3d 1003 (9th Cir. 2018), is both misplaced and distinguishable. First, Defendant ignores that the three-judge panel disposition "shall not be cited as precedent by or to any court of the Ninth Circuit." *In re Hyundai & Kia Fuel Econ. Litig.*, 897 F.3d 1003, 1007 (9th Cir. 2018). Second, after rehearing the case en banc, the Ninth Circuit affirmed the district court's order certifying a settlement class of buyers and lessees of certain Hyundai and Kia brand automobiles unlike the three-judge panel disposition, which vacated the district court's certification order. *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 560 (9th Cir. 2019) (noting that "this sort of individual question [of reliance on Monroney stickers for fuel efficiency representations for used-car purchasers] would only apply to a subset of the class (used-

car purchasers).")."  Third, unlike the broadly defined class at issue therein, 926 F.3d at 559, which did not differentiate between new car buyers and used car buyers, including the subset of the class of used car buyers that may not have seen the Monroney stickers with the alleged misrepresentations, the proposed class in the instant action is narrowly defined.

Finally, as the Ninth Circuit has explained, "The adversarial nature of a trial ensures that class definitions will be tested and allows the district court '*to adjust the class, informed by the proceedings as they unfold*.'"  926 F.3d at 558 (emphasis added) (quoting *Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 593 (1997)).

### 2. Whether the Class Period Begins on August 1, 2020 or May 5, 2021 Has Nothing to Do with Predominance.

Although Defendant takes issue with the class period beginning on August 1, 2020 because it argues that it was not incorporated until May 5, 2021, Defendant's argument has nothing to do with the predominance inquiry.  In addition, given that the FAC already alleges as party defendants DOES 1-10, Plaintiff would not necessarily need to amend the FAC in order to litigate against such DOE defendants once they have been identified via ongoing discovery.  Thus, Defendant's assumption that Plaintiff would be required to move to amend the Court's Scheduling Order in order to identify/name the DOE defendants in this action is mistaken.

### 3. The Narrow Class Definition Renders the Case Manageable at Trial.

Although Defendant argues that the number of products at issue in this case renders the trial unmanageable, Defendant is wrong.  First, as mentioned above, the class definition in the FAC is narrowly drawn such that persons in California who purchased one of Defendant's products from Defendant's Website who were never presented with a webpage advertisement showing a "higher reference price" are *excluded* from the Class. (FAC ¶ 51.)

Second, Defendant's argument that there are at least 103 products sold by Defendant during the proposed class period including at least 36 non-wallet products, (Def.'s Mem. at 15:22-24), is a red herring argument because Defendant elsewhere argues that "everyday carry products" "such as bags and accessories," (van der Kolk Decl. ¶ 5), "generally do not offer strikethrough pricing," (Def.'s Mem. at 13:23-25). Thus, assuming that Defendant's contention is true, the vast majority of such non-wallet products can be excluded from the class definition. As for wallet products, Defendant admits that it "has identified 56 wallet products that at one time or another from May 2022 through August 2023 utilized strikethrough pricing." (Def.'s Mem. at 15:23-25) (citing Ferrell Decl. of 6/7/24 Ex. 14 at Ex. A; Doc. 61-16). Exhibit A to Defendant's Responses to Plaintiff's Interrogatories (Set One) identifies 60 wallets. Thus, as mentioned above, Defendant is acknowledging that Defendant used strikethrough pricing for the vast majority of such wallet products within some portion of the proposed class period.

Here, "class members were exposed to uniform … misrepresentations and suffered identical injuries within only a small range of damages." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d at 559. There are "no material conflicts … among class members." *Id.* The trial in this action shall "turn on ***a common course of conduct*** by the defendant," which "can establish predominance in … class actions." *Id.* (emphasis added).

Defendant's focus on the sheer volume of its products at issue in the instant action is not a significant factor in evaluating the manageability of the trial.

    **4.    Defendant's Reliance on the Reasonable Consumer Test to Show Lack of Predominance Is Without Merit.**

Defendant's argument that Plaintiff uses "warped logic" to pursue a putative class action regarding Defendant's use of strikethrough pricing is unpersuasive.

Contrary to Defendant's position, it is reasonable to infer that the strikethrough pricing on Defendant's Website advertising its products is intended to reflect the ***former***

pricing on identical items. Notably, Defendant inexplicably ignores the ample case authority treating a strikethrough price as misleadingly referring to a former price for a specific product. *People v. Overstock.com, Inc.*, 12 Cal. App. 5th 1064, 1079-87 (2017) (affirming trial court's judgment against online website retailer for unfair business practices and false advertising based upon defendant's deceptive strikethrough pricing scheme); *Ochoa v. Zeroo Gravity Games LLC*, No. 2:22-cv-05896-GW-AS, 2023 WL 4291650, at *8-*9 (C.D. Cal. May 24, 2023) (Wu, J.) (tentative ruling), *adopted in*, Doc. 53 (C.D. Cal. May 25, 2023); *Carvalho v. HP, Inc.*, 2022 WL 17825688, at *5-*6 (N.D. Cal. Dec. 20, 2022); *Inga v. Bellacor.com, Inc.*, 2020 WL 5769080, at *3-*4 (C.D. Cal. July 17, 2020) (Fitzgerald, J.); *Freeman v. Indochino Apparel, Inc.*, 443 F. Supp. 3d 1107, 1111-13 (N.D. Cal. 2020); *Covell v. Nine West Holdings, Inc.*, 2018 WL 558976, at *6 (S.D. Cal. Jan. 25, 2018) ("the FAC alleges that a reasonable consumer could be misled by [defendant's] price markings into thinking she was paying a discounted price for a product, when in fact she was paying the product's normal or usual price"); *Real*, 2017 WL 11675686, at *3-*5; *Delman v. J. Crew Group, Inc.*, 2017 WL 3048657, at *6-*8 (C.D. Cal. May 15, 2017) (Fitzgerald, J.); *Munning v. Gap, Inc.*, 2016 WL 6393550, at *5 (N.D. Cal. Oct. 28, 2016) ("***By alleging that products on Defendants' websites listed crossed-out prices*** followed by a percentage discount and a new price, ***Plaintiff has provided enough facts such that it is plausible a reasonable consumer could view the prices as being deceptive***.") (emphasis added); *Shimono v. Harbor Freight Tools USA, Inc.*, 2016 WL 6238483, at *5-*6 (C.D. Cal. Oct. 24, 2016) (Snyder, J.).

As the Court explained in *Chester v. TJX Cos., Inc.*, 2016 WL 4414768 (C.D. Cal. Aug. 18, 2018) (Wright, J.):

> "[T]here is a reason Defendants, just like Stein Mart and others, use reference pricing: ***it makes consumers think they are getting a deal***. If the phrasing did not work just so, retailers would find another way to get consumers in the door and its merchandise in people's shopping carts. Consumers are easily wooed by 'Compare At' pricing advertisements because they believe that they are not only getting a

deal, but also a high-quality item at a wallet-friendly price. When these reference prices are misleading, the consumer suffers an 'obvious economic injury as a result of false advertising ... because the bargain hunter's expectations about the product he just purchased is precisely that it has a higher perceived value and therefore has a higher resale value.'"

*Chester*, 2016 WL 4414768, at *11 (emphasis added) (citing *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1102, 1106 (9th Cir. 2013)).

"An advertised discount price can be deceptive because it does not differ from the normal price, the product has rarely been sold at the putative list price, or because the alleged original price constituted a false valuation of the product." *Real*, 2017 WL 11675686, at *3 (citing 1A Callmann on Unfair Competition, Tr & Mono. § 5:59 (4th ed. 2015); 16 C.F.R. § 233.1) (stating "if the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison")).

As the Court explained in *Real*:

"The Federal Trade Commission's Guide against Deceptive Pricing ("FTC's Pricing Guide" or "Guide") also notes other fictitious price comparisons include an advertiser using a price "at which he never offered the article at all" or a price "not used in the regular course of business" or "not used in the recent past but at some remote period in the past, without making disclosure of that fact." 16 C.F.R. § 233.1. The Guide also cautions that if the former price is in the advertisement, with or without descriptive terminology, the advertiser "should make certain that the former price is not a fictitious one." *Id.*"

*Real*, 2017 WL 11675686, at *3.

*Real* provides important guidance here. *Real* found that the FTC's Pricing Guide on former price comparisons to be "informative." *Real*, 2017 WL 11675686, at *4. *Real* noted that former price comparisons can be set in an advertisement "whether accompanied or not by descriptive terminology." *Id.* (quoting 16 C.F.R. § 233.1(e)). Significantly,

*Real* held:

> "***The placement of a price in strike-through font next to a lower price is reasonably believed to be a former price comparison.*** This style of price comparison differs from the use of text such as "Comparable Value" or "Retail Value, My Price," deemed "retail price comparisons" or "comparable value comparisons" by the FTC Pricing Guide. 16 C.F.R. § 233.2."

*Real*, 2017 WL 11675686, at *4 (emphasis added).

"The Ninth Circuit has held … that a violation of the FTC Act may constitute conduct prohibited by the UCL." *Inga*, 2020 WL 5769080, at *3 (citing *Rubenstein v. Neiman Marcus Group LLC*, 687 Fed. Appx. 564, 567 (9th Cir. 2017)). "Courts look to FTC Guides for direction concerning what practices the FTC considers deceptive and thus violative of public policy." *Inga*, 2020 WL 5769080, at *3.

The regulation on "[f]ormer price comparisons" states:

> "One of the most commonly used forms of bargain advertising is to offer a reduction from the advertiser's own former price for an article. ***If the former price is the actual, bona fide price at which the article was offered to the public on a regular basis for a reasonably substantial period of time, it provides a legitimate basis for the advertising of a price comparison***. Where the former price is genuine, the bargain being advertised is a true one. If, on the other hand, the former price being advertised is not bona fide but fictitious—for example, where an artificial, inflated price was established for the purpose of enabling the subsequent offer of a large reduction—the "bargain" being advertised is a false one; the purchaser is not receiving the unusual value he expects. In such a case, the "reduced" price is, in reality, probably just the seller's regular price."

(16 C.F.R. § 233.1(a) (emphasis added).)

Second, although Defendant relies upon the prices on its Amazon.com storefront, (Def.'s Mem. at 16:24-25), Defendant's Managing Director has admitted that the specific Ekster product purchased by Plaintiff "was sold exclusively on the Ekster Website." (van

der Kolk Decl. ¶ 6; Page ID #2007.)  Thus, *it was literally impossible for Plaintiff to see a higher price for the wallet that he purchased because Defendant admits that it never offered it for sale on Amazon.com*.

Also, although Defendant's Managing Director testified that Defendant's Amazon storefront offered no discounted pricing (with the exception of rare, 1-day "lightning sales"), (Ferrell Decl. of 6/7/24 ¶ 34 & Ex. 18 at 82:6-12), in reality, *Defendant offers discounted pricing on the vast majority of its wallet products advertised on such storefront for multiple weeks*, if not longer.  (Ferrell Decl. ¶ 9.)

Moreover, Defendant makes no attempt to cite to any evidence showing that its Amazon.com storefront made *substantial sales* of any of its wallets at the reference prices set forth in its own Website.  *Chester*, 2016 WL 4414768, at *1 n.2 (when an advertiser "represents that he is selling below the prices being charged in his area for a particular article," that advertiser must be "reasonably certain that the higher price he advertises does not appreciably exceed the price at which *substantial sales of the article are being made in the area*") (emphasis added).

Thus, the applicable FTC regulation provides "a vital qualifier, which is that comparison prices cannot 'appreciably exceed the price at which *substantial sales of the article are being made in the area*.'"  *Evans v. DSW, Inc.*, 2017 WL 7058233, at *10 (C.D. Cal. Feb. 2, 2017) (Bernal, J.) (emphasis added); *id.* at *9 ("The impression one is getting a deal is precisely why reference pricing is a popular way to attract customers[.]"); *Overstock.com*, 12 Cal. App. 5th at 1084 ("using the highest available price to set the [advertised reference price], without regard to *the prevailing market price* and without disclosure of the practice, had the capacity to mislead.") (emphasis added).  Thus, it is improper to set a reference price for a product based upon the highest price of such product in the relevant market.  What matters is the "prevailing market price" over the course of a period of time as opposed to an "isolated and unrepresentative" price.  16 C.F.R. § 233.2(b).

Instead of providing evidence that it had *substantial* sales on its Amazon.com

storefront that matched the reference prices used on its own Website, Defendant relies heavily upon its so-called "price book." (Def.'s Mem. at 1:11-12; 4:10-11; 6:17; 9:18-21; 10:7-10; 11:10-12; 11:17-19; 16:21-27.) But, the mere fact that Defendant maintains a document with "price book prices" for its products does not necessarily mean that any of its products were, in fact, sold to consumers at such prices. "It is what the company *does* … not just what it *says* in a stated or written policy, that matters." *King v. U.S. Bank Nat'l Ass'n*, 53 Cal. App. 5th 675, 714 (2020) (emphasis in original); *Castro v. County of Los Angeles*, 833 F.3d 1060, 1075 n.10 (9th Cir. 2016) (en banc) ("a plaintiff can show a custom or practice of violating a written policy; otherwise an entity, no matter how flagrant its actual routine practices, always could avoid liability by pointing to a pristine set of policies."). For example, it is undisputed that the Astral style of Aluminum Cardholder wallet product purchased by Plaintiff had a strikethrough reference price of $100, (Purscelley Decl. of 6/6/24 ¶ 3), but Defendant offers no evidence that it actually sold such product for $100 to anybody.

Finally, Defendant's assumption that a reasonable consumer is expected to search the Internet for Defendant's Amazon.com webstore advertisements to find possible disclaimers thereon is wrong. *Adams v. Starbucks Corp.*, 2020 WL 4196248, at *3 (C.D. Cal. July 9, 2020) (Selna, J.) ("[n]o authority suggests a reasonable consumer is expected to search …all of a company's statements across all forms of advertisements[] to find all possible disclaimers") (citation omitted).

### 5. Damages Can Feasibly and Efficiently Be Calculated Once the Common Liability Questions Are Adjudicated.

Although Defendant contends that Plaintiff is required to rely upon the testimony of an expert witness to establish damages, (Def.'s Mem. at 19:1-20:17), Defendant's analysis is wrong.

Although Defendant relies upon *Lilly v. Jamba Juice Co.*, 308 F.R.D. 231, 244 (N.D. Cal. 2014), *Lilly* actually supports Plaintiff's position. *Lilly* concluded that "the correct reading of *Comcast* is that plaintiffs must establish at the certification stage that

'damages … [can] feasibly and efficiently be calculated once the common liability questions are adjudicated.'" *Lilly*, 308 F.R.D. at 244 (quoting *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013)). *Lilly* added, "**Often, this will impose only a very limited burden.**" 308 F.R.D. at 244 (emphasis added). *Lilly* cited as an example the production of a payroll database in a "wage-and-hour case." *Id.* *Lilly* then added:

> "[W]here defendants can make at least a *prima facie* showing that damage calculations are likely to be **more complex**, expert reports **or at least some evidentiary foundation may have to be laid to establish the feasibility and fairness of damage assessments**."

308 F.R.D. at 244 (second and third emphasis added). Thus, *Lilly* does not require plaintiffs to produce expert reports at the certification stage.

Plaintiff submits that Defendant has not made a prima facie showing that damage calculations are likely to be "more complex" than a wage-and-hour case.

Moreover, Plaintiff has laid "at least some evidentiary foundation" "to establish the feasibility and fairness of damage assessments" here. In *Saavedra v. Eli Lilly & Co.*, 2014 WL 7338930 (C.D. Cal. Dec. 18, 2014) (Wilson, J.), the Court noted that in "an ordinary market, **price is a proxy for value**." *Id.* at *5 (emphasis added). "Thus, the price paid for a good that was misrepresented to have a given characteristic can serve as a proxy for the value of a product with the misstated characteristic." *Id.* Similarly, in *Schneider v. Chipotle Mexican Grill, Inc.*, 328 F.R.D. 520 (N.D. Cal. 2018), the court explained that the plaintiff's expert report "**bases its price options on 'actual prices that [defendant] Chipotle charged for their food items**.' This is sufficient to tie the measured willingness to pay to the real-world marketplace in which Chipotle's products are sold. Dr. Krosnick's report, though subject to myriad challenges on cross-examination, does demonstrate that a price premium model is 'consistent with' Plaintiffs' liability case." *Id.* at 541 (citing *Comcast*, 569 U.S. at 35) (emphasis added and internal citation omitted); *Apple, Inc. v. Samsung Electronics Co., Ltd.*, 2014 WL 976898, at *11 (N.D. Cal. Mar. 6, 2014) ("**the market price** of the infringing devices, which **reflects the real-world**

*interaction of supply and demand* for infringing and noninfringing devices") (emphasis added); *Werdebaugh v. Blue Diamond Growers*, 2014 WL 7148923, at *8 (N.D. Cal. Dec. 15, 2014) ("Restitution is … determined by taking the difference between the market price actually paid by consumers and the true market price that reflects the impact of the unlawful, unfair, or fraudulent business practices.").

Here, Plaintiff has proposed a model that relies upon actual prices at which Defendant has sold its products after the commencement of the instant action, which put Defendant on notice that its pricing on its products was under scrutiny. For example, Defendant offered for sale on its own Website its Astral style of Aluminum Cardholder wallet product at a $69 actual price on November 22, 2023, (Ferrell Decl. ¶ 2), less than four months after Plaintiff's purchase, which is $11 cheaper than the $80 actual price paid by Plaintiff for the identical product. That $11 price difference suffices as both a feasible and fair method of calculating Plaintiff's own damages. That same type of analysis can easily be applied to other Class members. Plaintiff's damages model matches his theory of liability.

Finally, the Court can, under Fed. R. Civ. P. 23(c)(4), certify the proposed class solely for purposes of determining liability and reserve all issues concerning damages for individual determination. *Lilly*, 308 F.R.D. at 244-45.

Dated:  July 8, 2024                         PACIFIC TRIAL ATTORNEYS, APC

                                             By: */s/Scott J. Ferrell*
                                             Scott J. Ferrell
                                             Attorney for Plaintiff

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiff, certifies that this brief contains 3,987 words, which complies with the word limit of L.R. 11-6.1.

Dated: July 8, 2024

*/s/ Scott J. Ferrell*
Scott J. Ferrell